# UNITED STATES COURT OF APPEALS

FOR THE

## TENTH CIRCUIT

| | | |
|---|---|---|
| FRANK E. SMITH and MARK A. KIOLBASA, | ) | |
| | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Appeal No. 21-9538 |
| | ) | |
| BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, | ) | |
| | ) | |
| Respondent. | ) | |

---

**PETITIONERS' MOTION FOR STAY PENDING APPEAL OF FINAL ORDERS AND DECISIONS OF THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM**

---

I

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 2

LEGAL STANDARD ................................................................................. 5

ARGUMENT ............................................................................................. 6

    I.    This Court Has Jurisdiction Over this Appeal, But the Agency Had No Jurisdiction over Petitioners ..................................... 6

    II.   Petitioners Are Likely to Succeed on Appeal ......................... 7

    A.   Congress intended for the regulatory agencies to have exclusive jurisdiction over the relevant banks ..................... 10

    B.   Under the Plain Language of Section 1813(q), FDIC is "the appropriate Federal banking agency" and has jurisdiction over Central ................................................................... 12

    C.   The Plain Language of Section 1818 authorizes the "appropriate Federal banking agency" to act ....................... 12

    D.   The Board's Assertion that its Jurisdiction Extended over Petitioners because they were IAPs of a State member bank is incorrect ................................................................... 16

    E.   The Board's Interpretation Conflicts with Section 1818(i)(3) ............................................................................. 18

    II.   Absent an Injunction, the Petitioners will suffer irreparable harm ................................................................................ 21

    III.  The Board will Suffer No Harm and the Public Interest Supports a Stay. ........................................................... 23

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Am. Bus Ass'n v. Slater*, 231 F.3d 1 (D.C. Cir. 2000) ............................ 14

*Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ...... 22

*Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993 (5th Cir. 1994) .................................................................. 11

*Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 106 S. Ct. 681, 88 L. Ed. 2d 691  (1986) ........................................ 17

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) .............................................. 9, 10

*City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013) .................................................................. 8

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (1985) .......................................................... 22

*Dragotta v. W. View Sav. Bank,* 395 F. App'x 828 (3d Cir. 2010) .......... 15

*Dutcher v. Matheson*, 840 F.3d 1183 (10th Cir. 2016) ........................... 14

*Enyart v. National Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) .................................................................. 22

*F.D.I.C. v. Hurwitz*, 384 F. Supp. 2d 1039 (S.D. Tex. 2005) ................. 15

*F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008) ........................ 15

*First Premier Bank v. U.S. Consumer Fin. Prot. Bureau*, 819 F. Supp. 2d 906 (D.S.D. 2011) ...................................................................... 18

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) ............................... 18

*Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692 (10th Cir. 2010) ........................................................................................9

*Friends of Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115 (8th Cir.1999) ...................................................................................18

*Hackwell v. United States*, 491 F.3d 1229 (10th Cir. 2007) ...................14

*Helkowski v. Sewickley Sav. Bank*, No. 2:09-CV-633, 2009 WL 3350453 (W.D. Pa. Oct. 15, 2009) ................................................................15

*Hendrickson v. FDIC*, 113 F.3d 98 (7th Cir. 1997)...................................4

*In the Matter of Richard Alan Henderson and Philip Henry Cooper, Institution-affiliated Parties of Regions Bank, Birmingham, Alabama*, No. 16-027-G-1, 2016 WL 7667935 (F.R.B. Dec. 20, 2016) ........................................................................................................16

*Inv. Co. Inst. v. FDIC*, 815 F.2d 1540 (D.C. Cir. 1987)...........................11

*Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) ...........23

*Killip v. Off. of Pers. Mgmt.*, 991 F.2d 1564 (Fed. Cir. 1993) ..................8

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2004) ...........................................18

*Michigan v. E.P.A.*, 268 F.3d 1075 (D.C. Cir. 2001) ................................8

*Modoc Lassen Indian Hous. Auth. v. United States Dep't of Hous. & Urb. Dev.*, 881 F.3d 1181 (10th Cir. 2017) ..............................................8

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) .................................................................................................7, 8, 23

*Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7 (D.D.C. 2018) ...............................................................................................23

