UNITED STATES COURT OF APPEALS

FOR THE

TENTH CIRCUIT

| | | |
|---|---|---|
| FRANK E. SMITH and MARK A. KIOLBASA, | ) | |
| | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Appeal No. 21-9538 |
| | ) | |
| BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## PETITIONERS' CORRECTED OPENING BRIEF

Jordan Factor
Vandana S. Koelsch
Rachel A. Sternlieb
ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
jfactor@allen-vellone.com
vkoelsch@allen-vellone.com
rsternlieb@allen-vellone.com

*Attorneys for Petitioners, Frank E. Smith and Mark A. Kiolbasa*

**Oral Argument is requested.**

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................... 1

STATEMENT OF JURISDICTION ............................................................. 2

STATEMENT OF ISSUES .......................................................................... 3

STATEMENT OF THE CASE ..................................................................... 3

SUMMARY OF ARGUMENT .................................................................... 6

LEGAL STANDARD .................................................................................. 7

ARGUMENT ............................................................................................... 8

    I.     The Restrictions on Removing the Board's ALJs Violate the Constitution ............................................................................................... 8

    A.    The Board's ALJs are Unconstitutionally Shielded from Executive Supervision. ........................................................................... 11

    B.    The Board's ALJs are Inferior Officers of the United States ............... 12

    C.    The Bureaucratic Maze in Which ALJs Reside Immunizes Them From Removal ....................................................................................... 14

    II.    The Board Had No Jurisdiction over Petitioners' Conduct at Central 17

    A.    Congress intended for each agency to have exclusive enforcement jurisdiction over the institutions that they regulate ............................ 17

    B.    Under the Plain Language of Section 1813(q), the FDIC is "the appropriate Federal banking agency" and has exclusive jurisdiction over conduct at Central .................................................................................. 19

    C.    The Plain Language of Section 1818 authorizes only the "appropriate Federal banking agency" to conduct enforcement proceedings ............ 20

    D.    The Board's Interpretation Conflicts with Section 1818(i)(3). ............. 26

CONCLUSION ............................................................................................ 28

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................ 28

CERTIFICATE OF COMPLIANCE………………………………………………30

CERTIFICATE OF SERVICE.........................................................................31

**ATTACHMENTS:**

Exhibit 1: Interagency Administrative Law Judge Agreement…………………....…1

# TABLE OF AUTHORITIES

## Cases

*Am. Bus Ass'n v. Slater,* 231 F.3d 1 (D.C. Cir. 2000) .................................................. 23

*Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.,* 29 F.3d 993 (5th Cir. 1994) ................................................................................................................................ 19

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................... 13

*Burke v. Board of Governors of Federal Reserve System*, 940 F.2d 1360 (10th Cir. 1991) ................................................................................................................................ 8

*Central Bank & Trust v. Frank Smith, et al.,* No. 186-671 (Laramie County, Wyoming) ................................................................................................................................ 5

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ........................................................... 15

*DeNaples v. OCC,* 706 F.3d 481 (D.C. Cir. 2013) ....................................................... 9

*Dragotta v. W. View Sav. Bank,* 395 F. App'x 828 (3d Cir. 2010) ............................. 24

*Dutcher v. Matheson,* 840 F.3d 1183 (10th Cir. 2016) ............................................... 23

*Edmond v. United State*s, 520 U.S. 651 (1997) ........................................................... 10

*F.D.I.C. v. Hurwitz*, 384 F. Supp. 2d 1039 (S.D. Tex. 2005) ..................................... 24

*F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008) ............................................ 24

*Forest Guardians v. U.S. Fish & Wildlife Serv.,* 611 F.3d 692 (10th Cir. 2010) ......... 8

*Free Enterprise Fund v. PCAOB,* 561 U.S. 477 (2010) .............. 3, 7, 10, 11, 12, 15, 17

*Freytag v. Commissioner*, 501 U.S. 868 (1991) ............................................... 11, 13, 14

*Hackwell v. United States,* 491 F.3d 1229 (10th Cir. 2007) ...................................... 23

*Helkowski v. Sewickley Sav. Bank,* No. 2:09-CV-633, 2009 WL 3350453 (W.D. Pa. Oct. 15, 2009) ................................................................................................................... 24

*In the Matter of Richard Alan Henderson and Philip Henry Cooper, Institution-affiliated Parties of Regions Bank, Birmingham, Alabama,* No. 16-027-G-1, 2016 WL 7667935 (F.R.B. Dec. 20, 2016) ..................................................................... 25

*Inv. Co. Inst. v. FDIC,* 815 F.2d 1540 (D.C. Cir. 1987)................................ 20

*Killip v. Off. of Pers. Mgmt.,* 991 F.2d 1564 (Fed. Cir. 1993).................................. 18

*Long v. SSA*, 635 F.3d 526 (Fed. Cir. 2011).................................. 17

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) ........................................ 13, 14, 17

*Michigan v. E.P.A.,* 268 F.3d 1075 (D.C. Cir. 2001).................................. 18