*Rapanos v. United States*, 547 U.S. 715, 126 S. Ct. 2208, 165 L. Ed. 2d 159 (2006) ......................................................................................14

*Rapaport v. U.S. Dep't of Treasury, Off. of Thrift Supervision*, 59 F.3d 212 (D.C. Cir. 1995) .................................................................................9

*Roig v. Puerto Rico. Nat'l Guard*, 47 F. Supp. 2d 216 (D.P.R. 1999) .....22

*Sinclair Wyoming Ref. Co. v. United States Env't Prot. Agency*, 887 F.3d 986 (10th Cir. 2017) ........................................................................10

*Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) .....................................................................................................10

*Stone v. Trump*, 280 F. Supp. 3d 747 (D. Md. 2017) ...............................21

*United States v. Mead Corp.*, 533 U.S. 218 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) ..............................................................................................9

*Wheeler v. Office of the Comptroller of the Currency of the U.S.*, No. Civ. A. 3-98-cv-2708-P, 1998 WL 872945 (N.D. Tex. Dec. 1998) ..........19

**Statutes**

12 C.F.R. § 337.1 ......................................................................................11

12 U.S.C. § 1818 ........................................................... 2, 6, 12, 13, 19

12 U.S.C. §§ 1813 ................................................................. 2, 12, 15

5 U.S.C. § 556(c) ........................................................................................3

5 U.S.C. § 705 ........................................................................... 1, 2, 5, 8

5 U.S.C. § 706 ............................................................................................7

Federal Deposit Insurance Act § 8(e)(1) ...................................................6

Federal Institutions Reform Recovery and Enforcement Act § 8 ..........19

**Other Authorities**

FRB Interpretive Letter, 1996 WL 473986 (Dec. 20, 2016) ...................16

Testimony by Scott G. Alvarez, General Counsel Settlement Practices Before the Committee of Financial Services, U.S. House of Representatives, Washington D.C., 2012 WL 2068543, 4 (F.R.B. May 16, 2012) ..................................................................21

**Rules**

Federal Rule of Appellate Procedure 18 ...............................................1, 5

Tenth Circuit Rule 8.1.........................................................................1, 5

# INTRODUCTION

The Board of Governors of the Federal Reserve System (the "Board") exceeded its statutory authority when it prohibited Frank Smith and Mark Kiolbasa (the "Petitioners") from engaging in various banking-related activities listed in the Orders of Prohibition (the "Orders"). **Exhibits 1, 2**. In doing so, the Board unlawfully deprived and continue to deprive Petitioners of the means to support themselves and their families.

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 705, Federal Rule of Appellate Procedure 18, and Tenth Circuit Rule 8.1, Petitioners request the Court to stay the Orders pending review. The Board's assessment of its jurisdiction is divorced from the express and unambiguous language of the FDI Act. The Orders irreparably harm Petitioners as they cannot work in the profession for which they are trained and have experience. An immediate stay of the Orders would promote congressional intent in carefully circumscribing the Board's jurisdiction.

## BACKGROUND

This appeal asks the Court to set aside and vacate the Board's unlawful expansion of its statutory jurisdiction. Under the facts of this case, the Federal Deposit Insurance Corporation (the "FDIC"), not the Board, had the exclusive jurisdiction to regulate Petitioners' alleged conduct12 U.S.C. §§ 1813, 1818(e)(1); 5 U.S.C. § 705(2)(C), (2)(A).

Petitioners were "institution-affiliated parties" ("IAPs") of Central Bank & Trust ("Central"), an entity under the FDIC's exclusive jurisdiction. **Exhibit 3**. After Petitioner's separated from employment with Central, their former employer accused them of engaging in improper conduct while employed by Central. After the FDIC declined to censure the Petitioners for this alleged conduct, on December 11, 2018, the Board supplanted the FDIC's authority with its own and brought enforcement proceedings against Petitioners. On August 2, 2019, Enforcement Counsel for the Board, Michael Klein, moved for summary disposition and sought a recommendation from the Administrative Law Judge Christopher McNeil that the Board enter final prohibition orders against Petitioners. **Exhibit 4**.