*Modoc Lassen Indian Hous. Auth. v. United States Dep't of Hous. & Urb. Dev.,* 881 F.3d 1181 (10th Cir. 2017).................................. 18

*Morrison v. Olson*, 487 U.S. 654 (1988) .................................. 11

*Myers v. United States*, 272 U.S. 52 (1926)........................................ 10, 11

*Rapanos v. United States,* 547 U.S. 715 (2006) .................................. 23

*Rapaport v. U.S. Dep't of Treasury, Off. of Thrift Supervision,* 59 F.3d 212 (D.C. Cir. 1995) .................................. 8

*Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183 (2020) ......... 9, 10, 15

*Wheeler v. Office of the Comptroller of the Currency of the U.S., No.* Civ. A. 3-98-cv-2708-P, 1998 WL 872945 (N.D. Tex. Dec. 1998).................................. 27

## Statutes

12 C.F.R. § 263.................................. 14

12 C.F.R. § 308........................................ 5, 16

12 C.F.R. § 337.................................. 19

12 U.S.C. § 1818.................................. 22, 27, 28

12 U.S.C. § 242........................................ 5, 16

5 U.S.C. § 1202.................................. 17

5 U.S.C. § 3105.................................. 13

5 U.S.C. § 5372.................................. 13

5 U.S.C. § 556.................................. 13

5 U.S.C. § 557.................................. 13

iv

5 U.S.C. § 7521 ................................................................................ 17

FIRREA, Pub. L. No. 101–73, § 916, 103 Stat. 183 (Aug. 9, 1989) ....................... 5, 16

The Federal Deposit Insurance Act, § 3 .................................................. 25

The Federal Deposit Insurance Act, § 8 .................................................. 3, 25

## Other Authorities

1 Annals of Cong. (1789) (J. Madison). ................................................ 12

Constitution of the United States, Art. II ............................................ 9

FIRREA Leg. Hist., 1989 WL 1178203 (A.&P.L.H.) ................................... 26

FIRREA-LH 84, 1989 WL 1178256 (A.&P.L.H.) ...................................... 28

FRB Interpretive Letter, *1996 WL 473986 (Dec. 20, 2016)* ...................... 25

Letter from James Madison to Thomas Jefferson (June 30, 1789), 16 Documentary
   History of the First Federal Congress 893 (2004) ................................ 10

Powers Inconsistent With the Purposes of Federal Deposit Insurance Law, 4 OCC
   Q.J. 35, 36, 4 NO. 2 OCC Q.J. 35, 36, 1985 WL 201277 .......................... 19, 20

*Testimony by Scott G. Alvarez, General Counsel Settlement Practices Before the
   Committee of Financial Services, U.S. House of Representatives, Washington
   D.C., 2012 WL 2068543 (F.R.B. May 16, 2012)* .............................. 27

## INTRODUCTION

The Board of Governors of the Federal Reserve (the "Board") has the authority to permanently expel bankers from the industry. Pursuant to 12 U.S.C. § 1818(e), the Board issued a Notice of Intent to Prohibit Petitioners Frank Smith and Mark Kiolbasa from the banking industry, thereby initiating enforcement proceedings wherein an administrative law judge ("ALJ") recommended sanctions that deprived them of their livelihoods. The Board adopted the ALJ's recommendations and issued a Final Decision and Orders of Prohibition (the "Orders") permanently barring Petitioners from the banking industry.

This Court should vacate the Orders, which rest on a constitutionally infirm basis and exceed congressional authority. The Board's structure unconstitutionally shields its ALJs—who are inferior officers of the United States that have sweeping authority to conduct enforcement proceedings—from presidential control and supervision. That structure renders it impossible for the President to ensure that these inferior officers are properly executing the laws and makes illusory the power to supervise (and terminate) an ALJ. Not only is the President

prohibited from removing the Board's ALJs, the President lacks the authority to remove their supervisors except for cause. Under the Supreme Court's decision in *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 492 (2010), that structure is patently unconstitutional. The Supreme Court has held expressly that multiple layers of tenure protection subvert Article II. This well-recognized constitutional defect invalidates the proceedings here.  A second and independent basis for reversal is that the Board lacked jurisdiction to conduct these enforcement proceedings. The Orders are based on conduct that occurred at an institution regulated by another agency, the Federal Deposit Insurance Corporation (the "FDIC"). The express and unambiguous language of the FDI Act confers sole jurisdiction on the FDIC to regulate the conduct at issue. The Orders are constitutionally defective and lacking jurisdiction.  They should be vacated.

## STATEMENT OF JURISDICTION

On March 24, 2021, the Board issued final Orders removing Petitioners from the banking industry. The Board erroneously asserted jurisdiction over the Petitioners under section 8(e)(1) of the FDI Act. Ex.

8 at 12; 12 U.S.C. § 1818(e)(1). The Board's unlawful jurisdiction is one basis for Petitioners' appeal.