2

On August 22, 2019, Petitioners filed an opposition contending that the Board lacked jurisdiction to prohibit Petitioners because they were IAPs of Central at the time of the alleged misconduct and Central is a State nonmember bank, not subject to the Board's jurisdiction. *See* **Exhibit 5** at 1. Central is instead subject to the regulatory oversight of the FDIC. *Id.* Accordingly, the FDIC, not the Board, had exclusive jurisdiction over misconduct at Central. *Id.*

The Enforcement Counsel moved to strike Petitioners' motion, and the ALJ ruled that it had no authority to dismiss for lack of jurisdiction as such power was not enumerated under 5 U.S.C. § 556(c). *Id.* at 2; **Exhibit 6**. On September 6, 2019, the Petitioners sought interlocutory review of the ALJ's refusal to dismiss. **Exhibit 7** at 13, n.75. While the review was pending, on October 24, 2019, the ALJ issued a Recommended Decision granting the Enforcement Counsel's Motion for Summary Disposition. Ex. 7. The ALJ predicated jurisdiction on the fact that, when the Board initiated the enforcement proceeding, Petitioners were at that time employed by Farmers State Bank, an entity that does fall under the Board's jurisdiction. *Id.* at 11.

On March 9, 2020, the Board denied the Petitioners' request for interlocutory review of the Board's jurisdiction. **Exhibit 8** at 12. On May 5, 2020, the Petitioners filed Exceptions to the Recommended Decision, reiterating the Board's lack of jurisdiction. **Exhibit 9** at 19-28. About a year later, on March 24, 2021, the Board adopted the ALJ's Recommended Decision. Ex. 8. It affirmed the ALJ's determination and held that "the statute's plain language extends jurisdiction over any practice or act and does not place a time-bar or restriction on when or where such practice or act may have occurred." *Id.* citing *Hendrickson v. FDIC*, 113 F.3d 98, 102-03 (7th Cir. 1997). The Board's interpretation, however, ignores that only one "appropriate banking agency" exercises jurisdiction at any one time over the conduct of an IAP. That's not the Board; it's the FDIC.

## LEGAL STANDARD

Section 705 of Title 5 of the United States Code, Tenth Circuit Rule 8.1, and Federal Rule of Appellate Procedure 18(a), authorize the Court to stay agency orders pending appeal. Section 705, in relevant part, states as follows:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court. . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705. Similarly, under Tenth Circuit Rule 8.1, a petitioner seeking a stay must address: (a) the basis of the agency and the court of appeal's jurisdiction; (b) the likelihood of success on appeal; (c) the threat that petitioners will be irreparably harmed if the injunction is not granted; (d) the absence of harm to respondents if the injunction is granted; and (e) any risk of harm to the public interest. Each of these factors and conditions for stay under Section 705 are met as demonstrated in the argument below.

Rule 18(a)(2) requires the Petitioners to demonstrate that (i) moving for a stay before the agency would be impracticable, (ii) the reasons for the stay and (iii) relevant parts of the record. F.R.A.P.

18(a)(2). The Petitioners provide the reasons for the stay and attach the relevant parts of the record (Exhibits 1-10). It would have been impracticable for Petitioners to seek a stay of the Order before the agency. The Petitioners briefed the Board's lack of jurisdiction on multiple occasions—before the ALJ in response to summary disposition (see Ex. 5), on interlocutory review after the ALJ's denial (see Ex. 8), and in the Exception to the ALJ's order (Ex. 9). Each time, the ALJ and Board emphatically asserted the Board's jurisdiction. It would have been an exercise in futility to seek relief first with the Board. The Petitioners gave notice of this request for stay to counsel for Respondents.

## ARGUMENT

### I. This Court Has Jurisdiction Over this Appeal, But the Agency Had No Jurisdiction over Petitioners

The Board asserted jurisdiction over the Petitioners under section 8(e)(1) of the FDI Act. Ex. 8 at 12; 12 U.S.C. § 1818(e)(1). The Board's unlawful jurisdiction is the basis of the Petitioners' request for relief.

This Court has jurisdiction over this appeal pursuant to 12 U.S.C. § 1818(h)(2) which states that "[a]ny party . . . may obtain a review of any order . . . by the filing in the court of appeals of the United States for the circuit in which the home office of the depository institution is located, . .