On April 21, 2021, the Petitioners filed a Notice of Appeal. This Court has jurisdiction pursuant to 12 U.S.C. § 1818(h)(2) because the home offices of the depository institutions with which the Petitioners were affiliated are located in the Tenth Circuit.

## STATEMENT OF ISSUES

1.    The ALJ presiding over the proceeding is sheltered from removal by multiple layers of tenure protection, in violation of Article II of the Constitution. Are the resulting Orders banning Petitioners from the banking industry invalid?

2.    The conduct at issue occurred at an institution regulated by a different federal agency with sole jurisdiction. Did the Board exceed its jurisdiction by attempting to regulate such conduct?

## STATEMENT OF THE CASE

Petitioners Frank Smith and Mark Kiolbasa were institution-affiliated parties ("IAPs") of Central Bank & Trust ("Central"), an entity under the exclusive jurisdiction of the Federal Deposit Insurance Corporation (the "FDIC"). Certified Appendix of Administrative Record ("Cert. List") No. 180 at 1-3. The Petitioners left Central and became affiliated with Farmers State Bank ("Farmers"), an entity that falls

under the regulatory jurisdiction of the Board. *Id.* at 12. In 2016, Central sued the Petitioners in a civil proceeding alleging that they improperly took certain customer information from the bank shortly before leaving Central. *Central Bank & Trust v. Frank Smith, et al.*, No. 186-671 (Laramie County, Wyoming). *Id.* at 10-11.

The FDIC declined to censure the Petitioners for this conduct. But on December 12, 2018, the Board supplanted the FDIC's authority and brought enforcement proceedings against Petitioners for their conduct at Central. Cert List. No. 2.

The Board is comprised of seven heads, each removable only for cause. 12 U.S.C. § 242. The Board does not directly employ or supervise its ALJs. Instead, the Board and three other federal banking agencies— the FDIC, the Office of the Comptroller of the Currency (the "OCC"), and the National Credit Union Administration (the "NCUA")—collectively employ a "pool of administrative law judges" to adjudicate enforcement proceedings. *See* FIRREA, Pub. L. No. 101–73, § 916, 103 Stat. 183 (Aug. 9, 1989). Those agencies manage their ALJs through the Office of Financial Institution Adjudication (the "OFIA"), an interagency body consisting of representatives of the four respective agencies. 12 C.F.R. §§

4

308.3, 308.103. Under the memorandum of understanding governing OFIA operations, all four agencies and all seven Board members must agree unanimously on all substantive decisions. **Exhibit 1**. ("All decisions," save purely administrative matters, "shall be made by the prior approval of all of the committee members"). *Id*. at 109, ¶4.

Throughout the proceeding, Petitioners contested the Board's jurisdiction because they were IAPs of Central at the time of the complained conduct. Cert. List No. 174 at 19-40. Central is a non-member bank, not subject to the Board's jurisdiction; Central is instead subject to the regulatory oversight of the FDIC. Accordingly, the FDIC, not the Board, had jurisdiction over IAP misconduct at Central. On May 13, 2020, the Appellants filed Exceptions to the Recommended Decision, reiterating the Board's lack of jurisdiction. *Id*. About a year later, on March 24, 2021, the Board adopted the ALJ's Recommended Decision. Cert. List No. 108. It affirmed the ALJ's determination on the merits and held that "the statute's plain language extends jurisdiction over any practice or act and does not place a time-bar or restriction on when or where such practice or act may have occurred." *Id*.

## SUMMARY OF ARGUMENT

The Board's proceedings below were unconstitutional and the resulting Order must be vacated. The Board's ALJs are "inferior officers" within the meaning of the Constitution who exercise an extraordinary array of executive power. However, neither the President nor "a subordinate he could remove at will" can "decide[] whether the officer's conduct merit[s] removal under the good-cause standard." *Free Enterprise Fund v. PCAOB,* 561 U.S. 477, 495 (2010). Instead, the Board's ALJs are shielded from executive supervision and removal by layers of tenure protection. In *Free Enterprise Fund*, the Supreme Court held that **two** layers of for-cause removal protections unconstitutionally undermined the President's control of the Executive Branch. That holding applies to the **multiple** layers of tenure protections here and is dispositive of the constitutional issue.

The Order also violates the Administrative Procedures Act by exceeding congressionally-granted statutory authority. Federal law confers sole jurisdiction upon three independent agencies—the Board, the FDIC, and the OCC—to regulate the institutions under their respective authority. There is no concurrent or overlapping jurisdiction

6

when it comes to enforcement proceedings. The Board overstepped its bounds by arrogating to itself jurisdiction concurrent and overlapping with the FDIC.