. , praying that the order of the agency be modified, terminated, or set aside." 12 U.S.C. § 1818(h)(2). Chapter 7 of Title 5 permits the Court to "hold unlawful and set aside agency action ... found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2)(A), (2)(C).

## II.    Petitioners Are Likely to Succeed on Appeal

Unlike a preliminary injunction, which controls "the conduct of a particular actor, a stay operates upon the judicial proceeding itself . . . by temporarily divesting an order of enforceability" *Nken v. Holder*, 556 U.S. 418, 428, 129 S. Ct. 1749, 1758, 173 L. Ed. 2d 550 (2009). "The authority to hold an order in abeyance pending review allows an appellate court to act responsibly," rather than dispense "justice on the fly." *Id.* Thus, interim relief is "not simply an historic procedure for preserving rights during the pendency of an appeal, but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." *Id.* at 427 (internal quotations omitted).

In weighing the probability that Petitioners will prevail on the merits, Petitioners need only show that it is *likely* that they will succeed on the merits; they need not establish certainty of success. To require

otherwise would defeat the purpose of a stay which is to "hold the matter in abeyance because the appellate court lacks sufficient time to decide the merits." *Id.* at 432.

## A. The Board's Assessment of its Jurisdiction is Accorded no Deference

The Petitioners bring a straightforward legal challenge to the Board's statutory interpretation of its jurisdiction. Agency action should be "h[e]ld unlawful and set aside" where it is "in excess of statutory jurisdiction" or "not in accordance with law." 5 U.S.C. § 705(2)(C), (2)(A). The basis of overturning agency action is rooted in the fundamental principle that an agency is a creature of statute, limited by the authority given by Congress. *Modoc Lassen Indian Hous. Auth. v. United States Dep't of Hous. & Urb. Dev.*, 881 F.3d 1181, 1192 (10th Cir. 2017) citing *Killip v. Off. of Pers. Mgmt.*, 991 F.2d 1564, 1569 (Fed. Cir. 1993) (explaining that federal agencies are "creature[s] of statute") and *Michigan v. E.P.A.*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) ("[I]f there is no statute conferring authority, a federal agency has none.").

In some instances, the *Chevron* two-step test determines whether agency action is in excess of statutory authority. *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013)

citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) (*Chevron* applies to agency's interpretation of its own jurisdiction).

In some circumstances, however, a court never reaches the *Chevron* analysis because the initial step of the *Chevron* inquiry is to determine whether it should apply at all. *See, generally, United States v. Mead Corp.*, 533 U.S. 218 S. Ct. 2164, 150 L. Ed. 2d 292 (2001).

When multiple agencies administer the same statute, *Chevron* deference is inapplicable. *Rapaport v. U.S. Dep't of Treasury, Off. of Thrift Supervision*, 59 F.3d 212, 216 (D.C. Cir. 1995) (no *Chevron* deference applies to OTS's interpretation of Section 1818 as agency shares responsibility for the administration of the statute with at least three other agencies).

This Court reviews an agency's interpretation of law *de novo*, giving deference where due. *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2010). The Board's interpretations may be considered for persuasiveness based on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it

9

power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

Here, the Board assessed its jurisdiction (1) in an adjudication that was specific to the Petitioners; (2) that had no precedential value; (3) was resolved solely on the basis of briefing, with no oral argument on the jurisdictional issue; and (4) was not publicly released. *Sinclair Wyoming Ref. Co. v. United States Env't Prot. Agency*, 887 F.3d 986, 990 (10th Cir. 2017) (rejecting *Chevron* deference). Moreover, as demonstrated below, the Board's construction conflicts with the plain language of the statute, conflicts with its and courts' earlier pronouncements, and depends on faulty, policy-driven reasoning. Accordingly, no deference is due to the Board's assessment of its jurisdiction.

## A.     Congress intended for the regulatory agencies to have exclusive jurisdiction over the relevant banks

The statutory framework set forth in the FDI Act confers exclusive jurisdiction on the FDIC to regulate unsafe and unsound practices at State nonmember banks. Permitting the Board, rather than the FDIC, to regulate the conduct that occurred at Central requires ignoring the detailed framework for regulatory enforcement set forth in the FDI Act, the strict adherence to which is necessary "for orderly review of the

various stages of enforcement." *Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir. 1994).