## LEGAL STANDARD

Section 706(2) of Title 5 of the United States Code authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Burke v. Board of Governors of Federal Reserve System*, 940 F.2d 1360, 1365 (10th Cir. 1991) citing 5 U.S.C § 706(2)(a), (d), (e). This Court reviews an agency's legal conclusions *de novo* with any requisite deference accorded to an agency's statutory interpretation. *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2010). However, when as here multiple agencies administer the same statute, *Chevron* deference is inapplicable. *Rapaport v. U.S. Dep't of Treasury, Off. of Thrift Supervision*, 59 F.3d 212, 216 (D.C. Cir. 1995) (no *Chevron* deference applies to OTS's interpretation of Section 1818(e), the FDI Act as agency shares responsibility for the administration of the statute with at least three

7

other agencies). *DeNaples v. OCC*, 706 F.3d 481 (D.C. Cir. 2013) (Board of Governors of Federal Reserve not entitled to deference of its interpretation of FDI Act because statute is administered by multiple agencies).

**ARGUMENT**

## I.     The Restrictions on Removing the Board's ALJs Violate the Constitution

The Constitution requires that the "executive Power shall be vested in a President of the United States of America," who must "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; id., § 3. The Appointments Clause, Art. II, § 2, cl. 2, identifies two categories of "lesser executive officers" who assist the President in executing the laws: principal officers and inferior officers. *Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183, 2197 (2020).

The President has exclusive power to "nominate, and by and with the Advice and Consent of the Senate, . . . appoint" the first category—principal "Officers of the United States." Art. II., § 2, cl. 2. Inferior officers are those "whose work is directed and supervised at some level by" the

principal officers. *Free Enterprise Fund*, 561 U.S. at 510 (quoting *Edmond v. United State*s, 520 U.S. 651, 662-663 (1997)).

The principal officers who wield authority on the President's behalf "must remain accountable to" him. *Seila Law LLC,* 140 S. Ct. at 2197 quoting *Free Enterprise Fund*, 561 U.S. at 492 ("The view that 'prevailed, as most consonant to the text of the Constitution' and 'to the requisite responsibility and harmony in the Executive Department,' was that the executive power included a power to oversee executive officers through removal." (quoting Letter from James Madison to Thomas Jefferson (June 30, 1789), 16 Documentary History of the First Federal Congress 893 (2004)). Only through that chain of command can the President be "held fully accountable" to the people "for discharging his own responsibilities." *Free Enterprise Fund*, 561 U.S. at 513; *Myers v. United States*, 272 U.S. 52, 122 (1926). (emphasizes the necessity for exclusive power of removal).

The "power of removing those for whom [the President] cannot continue to be responsible"—like the power to appoint officers in the first place—is "essential to the execution of the laws by" the President. *Seila Law LLC*, 140 S. Ct. at 2198. "Without such power, the President could

9

not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enterprise Fund*, 561 U.S. at 514; *Seila Law LLC*, 140 S. Ct. at 2203 ("the Framers made the President the most democratic and politically accountable official in Government" and the President cannot delegate ultimate responsibility or the active obligation to supervise that goes with it," because Article II "makes a single President responsible for the actions of the Executive Branch.") *quoting Free Enterprise Fund*, 561 U.S., at 496–497); *Morrison v. Olson*, 487 U.S. 654, 691 (1988) ("the real question is whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty"); *Myers*, 272 U.S. at 134 (as President has "implicit faith" in his subordinates, "[t]he moment that he loses confidence in the intelligence, ability, or loyalty of any one of them, he must have the power to remove him without delay"). The Constitution compels strict compliance with Article II with respect to the President's authority to remove an officer at will. *Freytag v. Commissioner*, 501 U.S. 868, 880 (1991) ("The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic.").

**A.    The Board's ALJs are Unconstitutionally Shielded from Executive Supervision.**

The President cannot constitutionally "be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer." *Free Enter. Fund,* 561 U.S. at 484. The President's removal power protects "the chain of dependence," guaranteeing that "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community." *Id.* quoting 1 Annals of Cong. at 499 (1789) (J. Madison). That chain of accountability breaks down if the President can remove an agency head only for cause, and the agency head can in turn remove inferior officers only for cause.

The Supreme Court in *Free Enterprise Fund* thus held unconstitutional the dual-level tenure protections insulating the Public Company Accounting Oversight Board, a multimember body of inferior officers housed within the SEC. *Free Enterprise Fund*, 561 U.S. at 492. There, the President could remove SEC Commissioners (the heads of the department) only for cause, and the Commissioners, in turn, could remove Board members only for cause. *Id.* 495-96. That structure

destroyed presidential oversight and accountability: "Neither the President, nor anyone directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over the [the inferior officers]." *Id*. at 496.

Thus, the Supreme Court held that dual layers of tenure protection of inferior officers violate Article II.

## B.    The Board's ALJs are Inferior Officers of the United States

The Board's ALJs are appointed to a position created by statute that spells out their "duties, salary, and means of appointment." *Freytag*, 501 U.S. at 881; *see also* 5 U.S.C. §§ 556-57 (ALJ functions); *id.*§ 3105 (hiring practices); *id*. § 5372 (pay scale). They "occupy a continuing position established by law." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (internal quotations omitted).