The preservation of the enforcement framework is critical because the different federal banking agencies derive their authority to regulate unsafe and unsound banking practices specifically from their authority to regulate the financial institutions themselves. 12 C.F.R. § 337.1 (explaining that the FDIC has the authority to regulate "certain banking practices which are likely to have adverse effects on the safety and the soundness of insured State nonmember banks."). The separation of regulatory authority under the Federal Reserve System has been summarized as follows:

> Federal regulation effectively divides the United States commercial banking community into three major categories. Banks that choose to become members of the Federal Reserve System fall under the jurisdiction of the Board of Governors of the Federal Reserve System. See 12 U.S.C. §§ 221, 248 (1982). National banks come within the jurisdiction of the Comptroller of the Currency. *See id*. Finally, insured state banks that are not members of the Federal Reserve System operate under the watchful eye of the FDIC. See *id* §§ 1811, 1815. Although the FDIC insures the deposits of all three categories, *id*. § 1811, it regulates only the third group, see generally *id*. § 1815.

*Inv. Co. Inst. v. FDIC*, 815 F.2d 1540, 1542 (D.C. Cir. 1987). Thus, each of the three regulators only have the authority to regulate unsafe and

11

unsound practices having adverse effects on the financial institutions falling within their exclusive regulatory powers. *Id.*

**B.    Under the Plain Language of Section 1813(q), FDIC is "the appropriate Federal banking agency" and has jurisdiction over Central**

The FDI Act defines "appropriate Federal banking agency" as follows:

> The term "appropriate Federal banking agency" means . . (2) the Federal Deposit Insurance Corporation, in the case of . . .A) any State nonmember insured bank; . . .
>
> (3) the Board of Governors of the Federal Reserve System, in the case of . . .(A) any State member bank; . . .

12 U.S.C. § 1813(q)(2), (q)(3). The Board concedes that Central is a "State nonmember insured bank" for which the FDIC is the "appropriate Federal banking agency." Ex. 8 at 1-2.

**C.    The Plain Language of Section 1818 authorizes the "appropriate Federal banking agency" to act**

Section 1818(e)(1) of FDI Act states, in relevant part, as follows:

> Whenever the **appropriate Federal banking agency** determines that--
>
> (A) **any institution-affiliated party** has . . .
>
> (ii) engaged or participated in any unsafe or unsound practice in connection **with any insured depository institution** or business institution; or
>
> (iii) committed or engaged in any act, omission, or practice which constitutes a breach of such party's fiduciary duty;

12

(B) by reason of the violation, practice, or breach described in any clause of subparagraph (A)--

(i) **such insured depository institution** or business institution has suffered or will probably suffer financial loss or other damage; . .

(iii) such party has received financial gain or other benefit by reason of such violation, practice, or breach; and

(C) such violation, practice, or breach--

(i) involves personal dishonesty on the part of such party; or

(ii) demonstrates willful or continuing disregard by such party for the safety or soundness of **such insured depository institution** or business institution,

**the appropriate Federal banking agency for the depository institution** may serve upon such party a written notice of the agency's intention to remove such party from office or to prohibit any further participation by such party, in any manner, in the conduct of the affairs of **any insured depository institution**.

12 U.S.C. § 1818(e)(1) (emphasis added). The plain language of Section 1818 authorizes only "the appropriate Federal banking agency for **the depository institution**" to issue a notice of the agency's intention in the conduct of the affairs **any** institution.

The antecedent basis for "**the** depository institution" is the one connected with the "unsound and unsafe practice," ((Section 1818(e)(1)(A)(ii)); the one that "has suffered or will probably suffer financial loss or other damage," (Section 1818(e)(1)(B)(i)); or for which

there is "willful and continuing disregard." (Section 1818(e)(1)(C)(ii)). *Rapanos v. United States*, 547 U.S. 715, 732, 126 S. Ct. 2208, 165 L. Ed. 2d 159 (2006) ("The use of the definite article ('the) and the plural number ('waters') shows plainly that § 1362(7) does not refer to water in general."); *Dutcher v. Matheson*, 840 F.3d 1183, 1197 (10th Cir. 2016) citing *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000) ("Indeed, '[i]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").