Furthermore, they exercise "significant authority pursuant to the laws of the United States" in presiding over adversarial hearings while deploying the tools of an Article III judge. *Id*. at 2051 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)). The Board's ALJs are endowed with the power to take testimony, conduct trial, rule on the admissibility of

12

evidence, and enforce compliance with discovery orders. 12 C.F.R. § 263.5 (authority of the Board's ALJ); *see also Lucia*, 138 S. Ct. at 2053. (discussing powers of the SEC's ALJs); *Freytag*, 501 U.S. 868 (same for United States Tax Court special trial judges). The Board's ALJs preside over adversarial proceedings where the government prosecutes substantial penalties against private citizens and act as crucial decisionmakers in regulatory enforcement.

The fact that ALJs typically do not render final decisions, because their rulings are subject to plenary review by the Board, 12 C.F.R. § 263.4, does not alter their status as inferior officers. The Supreme Court has "explicitly reject[ed]" the "theory that final decision making authority is a *sine qua non* of officer status." *Lucia*, 138 S. Ct. at 2052 n.4; *see also Freytag*, 501 U.S. at 873 (special trial judges "prepare proposed findings and an opinion"). Here, the ALJ issued a 107-page Recommended Decision containing "factual findings, legal conclusions, and appropriate remedies." *See Lucia*, 138 S. Ct. at 2054. Just as with the SEC and the Tax Court, the ALJs wield significant power and are thus inferior officers of the United States.

Even if the Board's ALJs are performing "quasi-legislative" or "quasi-judicial" functions, they are still subject to the President's supervision. *Seila Law LLC*, 140 S. Ct. at 2199; *see id*. at 2216-17 (Thomas, J., concurring). Although agencies' activities "take 'legislative' and 'judicial' forms," "they are exercises of … the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). And the ALJs' enforcement proceeding here plainly involve exercises of executive power. *Seila Law LLC*, 140 S. Ct. at 2187 ("[d]irector possesses significant administrative and enforcement authority, including the power to seek daunting monetary penalties against private parties in federal court—a quintessentially executive power").

### C.   The Bureaucratic Maze in Which ALJs Reside Immunizes Them From Removal

To comport with Article II, agency heads must be able to remove their respective ALJs at will. *Free Enter. Fund*, 561 U.S. at 495. Several features combine to give the Board's ALJs layers of protection that unconstitutionally immunize them "from Presidential oversight, even as they exercised power in the people's name." *Id.* Rather than giving the President or a direct subordinate a clear path to holding ALJs

14

accountable for their exercise of executive power, the Board's structure operates like a shell game. The ALJ, who wields significant executive power, can only be removed for cause. But no single official accountable to the President decides whether cause exists.

As summarized above, the Board and three other agencies, the FDIC, OCC, and NCUA, collectively employ a "pool of administrative law judges" to adjudicate enforcement proceedings. *See* FIRREA, Pub. L. No. 101–73, § 916, 103 Stat. 183 (Aug. 9, 1989). Those agencies manage their ALJs through OFIA, an interagency body consisting of representatives of the respective agencies. 12 C.F.R. §§ 308.3, 308.103. Under the memorandum of understanding governing OFIA operations, all four agencies must agree to initiate ALJ removal proceedings. Ex. 1 at 109. ("All decisions," save purely administrative matters, "shall be made by the prior approval of all of the committee members"). Each agency can apparently veto any effort to remove an ALJ: "Any change to [OFIA] Staff personnel" requires "prior written approval of all Agencies." *Id.* Thus, four agencies must collectively agree to initiate removal proceedings, and three of those agencies' heads, including the head of the Board, are themselves removable only for cause. 12 U.S.C. § 242.

Even assuming unanimous agreement amongst the four independent agencies, the removal decision advances to a fifth agency, the Merit Systems Protection Board (the "MSPB"), to make the final decision whether cause for removal exists—and the President's control over the MSPB is again restricted by for-cause protection for those agency heads. *See* 5 U.S.C. § 7521(a). The MSPB can remove ALJs only for "good cause," *id.*, meaning for gross derelictions of duty. *Long v. SSA*, 635 F.3d 526, 534-35 (Fed. Cir. 2011). And the President can remove MSPB members themselves only for cause. 5 U.S.C. § 1202(d) (removal only for "inefficiency, neglect of duty, or malfeasance in office"). This scheme utterly defeats constitutionally required presidential supervision and control.

The Petitioners are entitled to "relief sufficient to ensure that the [laws] to which [they are] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund,* 561 U.S. at 513. That relief includes proceedings before an adjudicator accountable to the President. *Id.; Lucia,* 138 S. Ct. at 2055 ("To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled.").