The Board's findings all focus on Central as <u>the depository institution</u>: Petitioners "breached their fiduciary of duty of loyalty owed to Central" (Ex. 8 at 29); their "misconduct harmed Central" (*id.* at 49); and they "acted with willful or continuing disregard for Central's safety and soundness" (*id.* at 52). The "appropriate Federal banking agency" for "<u>the depository institution</u>" is the FDIC. *Hackwell v. United States*, 491 F.3d 1229, 1240 (10th Cir. 2007) (court "should look to the statutory definition of the term and begin with the ordinary meaning of that language").

14

The courts and the Board have repeatedly recognized that the Board's jurisdiction depends on the entity, not on the affiliation of the IAP. *F.D.I.C. v. Hurwitz,* 384 F. Supp. 2d 1039 (S.D. Tex. 2005*), rev'd in part, vacated in part sub nom. F.D.I.C. v. Maxxam, Inc.,* 523 F.3d 566 (5th Cir. 2008) (as the bank at issue was a "thrift," the "appropriate Federal banking agency" was OTS and not the FDIC which had jurisdiction over State nonmember insured banks); *Helkowski v. Sewickley Sav. Bank*, No. 2:09-CV-633, 2009 WL 3350453, at *6 (W.D. Pa. Oct. 15, 2009), vacated on other grounds *Dragotta v. W. View Sav. Bank*, 395 F. App'x 828 (3d Cir. 2010) ("the provisions of the Federal Deposit Insurance Act . . . identifies the FDIC as the appropriate Federal Banking agency with oversight of Defendant as a state non-Federal Reserve member insured bank"; "general tenet that the enforcement responsibilities of the Federal Reserve Board generally only extend to state-chartered banks that are members of the Federal Reserve System and to certain foreign banking organizations, ***and that other federal regulators are responsible for examining banks, thrift institutions, and credit unions under their jurisdiction and for taking enforcement action***) citing 12 U.S.C. § 1813(q)(3) (emphasis added); *In the Matter of Richard Alan*

15

*Henderson and Philip Henry Cooper, Institution-affiliated Parties of Regions Bank, Birmingham, Alabama*, No. 16-027-G-1, 2016 WL 7667935, at *2 (F.R.B. Dec. 20, 2016) ("Regions is a state member bank subject to the jurisdiction of the Board of Governors under section 3(d)(2) of the FDI Act, 12 U.S.C. § 1813(d)(2). Accordingly, the Board of Governors is the appropriate Federal banking agency within the meaning of sections 3(q)(3)(A) and 8(g)(1)(A) of the FDI Act, 12 U.S.C. §§ 1813(q)(3)(A) and 1818(g)(1)(A)."); FRB Interpretive Letter, 1996 WL 473986, at *1 (Dec. 20, 2016) ("First Midwest is a national bank, and as such is supervised by the Office of the Comptroller of the Currency and not by the Board of Governors of the Federal Reserve System ('Board'). For this reason and because of the nature of your dispute with First Midwest, we do not believe that this matter raises issues that are within the Board's jurisdiction.").

### D.   The Board's Assertion that its Jurisdiction Extended over Petitioners because they were IAPs of a State member bank is incorrect

The Board held that "section 8(e)(1) of the FDI Act establishes that the Board has jurisdiction to prohibit 'any institution-affiliated party' . . . who has violated 'any law or regulation,' 'engaged or participated in any

16

unsafe or unsound practice in connection with any insured depository institution . . .,' or 'engaged in any act . . which constitutes a breach of such party's fiduciary duty.'" Ex. 6 at 12. Not so. The Board's construction conveniently drops the operative language of "appropriate Federal banking agency." The jurisdiction derives from the entity's status, not from the IAP's affiliation.