## II.   The Board Had No Jurisdiction over Petitioners' Conduct at Central

The Petitioners bring a straightforward legal challenge to the Board's statutory interpretation of its jurisdiction. Agency action should be "h[e]ld unlawful and set aside" where it is "in excess of statutory jurisdiction" or "not in accordance with law." 5 U.S.C. § 706(2)(C), (2)(A). The basis of overturning agency action is rooted in the principle that an agency is a creature of statute, limited by the authority given by Congress. *Modoc Lassen Indian Hous. Auth. v. United States Dep't of Hous. & Urb. Dev.*, 881 F.3d 1181, 1192 (10th Cir. 2017) citing *Killip v. Off. of Pers. Mgmt.*, 991 F.2d 1564, 1569 (Fed. Cir. 1993) (explaining that federal agencies are "creature[s] of statute") and *Michigan v. E.P.A.*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) ("[I]f there is no statute conferring authority, a federal agency has none.").

### A.   Congress intended for each agency to have exclusive enforcement jurisdiction over the institutions that they regulate

The statutory framework set forth in the FDI Act confers exclusive jurisdiction on the FDIC to regulate unsafe and unsound practices at State nonmember banks, such as Central. Permitting the Board, rather than the FDIC, to regulate the conduct that occurred at Central requires

ignoring the detailed framework for regulatory enforcement set forth in the FDI Act, the strict adherence to which is necessary "for orderly review of the various stages of enforcement." *Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir. 1994).

The different federal banking agencies derive their authority to take enforcement action against unsafe and unsound banking practices from their authority to regulate the financial institutions themselves. 12 C.F.R. § 337.1 (explaining that the FDIC has the authority to regulate "certain banking practices which are likely to have adverse effects on the safety and the soundness of insured State nonmember banks."); *see also Powers Inconsistent With the Purposes of Federal Deposit Insurance Law*, 4 OCC Q.J. 35, 36, 4 NO. 2 OCC Q.J. 35, 36, 1985 WL 201277, at *4 (12 C.F.R. § 337 entitled "Unsafe and Unsound Banking Practices," applies only to insured nonmember banks).

The separation of regulatory authority under the Federal Reserve System has been summarized as follows:

> Federal regulation effectively divides the United States commercial banking community into three major categories. Banks that choose to become members of the Federal Reserve System fall under the jurisdiction of the Board of Governors of the Federal Reserve System. See 12

18

U.S.C. §§ 221, 248 (1982). National banks come within the jurisdiction of the Comptroller of the Currency. *See id.* Finally, insured state banks that are not members of the Federal Reserve System operate under the watchful eye of the FDIC. See *id* §§ 1811, 1815. Although the FDIC insures the deposits of all three categories, *id.* § 1811, it regulates only the third group, see generally *id.* § 1815.

*Inv. Co. Inst. v. FDIC*, 815 F.2d 1540, 1542 (D.C. Cir. 1987). Thus, each of the three regulators only have the authority to regulate unsafe and unsound practices having adverse effects on the financial institutions falling within their respective domains. *Id.*; *see also Powers Inconsistent With the Purposes of Federal Deposit Insurance Law*, 4 OCC Q.J. 35, 36, 4 NO. 2 OCC Q.J. 35, 36, 1985 WL 201277, at \*3 (absence of discussion of overlap between the authority of the FDIC and other Federal bank regulatory agencies indicates Congress did not contemplate such concurrent jurisdiction).

**B.    Under the Plain Language of Section 1813(q), the FDIC is "the appropriate Federal banking agency" and has exclusive jurisdiction over conduct at Central**

The FDI Act defines "appropriate Federal banking agency" as follows:

The term "appropriate Federal banking agency" means . . (2) the Federal Deposit Insurance Corporation, in the case of . . .A) any State nonmember insured bank; . . .

(3) the Board of Governors of the Federal Reserve System,
in the case of . . .(A) any State member bank; . . .

12 U.S.C. § 1813(q)(2), (q)(3). The Board concedes that Central is a "State

nonmember insured bank" for which the FDIC is the "appropriate

Federal banking agency." Cert. List No. 108 at 1-2.

**C.    The Plain Language of Section 1818 authorizes only the "appropriate Federal banking agency" to conduct enforcement proceedings**

Section 1818(e)(1) of FDI Act states, in relevant part, as follows:

Whenever **the appropriate Federal banking agency** determines that--

(A) **any institution-affiliated party** has . . .

(ii) engaged or participated in any unsafe or unsound practice in connection **with any insured depository institution** or business institution; or

(iii) committed or engaged in any act, omission, or practice which constitutes a breach of such party's fiduciary duty;

(B) by reason of the violation, practice, or breach described in any clause of subparagraph (A)--

(i) **such insured depository institution** or business institution has suffered or will probably suffer financial loss or other damage; . .

(iii) such party has received financial gain or other benefit by reason of such violation, practice, or breach; and

(C) such violation, practice, or breach--

20

(i) involves personal dishonesty on the part of such party; or

(ii) demonstrates willful or continuing disregard by such party for the safety or soundness of **such insured depository institution** or business tinstitution,

**the appropriate Federal banking agency for the depository institution** may serve upon such party a written notice of the agency's intention to remove such party from office or to prohibit any further participation by such party, in any manner, in the conduct of the affairs of any insured depository institution.