The Board contends that its construction is correct because "[t]o hold otherwise would lead to the untenable result of requiring reliance on the FDIC to provide for the safety and soundness of a Board-supervised institution that currently employs the IAP." Ex. 8 at n. 13. But that is the natural consequence of the congressionally defined term "appropriate Federal banking agency." If the FDI Act "falls short of providing safeguards desirable or necessary to protect the public interest, that is a problem for Congress, and not the Board or the courts, to address." *Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 374, 106 S. Ct. 681, 88 L. Ed. 2d 691 (1986).

"Although agencies must be able to change to meet new conditions arising within their sphere of authority, any expansion of agency jurisdiction must come from Congress and not the agency itself." *Id.* at

365 (internal citations omitted) (stating that the Board's definition of "banks" that attempted to bring certain institutions within its authority was unreasonable and outside its authority); *First Premier Bank v. U.S. Consumer Fin. Prot. Bureau*, 819 F. Supp. 2d 906, 918–19 (D.S.D. 2011) ("the Board cannot fill a gap when none exists") citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) ("[t]here is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted"); *Friends of Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1124 (8th Cir.1999) (determining the Forest Service's broadening of a statutorily restrictive phrase "that particular lake" to mean more than one lake and to redefine the term was contrary to the clearly expressed intent of Congress when the plain language and its context were unambiguous).

## E.    The Board's Interpretation Conflicts with Section 1818(i)(3)

The provisions of the FDI Act must be interpreted to be compatible, not contradictory, and yield predictable results. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) ("A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme,  and fit, if possible, all

parts into an harmonious whole.'") (internal citations omitted). The Board's proposed construction results in internal inconsistency within the Act and would raise a host of new disputes over the FDI Act's plain meaning.

After the Petitioners left Central and affiliated with Farmers, they were (and are) still subject to the FDIC's jurisdiction. 12 U.S.C. § 1818(i)(3). Section 1818(i)(3) provides continuing jurisdiction by **the appropriate Federal banking agency** over an institution-affiliated party after the IAP's termination of employment and states:

> The resignation, termination of employment or participation, or separation of an institution-affiliated party . . . shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice or order and proceed under this section against any such party . . ..

12 U.S.C. § 1818(i)(3); *see also Wheeler v. Office of the Comptroller of the Currency of the U.S.*, No. Civ. A. 3-98-cv-2708-P, 1998 WL 872945, at *5 (N.D. Tex. Dec. 1998) (section 8(i)(3) was enacted to enable the appropriate Federal banking agency to retain jurisdiction over individuals who were IAPs "at the time of the alleged violations").

The Board agrees that pursuant to Section 1818(i)(3), the appropriate Federal banking agency is the FDIC, but contends that it

19

also has concurrent jurisdiction: "Although the FDIC retains jurisdiction over [Petitioners'] conduct pursuant to section 8(i)(3) of the Federal Institutions Reform, Recovery, and Enforcement Act ('FIRREA'), nothing in that provision vitiates the Board's jurisdiction over its own IAPs as set forth in section 8(e)(1) of the FDI Act. . . . [T]he statute permits concurrent jurisdiction over IAPs who formerly worked at an FDIC-supervised institution and then transitioned to a state member bank." *Id.* at 12-13.

Under the Board's construction, it is entitled to enforce banking regulations with respect to conduct at Central—an institution regulated exclusively by the FDIC—because two of Central's IAP's subsequently moved to Farmers, even though the FDIC retained jurisdiction to regulate the IAP's past conduct at Central.  The FDI Act does not provide for such concurrent jurisdiction. To the contrary, while the Board and the FDIC coordinate on enforcement matters, only one agency exercises exclusive jurisdiction over such matter and has the sole power to issue orders in such matter. As Scott G. Alvarez (then General Counsel) testified on behalf of the Federal Reserve before the U.S. House of Representatives:

> **In the exercise of our enforcement authority, the Federal Reserve works closely with other state and federal banking regulators, as well as other state and federal law enforcement agencies, on enforcement matters that raise issues within their respective jurisdiction**. These efforts have led to many successful coordinated enforcement actions with these agency counterparts. The Federal Reserve refers matters that come to our attention during the supervisory process to other appropriate federal and state agencies, including law enforcement authorities… The Federal Reserve's enforcement program serves the important purpose of addressing serious problems found in the normal course of our supervision and regulation of the financial institutions under [its] jurisdiction.