12 U.S.C. § 1818(e)(1) (emphasis added).

The plain language of Section 1818 authorizes "**the** appropriate Federal banking **agency for the depository institution**" to take enforcement action against an IAP for conduct that impacts "the safety or soundness **of such insured depository institution**" and only where "**such insured depository institution** or business institution has suffered or will probably suffer financial loss or other damage." *Id.*

The antecedent basis for "**the** depository institution" refers to the bank connected with the "unsound and unsafe practice," (Section 1818(e)(1)(A)(ii)); the one that "has suffered or will probably suffer financial loss or other damage," (Section 1818(e)(1)(B)(i)); or for which there is "willful and continuing disregard." (Section 1818(e)(1)(C)(ii)).

21

*Rapanos v. United States*, 547 U.S. 715, 732 (2006) ("The use of the definite article ('the') and the plural number ('waters') shows plainly that § 1362(7) does not refer to water in general."); *Dutcher v. Matheson*, 840 F.3d 1183, 1197 (10th Cir. 2016) citing *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000) ("Indeed, '[i]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").

The Board's findings all focus on Central as <u>the depository institution</u>: Petitioners "breached their fiduciary of duty of loyalty owed to Central" Cert. List No. 108 at 29); their "misconduct harmed Central" (*id.* at 49); and they "acted with willful or continuing disregard for Central's safety and soundness" (*id.* at 52). The FDIC, and only the FDIC, is the "appropriate Federal banking agency" for "the depository institution" allegedly harmed by Smith and Kiolbasa. *Hackwell v. United States*, 491 F.3d 1229, 1240 (10th Cir. 2007) (court "should look to the statutory definition of the term and begin with the ordinary meaning of that language").

The courts and the Board have repeatedly recognized that the Board's jurisdiction depends on which agency regulates the entity, not on the affiliation of the IAP. *F.D.I.C. v. Hurwitz,* 384 F. Supp. 2d 1039 (S.D. Tex. 2005*), rev'd in part, vacated in part sub nom. F.D.I.C. v. Maxxam, Inc.,* 523 F.3d 566 (5th Cir. 2008) (as the bank at issue was a "thrift," the "appropriate Federal banking agency" was OTS and not the FDIC which had jurisdiction over State nonmember insured banks); *Helkowski v. Sewickley Sav. Bank*, No. 2:09-CV-633, 2009 WL 3350453, at \*6 (W.D. Pa. Oct. 15, 2009), vacated on other grounds *Dragotta v. W. View Sav. Bank*, 395 F. App'x 828 (3d Cir. 2010) ("the provisions of the Federal Deposit Insurance Act . . . identifies the FDIC as the appropriate Federal Banking agency with oversight of Defendant as a state non-Federal Reserve member insured bank"; "general tenet that the enforcement responsibilities of the Federal Reserve Board generally only extend to state-chartered banks that are members of the Federal Reserve System and to certain foreign banking organizations, ***and that other federal regulators are responsible for examining banks, thrift institutions, and credit unions under their jurisdiction and for taking enforcement action***) citing 12 U.S.C. § 1813(q)(3) (emphasis

added); *In the Matter of Richard Alan Henderson and Philip Henry Cooper, Institution-affiliated Parties of Regions Bank, Birmingham, Alabama*, No. 16-027-G-1, 2016 WL 7667935, at *2 (F.R.B. Dec. 20, 2016) ("Regions is a state member bank subject to the jurisdiction of the Board of Governors under section 3(d)(2) of the FDI Act, 12 U.S.C. § 1813(d)(2).

Accordingly, the FDIC is the appropriate Federal banking agency in this matter within the meaning of sections 3(q)(3)(A) and 8(g)(1)(A) of the FDI Act, 12 U.S.C. §§ 1813(q)(3)(A) and 1818(g)(1)(A)."); FRB Interpretive Letter, 1996 WL 473986, at *1 (Dec. 20, 2016) ("First Midwest is a national bank, and as such is supervised by the Office of the Comptroller of the Currency and not by the Board of Governors of the Federal Reserve System ('Board'). For this reason and because of the nature of your dispute with First Midwest, we do not believe that this matter raises issues that are within the Board's jurisdiction.").

The Board argues, however, that the "depository institution" refers to the institution where an IAP is affiliated at the time that the Board decides whether to commence enforcement proceedings and not the institution where the misconduct occurred. Because Smith and Kiolbasa were working at Farmers State Bank (regulated by the Board) when the

24

Board commenced enforcement proceedings, the Board argues that it had adequate jurisdiction. In support, the Board argues that if someone committed misconduct at an unregulated business and then became an IAP at a Board-regulated bank, in that instance the Board may take action against the IAP.

But that is not the case here. In this instance, the alleged prior misconduct occurred at a bank regulated by a separate agency. Irrespective of a banking agency's prerogative to investigate an IAP's actions at an unregulated business, Congress gave only "the appropriate agency" jurisdiction to regulate conduct occurring at a _bank_. *See* Statement of William Taylor, Staff Director Division of Banking Supervision And Regulation, Federal Reserve System, Mar. 31, 1989, FIRREA Leg. Hist., 1989 WL 1178203 (A.&P.L.H.), 194 ("We, at the Federal Reserve, are committed and dedicated to addressing all instances of abuse and misconduct within the banking organizations subject to our jurisdiction.").