Testimony by Scott G. Alvarez, General Counsel Settlement Practices Before the Committee of Financial Services, U.S. House of Representatives, Washington D.C., 2012 WL 2068543, at **1, 4 (F.R.B. May 16, 2012) (emphasis added).

## II. Absent an Injunction, the Petitioners will suffer irreparable harm

The reasonable fear of being deprived of a livelihood, an individual's loss of income, the stigma of job loss under questionable circumstances, and the barriers of restoring income and status caused by an unlawful prohibition from working in the only field in which Petitioners are qualified and after decades of investment satisfies the irreparable harm requirement for a stay. *Stone v. Trump*, 280 F. Supp. 3d 747, 768 (D. Md. 2017) (transgender military service members were entitled to

preliminary injunction requiring reinstatement pending equal protection challenge to presidential directive); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood."); *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (finding irreparable harm where professional opportunities are limited) citing *Enyart v. National Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) (irreparable harm demonstrated by loss of chosen profession and professional stigma); *Roig v. Puerto Rico. Nat'l Guard*, 47 F. Supp. 2d 216, 222 (D.P.R. 1999) (loss of job and stigma of being discharged for person whose salary represents his livelihood causes undue hardship to him and his family and gives rise to irreparable harm).

Petitioners are not employed and cannot be employed *by anyone* in their chosen field, affecting their livelihood. **Exhibit 10** at 66 (Mr. Smith began in the field in 2002); *id.* at 137 (Mr. Kiolbasa began at Central in late 2010). Under the circumstances here, where the Board invalidly exercised jurisdiction, the Petitioners demonstrate irreparable harm absent a stay.

### III.     The Board will Suffer No Harm and the Public Interest Supports a Stay.

The remaining two factors of the stay standard—harm to Appellees and the public interest—merge when, as here, the government is the opposing party. *Nken*, 556 U.S. at 435. Neither the Board nor the public interest will be harmed if the Petitioners are permitted to work in the field in which they have experience while the appeal is pending.

Strong public interest exists in ensuring that the government complies with its obligations under the law. Congress expressly constrained the Board's jurisdiction via statute. "The public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate." *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 33 (D.D.C. 2018) citing *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977) (recognizing that "there is an overriding public interest ... in the general importance of an agency's faithful adherence to its statutory mandate."). A stay will advance the public interest in regulatory certainty and the rule of law.

## CONCLUSION

For the foregoing reasons, the Petitioners Frank Smith and Mark Kiolbasa respectfully request the Court to grant their motion for a stay

pending the Court's review of the Orders and Decisions of The Board of

Governors of The Federal Reserve System.

DATED: May 14, 2021.

Respectfully submitted,

By: *s/Jordan Factor*

Jordan Factor
Rachel A. Sternlieb
ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
E-mail: jfactor@allen-vellone.com
E-mail: rsternlieb@allen-vellone.com

**ATTORNEYS FOR PETITIONERS, FRANK E.
SMITH AND MARK A. KIOLBASA**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing motion complies with the word limit set forth in Fed. R. App .P. Rule 27(d)(2)(A) because it contains 4,686 words according to the word count feature in Microsoft Word.

<u>*s/Jordan Factor*</u>
Jordan Factor

**Respondents to be Served per 10TH CIR. R. 15.2:**

Board of Governors of the Federal Reserve System
Office of the Secretary
20th & Constitution Avenue, NW
Washington, DC 20551

Jose Ceppi, Esq., MS K1PL00
Mitchell Klein, Esq., MS K1PL00
Enforcement Counsel
Board of Governors of the Federal Reserve System
jose.p.ceppi@frb.gov
mitchell.b.klein@frb.gov

Office of Financial Institution Adjudication
3501 N. Fairfax Drive
Arlington, VA 22226
ofia@fdic.gov

Wyoming Division of Banking
ATTN: Albert L. Forkner, Commissioner
2300 Capitol Avenue, 2nd Floor
Cheyenne, Wyoming 82002

Devin Kenney
Assistant Attorney General
Wyoming Attorney General's Office
Kendrick Building
2320 Capitol Avenue
Cheyenne, Wyoming 82002
devin.kenney1@wyo.gov