Moreover, the regulatory agencies coordinate to ensure that conduct by all IAP's is subject to oversight, even if they move to different banking institutions. Testimony by Scott G. Alvarez, General Counsel

Settlement Practices Before the Committee of Financial Services, U.S. House of Representatives, Washington D.C., 2012 WL 2068543, at **1, 4 (F.R.B. May 16, 2012). ("In the exercise of our enforcement authority, the Federal Reserve works closely with other state and federal banking regulators, as well as other state and federal law enforcement agencies, on enforcement matters that raise issues within their respective jurisdiction."). Congress armed regulators with all the necessary means to protect the institutions that they oversee.

### D.    The Board's Interpretation Conflicts with Section 1818(i)(3).

Perhaps the most effective means of ensuring adequate oversight of itinerant IAP's is the continuing enforcement jurisdiction of whichever agency oversaw the institution at which the alleged misconduct transpired. Section 1818(i)(3) provides continuing jurisdiction over an IAP by, and only by, the agency exercising authority over the institution at which the IAP terminated employment. 12 U.S.C. § 1818 (i)(3); *Wheeler v. Office of the Comptroller of the Currency of the U.S.*, No. Civ. A. 3-98-cv-2708-P, 1998 WL 872945, at *5 (N.D. Tex. Dec. 1998) (Section 8(i)(3) was enacted to enable the appropriate Federal banking agency to retain

jurisdiction over individuals who were IAPs "at the time of the alleged violations").

Section 1818(i)(3) is a backstop to Section 1818(e)(1). In other words, those provisions work in conjunction to ensure that a former IAP does not escape the reach of the agency that previously had jurisdiction; here the FDIC.

Legislative history confirms that Section 1818(i)(3) was intended to capture and address an IAPs conduct *after* he left an institution and joined another financial institution. *See e.g.*, FIRREA-LH 84, 1989 WL 1178256 (A.&P.L.H.), 44 ("An institution-related party cannot frustrate an administrative action against him **and take up employment with another financial institution** by merely resigning before an action is taken, nor will the closing of an institution **affect the agency's jurisdiction**.") (emphasis added).

Because "the appropriate Federal banking agency" in Section 1818(i)(3) is the FDIC, it is also "the appropriate Federal banking agency" in Section 1818(e)(1). After the Petitioners left Central and affiliated with Farmers, they were (and are) still subject to the FDIC's sole and exclusive jurisdiction for conduct that occurred at Central. 12 U.S.C. § 1818(i)(3).

27

The FDI Act does not provide support for the Board's attempted exercise of concurrent jurisdiction.

## CONCLUSION

For the foregoing reasons, Frank Smith and Mark Kiolbasa respectfully request the Court to vacate the Orders and Decisions of The Board of Governors of The Federal Reserve System.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Petitioners Frank Smith and Mark Kiolbasa request oral argument given the constitutional, statutory, and public policy issues presented in this complex agency proceeding. Oral argument would aid the Court in its decision-making process.

DATED: July 27, 2021.

Respectfully submitted,

By: *s/Vandana S. Koelsch*

Jordan Factor
Vandana S. Koelsch
Rachel A. Sternlieb
ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
jfactor@allen-vellone.com
vkoelsch@allen-vellone.com
rsternlieb@allen-vellone.com

**ATTORNEYS FOR PETITIONERS, FRANK E. SMITH AND MARK A. KIOLBASA**

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing reply complies with the word limit set forth in Fed. R. App. P. Rule 32(a)(7)(B)(i) because it contains 5,292 words according to the word count feature in Microsoft Word.

*s/ Vandana S. Koelsch*
Vandana S. Koelsch

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 27, 2021, a true and correct copy of the foregoing was sent via the Court's ECF System to the parties listed below:

Board of Governors of the Federal Reserve System
Office of the Secretary
20th & Constitution Avenue, NW
Washington, DC 20551

Jose Ceppi, Esq., MS K1PL00
Mitchell Klein, Esq., MS K1PL00
Enforcement Counsel
Board of Governors of the Federal Reserve System
jose.p.ceppi@frb.gov
mitchell.b.klein@frb.gov

Office of Financial Institution Adjudication
3501 N. Fairfax Drive
Arlington, VA 22226
ofia@fdic.gov

Wyoming Division of Banking
ATTN: Albert L. Forkner, Commissioner
2300 Capitol Avenue, 2nd Floor
Cheyenne, Wyoming 82002

Devin Kenney
Assistant Attorney General
Wyoming Attorney General's Office
Kendrick Building
2320 Capitol Avenue
Cheyenne, Wyoming 82002
devin.kenney1@wyo.gov

*/s/ Salowa Khan*
Allen Vellone Wolf Helfrich & Factor P.C.