**[ORAL ARGUMENT REQUESTED]**
**No. 21-9538**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

FRANK E. SMITH and MARK A. KIOLBASA,

*Petitioners*,

v.

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,

*Respondent.*

---

On Petition for Review of Final Orders and Decision
of the Board of Governors of the Federal Reserve System

---

**BRIEF FOR RESPONDENT**

---

Joshua P. Chadwick
Senior Special Counsel
Yonatan Gelblum
Senior Counsel
Katherine Pomeroy
Senior Counsel
Board of Governors of the
  Federal Reserve System
20th Street & Constitution
  Avenue, N.W.
Washington, D.C. 20551
(202) 452-2046

*Attorneys for Respondent*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES ......................................................xi

GLOSSARY ...................................................................................xii

INTRODUCTION ..............................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF THE ISSUES.............................................................4

PERTINENT STATUTES AND REGULATIONS .....................................4

STATEMENT OF THE CASE ...............................................................4

    A.    Statutory and Regulatory Background ...................................4

    B.    Factual and Procedural Background ......................................9

STANDARD OF REVIEW...................................................................11

SUMMARY OF ARGUMENT ..............................................................11

ARGUMENT....................................................................................13

I.    Petitioners' Constitutional Argument Does Not Entitle Them to Relief.......................................................................................13

    A.    Petitioners Have Waived Their Constitutional Argument ..14

    B.    Board ALJs Are Not Subject to Multiple For-Cause Protections from Removal as Officers of the Board.............19

C.      Multiple For-Cause Removal Protections for Board ALJs
        Would Not Be Unconstitutional ...........................................25

D.      Petitioners' Constitutional Argument Does Not Entitle
        Them to Relief from the Board's Orders ..............................33

II.  The Board Properly Exercised Jurisdiction over Petitioners
     Because They Were Affiliated with a Board-Regulated Bank.......36

A.      The Statutory Text Establishes the Board's Jurisdiction....37

B.      The Board's Interpretation of Section 1818(e) Is Compatible
        with Other Provisions of the FDIA ......................................43

C.      Section 1818's Statutory History Supports the Board's
        Jurisdiction, as Does Its Legislative History.......................49

D.      The Board's Interpretation Is Entitled to Deference ...........57

CONCLUSION ......................................................................................62

STATEMENT REGARDING ORAL ARGUMENT.................................63

STATUTORY AND REGULATORY ADDENDUM..............................A1

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ATTACHMENTS:

EXHIBIT 1 – Administrative Law Judge Agreement of 2018 ("OFIA
    Agreement")..................................................Attachment 1

EXHIBIT 2 – Resolution Appointing Administrative Law
    Judges .........................................................Attachment 2

# TABLE OF AUTHORITIES

Page

**Cases**

*Akin v. OTS,*
  950 F.2d 1180 (5th Cir. 1992)..............................................59

*Bankamerica Corp. v. United States,*
  462 U.S. 122 (1983) ..........................................................42

*BNSF Railway Company v. Loos,*
  586 U.S. ___, 139 S. Ct. 893 (2019) ......................................49

*Board of Trade of the City of Chicago v. SEC,*
  187 F.3d 713 (7th Cir. 1999)................................................59

*Carney v. Board of Governors of the Federal Reserve System,*
  64 M.S.P.R. 394 (Sept. 30, 1994) ..........................................23

*Carr v. Saul,*
  593 U.S. ___, 141 S. Ct. 1352 (2021) .......................14, 18-19

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) ........................................................58- 60

*Chicago Mercantile Exchange v. SEC,*
  883 F.2d 537 (7th Cir. 1989)................................................59

*City of Arlington, Texas v. FCC,*
  569 U.S. 290 (2013) ......................................................3, 58

*CityFed Financial Corp. v. OTS,*
  58 F.3d 738 (D.C. Cir. 1995)...........................................53, 57

*Cochise Consultancy, Inc. v. United States ex rel. Hunt,*
  587 U.S. ___, 139 S. Ct. 1507 (2019) ..............................42-43

*Collins v. Yellen,*
   594 U.S. ___, 141 S. Ct. 1761 (2021) ......................................17, 34-35

*Decker Coal Company v. Pehringer,*
   ___ F.4th___, No. 20-71449, 2021 WL 3612787
   (9th Cir. Aug. 16, 2021) ...................................16, 21, 24, 26, 29, 31, 36

*DeNaples v. OCC,*
   706 F.3d 481 (D.C. Cir. 2013) ....................................................5, 46, 59

*Edmond v. United States,*
   520 U.S. 651 (1997) ...........................................................................21

*Energy West Mining Company v. Ex rel. Lyle,*
   929 F.3d 1202 (10th Cir. 2019)................................................14, 17, 19

*Fleming v. USDA,*
   987 F.3d 1093, (D.C. Cir. 2021), *reh'g en banc denied*
   (D.C. Cir. Apr. 13, 2021) ................................................................14-15

*Franklin Savings Association v. OTS,*
   35 F.3d 1466 (10th Cir. 1994)..............................................................53

*Free Enterprise Fund v. Public Company Accounting*
*Oversight Board,*
   561 U.S. 477 (2010)..................................... 16, 18-19, 21, 24-28, 30-33

*Guerrero-Lasprilla v. Barr,*
   589 U.S. ___, 140 S. Ct. 1062 (2020) ..................................................49

*Hackworth v. Progressive Cas. Ins. Co.,*
   468 F.3d 722 (10th Cir. 2006)..............................................................61

*Hendrickson v. FDIC,*
   113 F.3d 98 (7th Cir. 1997).................................................................41

*Humphrey's Ex'r v. United States,*
   295 U.S. 602 (1935)......................................................................26, 30

*In re DBC*,
　545 F.3d 1373 (Fed. Cir. 2008) ............................................................. 17

*In re Smith and Kiolbasa*,
　FRB No. 18-036-E-I, 2021 WL 1590337 (Mar. 24, 2021) .................. 58

*Intercollegiate Broadcast System, Inc. v. Copyright Royalty Board*,
　574 F.3d 748 (D.C. Cir. 2009) .......................................................... 17-18

*Joseph Forrester Trucking v. Director, Office of Workers'*
*Compensation Programs*,
　987 F.3d 581 (6th Cir. 2021), *reh'g en banc denied* ............................ 16

*Long v. Board of Governors of the Federal Reserve System*,
　117 F.3d 1145 (10th Cir. 1997) ............................................................ 60

*Lucia v. SEC*,
　585 U.S. ___, 138 S. Ct. 2044 (2018) ................................... 7, 15, 26, 34

*Malouf v. SEC*,
　933 F.3d 1248 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 1551
　(2020) ................................................................................................. 3, 14

*Manning v. United States*,
　146 F.3d 808 (10th Cir. 1998) .................................................... 11, 60, 61

*Morrison v. Olson*,
　487 U.S. 654 (1988) ...................................................................... 26, 33

*Myers v. United States*,
　272 U.S. 52 (1926) ............................................................................... 22

*Proffitt v. FDIC*,
　200 F.3d 855 (D.C. Cir. 2000) ............................................................. 48

*Rapaport v. OTS*,
　59 F.3d 212 (D.C. Cir. 1995) .......................................................... 59, 61

*Rapp v. OTS*,
　52 F.3d 1510 (10th Cir. 1995)........................................................60-61

*Reno v. Bossier Parish School Board*,
　528 U.S. 320 (2000) ...................................................................39, 40

*Rocap v. Indiek*,
　539 F.2d 174 (D.C. Cir. 1976) ..........................................................23

*Schreiber v. Cuccinelli*,
　981 F.3d 766 (10th Cir. 2020) ...........................................................58

*Seila Law v. CFPB*,
　591 U.S. ___, 140 S. Ct. 2183 (2020) ....................................15, 26, 29

*Sinclair Wyoming Refining Company v. EPA*,
　887 F.3d 986 (10th Cir. 2017).........................................................58-59

*Smiley v. Citibank (S.D.), N.A.*,
　517 U.S. 735 (1996) ..........................................................................58

*Smith v. Board of Governors of the Federal Reserve System*,
　No. 21-9538, 2021 WL 2673353 (10th Cir. June 28, 2021) ...........10-11

*SSA v. Anyel*,
　58 M.S.P.R. 261 (MSPB June 25, 1993)............................................32

*Stoddard v. Board of Governors of the Federal Reserve System*,
　868 F.2d 1308 (D.C. Cir. 1989) ....................................................51, 57

*TransAm Trucking, Inc. v. DOL*,
　833 F.3d 1206 (10th Cir. 2016)..........................................................58

*Turner Brothers Inc., v. Conley*,
　757 F. App'x 697 (10th Cir. 2018) .....................................................17

*United States v. Clintwood Elkhorn Mining Company*,
　553 U.S. 1 (2008) ..............................................................................39

*United States v. Germaine,*
   99 U.S. 508 (1878) ................................................................21

*United States v. Gonzales,*
   520 U.S. 1 (1997) .................................................................39

*United States v. Rico,*
   3 F.4th 1236 (10th Cir. 2021) ......................................35, 59

*United States v. X-Citement Video, Inc.,*
   513 U.S. 64 (1994) ................................................................23

*Van Dyke v. Board of Governors of the Federal Reserve System,*
   876 F.2d 1377 (8th Cir.1989) ..............................................59

*Wiener v. United States,*
   357 U.S. 349 (1958) ..............................................................30

*Woodford v. NGO,*
   548 U.S. 81 (2006) ................................................................16

## Constitutional Provisions

U.S. Const. art. II, § 1, cl. 1 ....................................................25

U.S. Const. art. II, § 2, cl. 2 ....................................................26

U.S. Const. art. II, § 3 .............................................................30

## Statutes

Administrative Procedure Act, Chapter 5, 5 U.S.C. §§ 551-559 .............6

5 U.S.C. § 554(d) ...................................................................28

Administrative Procedure Act, Chapter 7, 5 U.S.C. §§ 701-706 ...........11

5 U.S.C. § 3105 ........................................................................28

5 U.S.C. § 7521 ...............................................21-23, 26, 32, 36

5 U.S.C. § 7521(a) ...................................................................22

12 U.S.C. § 244.........................................................................22

12 U.S.C. § 248.........................................................................23

12 U.S.C. § 1464.......................................................................53

12 U.S.C. § 1786(g) .............................................................54-55

12 U.S.C. § 1813(q) .......................................................4, 38, 44-45

12 U.S.C. § 1813(u) .............................................................5, 37

12 U.S.C. § 1818..............................................5-6, 12, 18, 37, 54, 60

12 U.S.C. § 1818(e) (1970) ...................................................49-50

12 U.S.C. § 1818(e) (1982) ...................................................52-53

12 U.S.C. § 1818(e) (2018) ......... 1, 2, 5, 6, 10, 12, 36-46, 48-49, 52-57, 62

12 U.S.C. § 1818(h) ...............................................2, 6, 11, 35, 58

12 U.S.C. § 1818(i) ................................. 6, 44, 47-48, 56-57, 60

12 U.S.C. § 1818(t)........................................................... 43, 45

12 U.S.C. § 1818(u) .................................................................58

12 U.S.C. § 1829.......................................................................46

Financial Institutions Supervisory Act of 1966, P.L. 89-695 § 202, 80
    Stat. 1028, 1047 (codified at 12 U.S.C. § 1818(b)-(n) (1970)).............50

Financial Institutions Regulatory and Interest Rate Institutions
Control Act of 1978, P.L. 95-630 § 107(d)(1), 92 Stat. 3641
3656-58 (codified as amended at 12 U.S.C. § 1818(e)(1)-(2),
1818(e)(3)-(5) (1982)).........................................................50-52

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
P.L. 101-73, 103 Stat. 183 .................................................8
P.L. 101-73 § 101(8)-(9) 103 Stat. 183, 187..........................53
P.L. 101-73 § 903(a)(1) 103 Stat. 183, 453 (codified as amended at
12 U.S.C. § 1818(e)(1))..................................................52
P.L. 101-73 § 903(b)(1) 103 Stat. 183, 455 (codified as amended at
12 U.S.C. § 1786(g)(1)....................................................54
P.L. 101-73 § 904(a) 103 Stat. 183, 457 (codified as amended at
12 U.S.C. § 1818(e)(7)(iii)..............................................55
P.L. 101-73 § 904(b) 103 Stat. 183, 458 (codified as amended at
12 U.S.C. § 1786(g)(7)) .................................................55
P.L. 101-73 § 905(a) 103 Stat. 183, 459 (codified as amended at
12 U.S.C. § 1818(i)(3)) ..................................................54
P.L. 101-73 § 916(a)(1) 103 Stat 183, 486 ...........................8

**Regulations**

12 C.F.R. §§ 263.1-263.55 ......................................................7

12 C.F.R. §§ 263.54-263.55 ...................................................20

12 C.F.R. § 263.13.................................................................15

12 C.F.R. § 263.18(a) ...........................................................29

12 C.F.R. § 263.24(a) ...........................................................19

12 C.F.R. § 263.28.............................................................8, 31

12 C.F.R. § 263.29...............................................................19

12 C.F.R. § 263.35(a)(1) ......................................................19

12 C.F.R. § 263.38 ................................................................ 7

12 C.F.R. § 263.39(a) ......................................................... 8, 15

12 C.F.R. § 263.39(b)(1) ..................................................... 8, 15

12 C.F.R. § 263.4 ................................................. 8, 18, 20, 31

12 C.F.R. § 263.40(c) ............................................................ 8

12 C.F.R. § 263.40(c)(2) ...................................................... 31

12 C.F.R. § 263.54 ................................................................ 7

12 C.F.R. § 263.55 ........................................................... 8, 18

## Other Authorities

H.R. Rep. No. 95-1383 (1978) ............................................. 52

H.R. Rep. 101-54, pt. 1 (1989) ....................................... 56-57

In re Federal Reserve Board – Applicability of Senior
   Executive Service, 58 Comp. Gen. 687 (July 30, 1979) ...................... 23

Office of Financial Institution Adjudication, Our Docket,
   https://www.ofia.gov/our-docket.html (last updated
   April 19, 2021) ...................................................... 18

Officers of the United States Within the Meaning of the
   Appointments Clause,
   31 Op. O.L.C. 73 (2007) .......................................... 21

## STATEMENT OF RELATED CASES

There are no prior or related appeals or petitions in this matter.

**GLOSSARY**

ALJ – Administrative Law Judge

CFPB – Consumer Financial Protection Bureau

FDIA – Federal Deposit Insurance Act

FDIC – Federal Deposit Insurance Corporation

FIRREA – Financial Institutions Reform, Recovery, and Enforcement
        Act of 1989

IAP – Institution-affiliated party

MSPB – Merits Systems Protection Board

NCUA – National Credit Union Administration

OCC – Office of the Comptroller of the Currency

OFIA – Office of Financial Institution Adjudication

PCAOB – Public Company Accounting Oversight Board

## INTRODUCTION

Frank Smith and Mark Kiolbasa ("Petitioners") seek to set aside orders of the Board of Governors of the Federal Reserve System ("Board") prohibiting them from banking pursuant to section 8(e) of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1818(e). Petitioners are not challenging the substance of the Board's findings that they engaged in breaches of fiduciary duty and unsafe and unsound practices characterized by dishonesty and willfulness, or that such conduct warranted their removal from positions at a federally-insured bank and prohibition from further service at such institutions without permission. Rather, they raise two technical defenses, neither of which is sound.

*First*, Petitioners claim that the Administrative Law Judge ("ALJ") who issued a recommended decision in this matter is subject to an unconstitutional protection from removal and that they are entitled to a new hearing as a result. The infirmities of this claim are many. As a threshold matter, it was not properly exhausted and is therefore waived. Moreover, its assertion that Board ALJs are subject to complex removal protections is fundamentally incorrect, removal limits on Board

1

ALJs would in any event be constitutional, and Petitioners are not entitled to have the orders set aside even if they were to prevail on this issue.

*Second*, Petitioners make the remarkable claim that although Congress granted the Board authority to remove officers and directors from their positions at Board-regulated banks based on misconduct at other businesses, the Board is powerless to act when that other business is itself a bank. This claim is inconsistent with section 1818(e)'s language, structure, statutory history, and legislative history, as well as the Board's reasonable construction of the statute, and is entirely without merit.

Accordingly, the petition should be denied.

## JURISDICTIONAL STATEMENT

The Board issued orders of prohibition against Petitioners on March 24, 2021 in accordance with 12 U.S.C. § 1818(h)(1). This Court has jurisdiction to review the Board's orders under 12 U.S.C. § 1818(h)(2) because Petitioners timely filed a petition for review on April 21, 2021, and because the home office of the depository institution

with which Petitioners were affiliated is located in Pine Bluffs, Wyoming.

Petitioners did not administratively exhaust their constitutional argument as mandated by the Board's regulations, which is either a jurisdictional defect as to that claim or a non-jurisdictional mandatory bar to consideration of the issue. *See, e.g.*, *Malouf v. SEC*, 933 F.3d 1248, 1258 n.10 (10th Cir. 2019), *cert. denied*, ___ U.S. ___, 140 S. Ct. 1551 (2020) (ruling that petitioner failed to exhaust before the agency as mandated by statute and thereby forfeited his constitutional claim regarding ALJ appointment, but declining to determine whether such defect is jurisdictional).[1]

---

[1] Although in their Statement of Jurisdiction Petitioners dispute the Board's authority (or "jurisdiction") to issue the orders under review, Br. at 2-3, that issue is distinct from this Court's jurisdiction. *See generally City of Arlington, Tex. v. FCC*, 569 U.S. 290, 297-98 (2013).

3

## STATEMENT OF THE ISSUES

1.  Whether Petitioners' ALJ removability claim fails because (1) they did not exhaust it, (2) the Board may freely remove ALJs from their position as Board officers, (3) restrictions on ALJ removal would not be unconstitutional, and/or (4) the ALJ's actions were valid regardless of the constitutional status of any applicable removal protections.

2.  Whether the Board may remove bank affiliates from their position at a Board-supervised bank when it determines that their prior misconduct at a bank supervised by another regulator renders them unfit for continued service.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are set out as an addendum to this Brief.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

The FDIA generally assigns primary supervisory responsibilities over different banks to one of three federal regulators, the Board, the Office of the Comptroller of the Currency ("OCC"), or the Federal Deposit Insurance Corporation ("FDIC").  The regulator that principally supervises an institution is referred to as the "appropriate Federal banking agency" for the institution, and the jurisdiction of these agencies may overlap.  *See generally* 12 U.S.C. § 1813(q) (defining

4

"appropriate Federal banking agency" and clarifying that "more than one agency may be an appropriate Federal banking agency" with respect to a given institution); *see also DeNaples v. OCC*, 706 F.3d 481, 487 (D.C. Cir. 2013) (noting that regulators have "potentially overlapping" authority under the FDIA over individuals affiliated with financial institutions).

The FDIA's principal enforcement provisions affecting bank affiliates are codified in section 8(e) of the Act, 12 U.S.C. § 1818. Section 1818(e)(1) permits the "appropriate Federal banking agency" to serve a notice of its intent to remove an "institution-affiliated party" ("IAP") of a bank from office or prohibit the IAP from further participation in the conduct of the affairs of any insured depository institution. IAPs are directors, officers, and others having specified relationships with a financial institution. 12 U.S.C. § 1813(u). The statute lists potential grounds for removal, all of which either expressly state that they are applicable to misconduct involving both an "insured depository institution" or other "business institution," *e.g.*, *id.* § 1818(e)(1)(A)(ii), -(e)(1)(B)(i), -(e)(1)(C)(i), or simply describe misconduct without specifying any affected institution, *e.g.*, *id.*

5

§ 1818(e)(1)(A)(i)(I) (violation of any law or regulation), -(e)(1)(A)(iii) (breach of fiduciary duty).

Section 1818 also contains several companion provisions. An agency must afford an IAP it wishes to remove or prohibit a hearing, which must be conducted in accordance with the formal procedures of the Administrative Procedure Act ("APA"). *Id.* § 1818(e)(4), -(h)(1) (incorporating APA Chapter 5, 5 U.S.C. §§ 551-559). It may also immediately suspend the IAP from office after initiating removal proceedings if it "determines that [suspension] is necessary for the protection of the depository institution" or its depositors. *Id.* § 1818(e)(3)(A)(i). A person removed or suspended from office or prohibited from participating in the conduct of the affairs of an insured depository institution is automatically subject to an industrywide prohibition applicable to insured depository institutions and certain other entities, such as credit unions. *Id.* § 1818(e)(7). And the "appropriate Federal banking agency" retains jurisdiction to act against its IAPs who depart for a period of six years following separation from a depository institution. *Id.* § 1818(i)(3).

In connection with the associated administrative hearings, an agreement between the Board, FDIC, OCC, and National Credit Union Administration ("NCUA") established the Office of Financial Institution Adjudication ("OFIA"), which ensures that a "pool" of ALJs, who are employed by the FDIC, is available to adjudicate these agencies' cases. *See* Ex. 1 ("OFIA Agreement") at 1-2.[2]  Following *Lucia v. SEC*, 585 U.S. ___, 138 S. Ct. 2044 (2018) (holding that ALJs are constitutional officers subject to appointment by the agency head), the Board separately appointed ALJs who were affiliated with OFIA to adjudicate the Board's cases, but did not retain them as its employees. Ex. 2 at 1-2, 2 n.1.

The Board has promulgated procedural rules governing removal of IAPs, 12 C.F.R. §§ 263.1-263.55, which delegate adjudications to OFIA unless the Board orders otherwise.  *Id.* § 263.54.  The rules require ALJs to submit a recommended decision to the Board along with a formal record of the proceeding.  *Id.* § 263.38.  Parties must file exceptions to the recommended decision no later than 30 days after it is

---

[2] Petitioners have attached an older version of the agreement to their brief, which does not materially differ from the current version attached hereto.

served, 12 C.F.R. § 263.39(a), and failure to object to any matter is deemed a waiver. *Id.* § 263.39(b)(1). The Board subsequently renders a final decision. *Id.* § 263.40(c). The regulations also give the Board discretion to review an ALJ's interlocutory rulings. *Id.* § 263.28.

Neither these rules nor the OFIA Agreement mandate the use of an ALJ by the Board. The rules allow the Board to "designate itself, one or more of its members, or an authorized officer, to act as presiding officer in a formal hearing." *Id.* § 263.55. And they provide that "[t]he Board may, at any time during the pendency of a proceeding, perform, direct the performance of, or waive performance of, any act which could be done or ordered by the administrative law judge." *Id.* § 263.4. The OFIA Agreement is congruent with the Board's rules and does not specify that agencies must refer cases to OFIA. It implements Section 916(a)(1) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, P.L. 101-73, 103 Stat. 183, 486 ("FIRREA"), which required the party agencies to "establish their own pool of administrative law judges," but nowhere specified that agencies must refer cases to this pool.

8

## B.     Factual and Procedural Background

Upon initiation of the Board's enforcement action, Petitioners were executives and IAPs of Farmers State Bank ("Farmers"), a state bank that is a member of the Federal Reserve System and thus supervised by the Board.  Petitioners are also former IAPs of Central Bank & Trust ("Central"), a state nonmember bank supervised by the FDIC.  In its March 24, 2021 Final Decision, the Board found that Petitioners engaged in unsafe or unsound practices and breached fiduciary duties to Central, which involved personal dishonesty and willful disregard of Central's safety and soundness, and resulted in harm to Central.  Specifically, the Board found that prior to and concurrent with their move to Farmers, Petitioners usurped Central's customers or business opportunities for their own benefit and took or shared Central's confidential information or that of its customers without authorization.  Record ("Rec.") at R153.

While they were still at Central, Petitioners concealed their misconduct and Central was consequently kept in the dark.  *Id*. at R132-33, R157-58, R178-79.  Central sued Petitioners in Wyoming state court after their departure, and a jury found them liable for willful and

malicious misappropriation of trade secrets, breach of fiduciary duties, and tortious interference with contract or prospective economic advantage in conjunction with their transition from Central to Farmers. *Id.* at R137-38.

Once Petitioners' misconduct had come to light, the Board commenced administrative proceedings against them. The Board denied Petitioners' requests for interlocutory review of an ALJ ruling concerning the Board's jurisdiction under section 1818(e). Rec. at R32. After holding a hearing, the ALJ recommended that the Board issue orders of prohibition. Rec. at R128. Based on an extensive record from both the state court and the administrative proceedings, and after reviewing exceptions filed by both parties, the Board found that Petitioners committed serious misconduct at Central, and prohibited them from serving at any depository institution without prior approval. Rec. at R153, R180, R182-86. Petitioners petitioned for review and sought a stay, arguing the Board could not take action against them based on misconduct committed at an FDIC-supervised bank, which this Court denied in an unpublished order. *See Smith v. Bd. of*

10

*Governors of the Fed. Reserve Sys.*, No. 21-9538, 2021 WL 2673353 (10th Cir. June 28, 2021).

## STANDARD OF REVIEW

Chapter 7 of the APA, 5 U.S.C. §§ 701-706, governs review of the Board's decision. *See* 12 U.S.C. § 1818(h)(2). The Court may set aside the decision only if it finds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," "in excess of statutory . . . authority," or "unsupported by substantial evidence." 5 U.S.C. § 706(2). In making such a determination, this Court ordinarily defers to agencies' reasonable construction of statutes they administer, including in instances where more than one agency may administer a statute. *See*, *e.g.*, *Manning v. United States*, 146 F.3d 808, 814-15 (10th Cir. 1998).

## SUMMARY OF ARGUMENT

1.      Petitioners' constitutional argument does not entitle them to relief. First, it was waived under both regulatory and judicially-created exhaustion requirements. Petitioners did not comply with the Board's regulations by raising the issue administratively before the Board, which could have granted relief by, for example, directly conducting the

11

enforcement proceeding, assigning it to an individual member, or even dismissing the proceeding entirely. Moreover, Petitioners' assertion that Board ALJs are subject to multiple layers of for-cause removal protection is incorrect. To the contrary, the Board has plenary authority to remove ALJs as inferior officers of the Board. Third, the adjudicatory role of Board ALJs is far narrower and subject to more direct control by the Board than the broad and quintessentially executive policymaking and law enforcement powers held by officials for whom multiple for-cause removal restrictions have been found to be unconstitutional. Finally, because the ALJ who presided in this matter was validly appointed, his actions—and the Board's subsequent orders—would remain valid even if Petitioners were to prevail on their constitutional argument.

2.    The Board properly exercised jurisdiction over Petitioners. Petitioners' construction of section 1818(e) would produce an absurd result by allowing a bank's supervisor to remove or suspend its IAPs for misconduct committed at virtually any type of business that it does not regulate, but render it powerless as to affiliates who committed prior misconduct *at a bank*. This implausible construction, which requires

12

giving a single sentence in the statute multiple meanings, is not permissible, nor is it consistent with the structure of section 1818, its statutory history, or any precedent. And, were any doubt to remain, the Board's reasonable construction of the statute is entitled to deference.

## ARGUMENT

### I. Petitioners' Constitutional Argument Does Not Entitle Them to Relief

Petitioners belatedly argue that the Board's decision should be vacated due to alleged removal protections applying to the ALJ who issued a recommended decision in this matter, which they contend are unconstitutional. This argument fails for four reasons. First, Petitioners waived the issue by not raising the matter before the Board, as mandated by both regulatory and judicially-created exhaustion requirements. Second, its premise—that the ALJ is subject to multiple for-cause protections against removal from office—is incorrect. The Board has plenary authority to remove its ALJs from their role as constitutional officers of the Board regardless of any job protections they enjoy as federal employees (of another agency). Third, Board ALJs' powers are adjudicatory and advisory in nature, and subject to significant control by the Board, and they therefore do not wield the

13

sort of plenary executive powers involving policymaking and law

enforcement responsibilities vested in officers for whom multiple layers

of for-cause protections have been found to be unconstitutional.  Finally,

even if Petitioners were correct on the merits of their constitutional

argument, the Board's ruling would remain valid.

### A.     Petitioners Have Waived Their Constitutional Argument

Petitioners did not raise their constitutional objection before the

Board and have therefore waived it.  A litigant waives an argument by

failing to raise it in an administrative proceeding if exhaustion is either

expressly required by statute or regulation, or dictated by judicially-

created exhaustion requirements analogous to those governing waiver

on appeal from trial courts.  *See generally Carr v. Saul*, 593 U.S. ___,

141 S. Ct. 1352, 1358 (2021).  Such waiver routinely forecloses

constitutional arguments comparable to those at issue here.  *See, e.g.*,

*Malouf*, 933 F.3d at 1258 (waiver of Appointments Clause challenge to

ALJ due to noncompliance with statutory exhaustion requirement);

*Energy W. Mining Co. v. Ex rel. Lyle*, 929 F.3d 1202, 1206 (10th Cir.

2019) (judicially-imposed exhaustion requirement barred Appointments

Clause challenge to ALJ); *Fleming v. USDA*, 987 F.3d 1093, 1097-98

14

(D.C. Cir. 2021), *reh'g en banc denied* (D.C. Cir. Apr. 13, 2021)

(challenge to dual layers of "for-cause" removal for ALJs barred due to

failure to comply with mandatory exhaustion requirement); *cf. Lucia*

138 S. Ct. at 2055 (2018) ("timely" Appointments Clause challenge

raised before the agency entitled petitioner to relief).

First, Petitioners failed to comply with a regulatory exhaustion

requirement. The Board's regulations require parties to file exceptions

to an ALJ's recommended decision at the time the matter is referred to

the Board for a final decision. 12 C.F.R. § 263.39(a). A party waives

any objection to matters for which he fails to file exceptions. *Id.*

§ 263.39(b)(1). Although Petitioners filed lengthy exceptions to the

ALJ's recommended decision, Rec. at R39-R127, they did not raise or

even hint at an ALJ removability issue.[3] They have therefore waived

---

[3] The Court should reject any attempt by Petitioners to argue that
waiver should not apply because they did not have an opportunity to file
exceptions incorporating the Supreme Court's decision in *Seila Law v.
CFPB*, 591 U.S. ___, 140 S. Ct. 2183 (2020), which addressed removal
protection for certain principal officers. First, Petitioners did not seek
leave to raise any additional exceptions based on *Seila Law*, which was
decided several months before the Board issued its decision. *See*
12 C.F.R. § 263.13 (allowing the Board to modify time limits at a party's
request for good cause). Moreover, the specific issue raised here
concerns multiple layers of removal protection for inferior officers, a

the issue through their noncompliance with the Board's regulatory exhaustion requirement. *See Joseph Forrester Trucking v. Dir., Off. of Workers' Comp. Programs*, 987 F.3d 581, 587 (6th Cir. 2021), *reh'g en banc denied* (6th Cir. Apr. 6, 2021) (Appointments Clause challenge first raised in court was waived due to failure to comply with agency regulation requiring matters to be raised before the ALJ in order to obtain further review by the agency head).

Judicially-created exhaustion rules also required Petitioners to have raised the issue before the Board in order to avoid waiver. Such rules serve prudential purposes, including giving an agency "an opportunity to correct its own mistakes" and discouraging "disregard of [agency] procedures." *Woodford v. NGO*, 548 U.S. 81, 89 (2006). They promote efficiency by potentially allowing for resolution at an earlier stage, persuading a losing party not to pursue the matter in court, or

---

matter last addressed in *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 495 (2010), issued more than a decade ago, as Petitioners acknowledge. *See* Br. at 6 ("[The] holding [of *Free Enterprise*] . . . is dispositive of the constitutional issue."); *see also Decker Coal Co. v. Pehringer*, ___ F.4th ___, No. 20-71449, 2021 WL 3612787, at *6 (9th Cir. Aug. 16, 2021) ("*Free Enterprise Fund* is the last case addressing two-layer removal protections for an inferior officer.").

16

creating a record that facilitates judicial review.  *Id.*[4]  Such prudential

considerations can bar relief with respect to constitutional claims that

were not timely raised.  *See, e.g.*, *Energy W. Mining*, 929 F.3d at 1206

(declining to consider Appointments Clause challenge to ALJ where the

matter was not raised before the agency, which could have granted

relief in the form of reassignment); *Turner Bros. Inc., v. Conley*, 757 F.

App'x 697, 700 (10th Cir. 2018) (refusing to consider Appointments

Clause challenge not raised before the agency); *In re DBC*, 545 F.3d

1373, 1377-79 (Fed. Cir. 2008) (same); *cf. Collins v. Yellen*, 594 U.S. ___,

141 S. Ct. 1761, 1789 n.26 (2021) (observing that laches may bar relief

on claim that a removal restriction was unconstitutional).[5]

---

[4] This point is well-illustrated in this case, where both parties have had
to resort to extra-record exhibits concerning the ALJ's appointment and
OFIA Agreement to address Petitioners' belated argument and no
record on this issue was created below.

[5] Although courts may retain discretion to consider some constitutional
arguments raised for the first time on appeal in "exceptional
cases," *DBC*, 545 F.3d at 1379 (citations omitted), they have declined to
do so where, as here, the party belatedly raising the argument failed to
justify its failure to raise it beforehand, as Petitioners failed to do in
their opening brief.  *Id.* at 1379-81 (noting that allowing belated
challenges without justification would encourage "sandbagging" by
litigants seeking to evade an unfavorable decision after failing to timely
object to the process leading to that decision); *accord Intercollegiate*

17

Petitioners could have raised their constitutional claim in the first instance before the Board in their exceptions to the ALJ's recommended decision, or in earlier requests they made to the Board for interlocutory review, which focused entirely on their claim relating to section 1818. Rec. at R1-30.  In either event, the Board could have granted relief, as it retains the authority to, for example, take over the proceeding from the ALJ or to reassign it to an individual member.  *See* 12 C.F.R. §§ 263.4, 263.55.[6]  Their failure to raise the matter in adversarial proceedings[7]

---

*Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 756 (D.C. Cir. 2009) (refusing to consider untimely Appointments Clause challenge where the petitioner's only explanation for its tardiness was that the constitutional issue had "not occurred" to counsel earlier).  As noted at *supra* n.3, *Free Enterprise*, which Petitioners cite as the basis for their argument, was decided over a decade ago; Petitioners could therefore have raised their argument before the Board, and have failed to justify their failure to do so.

[6] As of the filing of this brief, Board actions represented four of the twenty pending OFIA matters.  *See* Office of Financial Institution Adjudication, Our Docket, *at* https://www.ofia.gov/our-docket.html (last updated April 19, 2021).

[7] *Carr*, which held that failure to raise a constitutional challenge in *nonadversarial* agency proceedings made judicially-created exhaustion rules inapplicable, 141 S. Ct. at 1358-60, 1362, is readily distinguishable.  *Carr* did not address regulatory exhaustion.  *Id.* at 1358.  Moreover, *Carr* held that the constitutional nature of the claim, *combined with* the "inquisitorial" nature of the agency proceeding and

before the Board therefore bars consideration of this challenge.  *See Energy W. Mining*, 929 F.3d at 1206 (failure to raise constitutional claim before the agency, which could have granted relief, precluded judicial review).

### B.    Board ALJs Are Not Subject to Multiple For-Cause Protections from Removal as Officers of the Board

Should the Court elect to consider the merits of Petitioners' constitutional claim, the claim should be rejected.  The Court need not reach the constitutional issue identified by the Supreme Court in *Free Enterprise Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), because the ALJ who presided over Petitioners' hearing on behalf of the Board does not have two levels of for-cause removal protection as a Board officer.  Although the Board

---

the agency's inability to grant relief, "*[t]aken together*," made judicially-created exhaustion inapplicable.  *Id.* at 1362 (emphasis added).  By contrast, the Board assuredly *could* have granted Petitioners relief by taking their case away from the ALJ.  And Board proceedings are unquestionably adversarial given that the parties are responsible for developing the issues for adjudication.  *See id.* at 1358 ("The critical feature that distinguishes adversarial proceedings from inquisitorial ones is whether claimants bear the responsibility to develop issues for adjudicators' consideration."); 12 C.F.R. §§ 263.24(a), 263.29, 263.35(a)(1) (providing for party-initiated discovery, summary disposition motions, and presentation of evidence at trial).

may refer cases to OFIA ALJs to assist it in adjudicating contested enforcement actions, it has unfettered discretion to withdraw the appointment of the ALJ as a constitutional officer of the Board and thereby preclude future assignment of Board-initiated contested enforcement actions to the ALJ.

Petitioners ignore the Board's substantial authority in this regard, instead confounding Board ALJs' status as federal employees of another federal agency (the FDIC)[8] with their status as constitutional officers of the Board. The latter status arises from their appointment by the Board as its inferior officers, with no change in *employment* status, Ex. 2 at 1-2, 2 n.1, and the Board may freely withdraw such appointment and any associated delegation of authority without cause. Should it do so, it could then reassign any matters pending before the ALJ and any subsequent cases to another ALJ, to itself, or to an individual Board member. 12 C.F.R. §§ 263.4, 263.54-55; *see also supra at* 8 (describing the Board's discretion to not utilize OFIA ALJs). The Board is therefore not constrained should it choose to remove an ALJ from his or her role

_____

[8] Petitioners mistakenly assert that the financial agencies "collectively employ" the OFIA ALJs, when in fact only the FDIC does. *Compare* Br. at 5, *with* Ex. 1 at 1-2, Ex. 2 at 1-2, 2 n.1.

as the Board's constitutional officer. *Cf. Decker Coal Co. v. Pehringer*,

\_\_\_ F.4th \_\_\_, No. 20-71449, 2021 WL 3612787, at *8 (9th Cir. Aug. 16,

2021) (agency's ability to elect not to use ALJs to adjudicate its cases

precludes claim that 5 U.S.C. § 7521 improperly interferes with the

President's constitutional duty to faithfully execute the law).

Neither the Board's revocation of an ALJ's Board appointment nor

the reassignment of Board cases would change the ALJ's pay or

benefits, as the ALJ would remain an employee of the FDIC. [9]  Board

ALJs thus differ from officials whose employment status is coextensive

with the powers that make them an officer for constitutional purposes;

they can be removed from their constitutional Board inferior officer role

while remaining federal employees. *See Edmond v. United States*,

520 U.S. 651, 664 (1997) (noting that military Court of Criminal

Appeals judges, who can include commissioned officers, can be

---

[9] An official's status as an officer in the constitutional sense need not be
tied to his status as a government employee. *See, e.g.*, *Free Enterprise*,
561 U.S. at 484-85 (noting that PCAOB members are not federal
employees, but for constitutional purposes are considered officers of the
United States), 506 n.9 ("One 'may be an agent or employee working for
the government and paid by it . . . without thereby becoming its
office[r].'" (quoting *United States v. Germaine,* 99 U.S. 508, 509 (1878)));
Officers of the United States Within the Meaning of the Appointments
Clause, 31 Op. O.L.C. 73, 119 (2007).

"remove[d]" from their constitutional officer role *qua* judge without cause by merely having their judicial assignment withdrawn).

Thus, whatever job protections OFIA ALJs may enjoy as employees of another agency do not limit the Board's authority to withdraw their appointment as Board ALJs (and as inferior officers of the Board in the constitutional sense) and to subsequently reassign any delegated cases. *Id.*; *cf. Myers v. United States*, 272 U.S. 52, 161 (1926) ("The power to remove inferior executive officers . . . is an incident of the power to appoint them."). While 5 U.S.C. § 7521 may generally require cause and proceedings before the Merit Systems Protection Board ("MSPB") with respect to specified adverse employment actions against ALJs taken "by the agency in which the administrative law judge is employed," *id.* § 7521(a), the fact that the Board's ALJs are not its employees renders this provision inapplicable here.[10]

---

[10] Even if the Board's appointment of ALJs could somehow render them its "employees," the MSPB removability protections granted under the Civil Service Reform Act of 1978 would not attach. *See* 12 U.S.C. §§ 244 ("[The] employment" of Board employees "shall be governed solely by the provisions of [the Federal Reserve] Act . . . and rules and regulations of the Board not inconsistent therewith."), 248(l) (excluding Board from Civil Service Act of 1883 and amendments thereto); *Rocap v. Indiek*, 539 F.2d 174, 179 (D.C. Cir. 1976) (Federal Reserve Act

The OFIA Agreement similarly places no limits on the Board's ability to withdraw its appointment of Board ALJs as its officers or its delegation of authority to hear Board cases. The agreement requires consent by each agency[11] for a "change to [OFIA] Staff personnel" and for "[a]ll decisions relating to the Office [of Financial Institution Adjudications])," Ex. 1 at 3, but nowhere obligates the Board to have OFIA-affiliated ALJs preside over its cases. In contrast, the Board's regulations expressly give it discretion *not* to use OFIA ALJs, *see supra*

---

exempts Board employees from the jurisdiction of the MSPB's predecessor); *Carney v. Bd. of Governors of the Fed. Reserve Sys.*, 64 M.S.P.R. 394, 395-96 (Sept. 30, 1994) (MSPB determination that Federal Reserve Act foreclosed its jurisdiction over Board employee petitions and that Civil Service Reform Act did not provide otherwise); *see also, e.g.*, In re Federal Reserve Board – Applicability of Senior Executive Service, 58 Comp. Gen. 687, 691 (July 30, 1979) (finding the Civil Service Reform Act of 1978, which granted the MSPB jurisdiction to review ALJ removals, to be inapplicable to Board employees). Moreover, construing section 7521 narrowly comports with the canon that "a statute is to be construed where fairly possible so as to avoid substantial constitutional questions." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994).

[11] Petitioners' assertion that the agreement requires that "all seven Board members must agree unanimously" on any change relating to OFIA, Br. at 5, is plainly incorrect. They erroneously cite a provision referencing an administrative oversight committee to which each agency nominates a single representative. *See* Ex. 1 at 3.

at 8, and it is free to revoke its appointment of OFIA-affiliated ALJs as Board officers, reassign any pending cases, and withhold further referrals of cases without breaching the OFIA agreement. Moreover, because the terms of the OFIA agreement were voluntarily negotiated by OFIA's member agencies, they cannot form the basis for a claim that a removal restriction was improperly imposed on the Executive Branch. *Decker Coal*, 2021 WL 3612787, at *8 (agency's choice to subject itself to a scheme including removal protection by means of executive action, rather than by statute, cannot form the basis for a Constitutional violation).

Consequently, Petitioners' assertion that Board ALJs are subject to multiple for-cause removal protections that interfere with Presidential control, on which they base their constitutional argument, is simply incorrect. If the President wishes to exercise oversight over a Board ALJ, he need only persuade the Board to remove the ALJ's authority to adjudicate Board-initiated cases as a constitutional officer of the Board. As acknowledged in *Free Enterprise*, such single layer of

removal protection is not an unconstitutional restriction on the President's authority.  561 U.S. at 509.[12]

### C.  Multiple For-Cause Removal Protections for Board ALJs Would Not Be Unconstitutional

Even if it were the case that Board ALJs were subject to multiple for-cause removal protections, such protections would not be unconstitutional, and Petitioners' reliance on *Free Enterprise* to argue otherwise is misplaced.

Petitioners assert that *Free Enterprise* categorically "held that dual layers of tenure protection of inferior officers violate Article II," Br. at 12, but this is incorrect.  Rather, *Free Enterprise* stated that its holding concerned a *subset* of officers with plenary "policymaking and enforcement powers" that were ordinarily thought of as executive in nature, whereas ALJs wield primarily "adjudicatory [or] purely recommendary powers."  561 U.S. at 507 n.10; *see also id.* at 508 (noting that the Court's holding "restrict[s] *certain* officers to a single level of

---

[12] While *Free Enterprise* held that at-will "removal" of entire PCAOB agency functions was an insufficient substitute for the power to remove an individual PCAOB member, 561 U.S. at 503-04, the Board is not similarly situated and can choose to terminate the status of an individual ALJ as its officer.

insulation from the President" (emphasis added)); *Decker Coal*, 2021

WL 3612787, at *6 ("*Free Enterprise Fund* did not address [tenure

protection for ALJs] and its limited holding does not reach § 7521 . . . .

[T]he Court did not broadly declare all two-level for-cause protections

for inferior officers unconstitutional.").[13]  Moreover, *Free Enterprise*

concerned officers whose supervisors at the Securities and Exchange

Commission were, by statute, far more restricted in overseeing their

work than is true for Board ALJs.  Accordingly, even if Board ALJs

were to enjoy multiple layers of for-cause removal protection, such

---

[13] Although ALJs exercise sufficient authority to be "officers of the
United States" and thus fall into a class of officials who must all be
appointed in a specified manner, *Lucia*, 138 S. Ct. at 2049, it does not
automatically follow that they must be subject to the same restrictions
on dual-level removal protections that applied to PCAOB members who
exercised very different responsibilities.  The Constitution expressly
requires that *all* inferior officers be appointed in accordance with
uniform procedures.  *Id.* (citing U.S. Const. art. II, § 2, cl. 2).  "The
Constitution, however, is silent on the President's power to remove
those officers from office."  *Decker Coal*, 2021 WL 3612787, at *5.  In the
absence of an express provision specifying uniform rules for removal,
different constitutional limits on removal restrictions have been held to
apply to different types of officers.  *Compare*, *e.g., Morrison v. Olson*,
487 U.S. 654, 660 (1988) (upholding removal protections on an
independent counsel) and *Humphrey's Ex'r v. United States*, 295 U.S.
602, 627-29 (1935) (upholding removal protections for members of a
multi-member agency), *with Seila Law*, 140 S. Ct. at 2192 (striking
down removal protections on the head of a single-member agency).

protection would not unduly interfere with the President's executive authority.

The Supreme Court in *Free Enterprise* repeatedly made clear that its holding was specific to officers who exercise plenary policymaking and prosecutorial-type enforcement powers, noting that "[t]he question [presented] is . . . [m]ay the President be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, *even though that inferior officer determines the policy and enforces the laws of the United States*?" 561 U.S. at 483-84 (emphasis added); *see also id.* at 508 ("The only issue in this case is whether Congress may deprive the President of adequate control over the Board, *which is the regulator of first resort and the primary law enforcement authority* for a vital sector of our economy." (emphasis added)); *id.* at 506 (refusing to make "general pronouncements" on other positions subject to two layers of removal protections).

In contrast to Board ALJs—who exercise adjudicatory and advisory powers subject to Board oversight in those cases that the Board elects to refer to them—the PCAOB members whose removal protections were at issue in *Free Enterprise* oversaw an entire agency

27

"with expansive powers," 561 U.S. at 485, and exercised quintessentially executive powers.  *Id.* at 504.  They led an entity that "promulgates auditing and ethics standards, performs routine inspections of all accounting firms, demands documents and testimony, and initiates formal investigations and disciplinary proceedings."  And *Free Enterprise* noted in particular that PCAOB members engaged in "daily exercise of prosecutorial discretion" since they had "effective power to start, stop, or alter individual [PCAOB] investigations, executive activities typically carried out by officials within the Executive Branch."  561 U.S. at 504.

The *Free Enterprise* Court specifically refused to extend its holding to ALJs, partly because it was unclear at the time whether they were officers, but also because, "unlike members of the [PCAOB], many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions, *see* [5 U.S.C.] §§ 554(d), 3105, or possess purely recommendatory powers."  561 U.S. at 507 n.10.  Similarly, Board ALJs are limited to adjudicating proceedings that the Board itself elects to initiate, leading to a recommended decision.  *See* 12 C.F.R. § 263.18(a) (Board has sole power to commence enforcement

28

proceeding).  Unlike PCAOB members, Board ALJs do not exercise law

enforcement functions and prosecutorial discretion, which are

quintessential "executive activities typically carried out by officials

within the Executive Branch."  561 U.S. at 504.

Similarly, Petitioners' attempt to compare Board ALJs to the

CFPB director, who can "seek daunting monetary penalties against

private parties in federal court—a quintessentially executive power,"

Br. at 14 (quoting *Seila Law v. CFPB*, 591 U.S. ___, 140 S. Ct. 2183,

2187 (2020)), misses the mark.  Board ALJs do not initiate proceedings

seeking relief against anyone—they only *adjudicate* proceedings that

the Board has elected to initiate and refer to them, and ultimately issue

recommended decisions for the Board's consideration.  *See Decker Coal*,

2021 WL 3612787, at *7 ("Unlike PCAOB members, who exercise

policymaking and enforcement functions, an ALJ cannot sua sponte

initiate investigations or commence a . . . case.").

This distinction is important because the extent to which an

officer exercises quintessentially executive powers—as opposed to

quasi-judicial or quasi-legislative functions—affects the degree to which

removal protections may improperly hinder the President's ability to

"take care that the laws be faithfully executed."  U.S. Const. art. II. § 3; *see Humphrey's Ex'r v. United States*, 295 U.S. 602, 627-29 (1935) (because the Federal Trade Commission was "quasi legislative and quasi judicial" rather than "purely executive," restrictions on removal of commissioners did not impermissibly impinge on the President's powers), *quoted with approval by Free Enterprise*, 561 U.S. at 493; *see also Seila Law*, 140 S. Ct. at 2199-200 (removal jurisprudence considers the degree to which an officer wields "substantial executive power"); *Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (upholding legislation establishing a fixed term for a War Claims Commission and its members, with no provision for Presidential removal, because the members exercised purely adjudicatory functions).

The PCAOB officers in *Free Enterprise* also differ significantly from Board ALJs because of the limited ability of the PCAOB officers' superiors to oversee their work on individual matters.  The Securities and Exchange Commission could only control it through specific measures impacting certain aspects of its operations and final actions, but lacked "plenary" authority to control its work at every stage in individual matters.  *Free Enterprise*, 561 U.S. at 504 (noting SEC's

inability to "start, stop, or alter individual Board investigations").  Nor could it focus its supervisory powers on individual PCAOB members, rather than the agency as a whole.  *Id.* ("[T]he Commission cannot wield a free hand to supervise individual members . . . .").

The Board, by contrast, has significant oversight over important decisions made by individual ALJs at multiple stages of the proceedings over which they preside.  Apart from its exclusive authority to render final decisions, as distinguished from the ALJ's limited power to issue a recommended decision, 12 C.F.R. § 263.40(c)(2), the Board can assume any of the responsibilities exercised by an ALJ at any stage in an individual matter, *id.* § 263.4, and can immediately review interlocutory rulings by an ALJ (as was done in this case).  12 C.F.R. § 263.28; Rec. at R32; *cf. Decker Coal*, 2021 WL 3612787, at *8 (holding that statutory scheme providing for far more limited agency review, on substantial evidence grounds, of only those ALJ decisions "raising a substantial question of law or fact," without the ability to take additional evidence, allowed for sufficient oversight over ALJs).  Moreover, the resulting Board actions set precedent, and an ALJ's failure to follow such precedent in subsequent cases would presumably constitute "cause" for

31

an adverse action under 5 U.S.C. § 7521 were it to apply. *Cf. SSA v. Anyel*, 58 M.S.P.R. 261, 264-66, 269 (MSPB June 25, 1993) (ALJs may not "ignore binding agency interpretations of law," and high reversal rate due to failure to follow relevant law constituted "cause" under section 7521).[14]

Thus, in contrast to the PCAOB's superiors, who lacked "effective power to start, stop, or alter individual [PCAOB] investigations" and could not take remedial actions with respect to individual PCAOB members, 561 U.S. at 504, the Board *can* and *does* exercise oversight over matters handled by individual ALJs at multiple points during the proceedings they oversee. Although *Free Enterprise* expressed concern that "the President cannot hold the Commission fully accountable for the [PCAOB]'s conduct, to the same extent that he may hold the

---

[14] In contrast, PCAOB members' removal protections posed "an even more serious threat to executive control than an 'ordinary' dual for-cause standard" because they were subject to an "unusually high standard" for removal requiring proof of "willful violations of the [Sarbanes–Oxley Act], [PCAOB's] rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance." *Free Enterprise*, 561 U.S. at 502-03; *id.* at 503 ("The Act does not even give the Commission power to fire Board members for violations of other laws that do not relate to the Act, the securities laws, or the Board's authority.").

Commission accountable for everything else that it does," because "Commissioners are not responsible for the Board's actions," 561 U.S. at 496, this concern does not apply to Board ALJs.  Rather, because the Board can exercise oversight over individual ALJs' actions in individual matters, and be held to account for how it does so, the situation presented here is materially different.  And, as noted above, Board ALJs engage in adjudications rather than exercising "prosecutorial discretion" and other quintessential "executive activities typically carried out by officials within the Executive Branch" that were found incompatible with two layers of removal protections in *Free Enterprise*. 561 U.S. at 504.  Therefore, two layers of for-cause removal protection, if applicable to Board ALJs, would not unduly "impede the President's ability to perform his constitutional duty."  *Morrison v. Olson*, 487 U.S. 654, 691 (1988) (citation omitted).

### D.    Petitioners' Constitutional Argument Does Not Entitle Them to Relief from the Board's Orders

Petitioners incorrectly assert that any constitutional defect with respect to removal protections applicable to the ALJ who issued the recommended decision in this matter "invalidates the proceedings here."  Br. at 2.  They contend that they are entitled to relitigation of

the Board's administrative proceeding against them "before an adjudicator accountable to the President." *Id.* at 16. This argument is foreclosed by recent Supreme Court precedent, and fails as a result.

In the recent *Collins* decision, the Supreme Court held that statutory removal protections granted to the director of the Federal Housing Finance Agency were unconstitutional, but further held that such unconstitutionality did not "invalidate[]" the actions of the official, who had been validly *appointed* and thus had authority to act. 141 S. Ct. at 1788. As the Court explained:

> All the officers who headed the FHFA during the time in question were properly appointed. Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA . . . as void.

*Id.* Similarly, Petitioners have not contested the validity of the Board's actions following *Lucia* to appoint the ALJ who presided over their proceeding, and there is therefore "no reason to regard any of the actions" by the ALJ—or the Board's subsequent Orders—as void.

While *Collins* did remand for a determination as to whether retroactive relief was warranted based on the petitioners' assertion that

34

the agency would have acted more favorably towards them had its director been subject to at-will removal, *id.,* Petitioners here have made no such assertion, simply relying on their incorrect claim that the Board's orders were per se "invalid[]."  Br. at 2.  They have thus waived any entitlement to relief from the orders.  *See United States v. Rico*, 3 F.4th 1236, 1240 n.3 (10th Cir. 2021) ("Arguments inadequately briefed in the opening brief are waived[.]" (citation omitted)); *accord Decker Coal*, 2021 WL 3612787, at *11 (no relief from agency ruling was available based on an allegedly unconstitutional removal restriction where no evidence or argument was submitted, since "[a]bsent a showing of harm, we refuse to unwind the decisions below").

Nor could Petitioners claim prejudice from any alleged dual removal protections, as both the Board, which was charged with issuing its own final ruling in the matter, *see* 12 U.S.C. § 1818(h)(1), and the ALJ ruled against them.  As a result, even if such a claim had not been waived, Petitioners cannot persuasively argue that having the ALJ be subject to closer Board control and therefore more beholden to the Board's views would have resulted in a more favorable outcome for them.  *Cf. Decker Coal*, 2021 WL 3612787, at *11 ("On this record, we

35

simply cannot conclude that the existence of § 7521 alone tainted the ALJ's decision.").  They thus fail to show an entitlement to vacatur of the Board's orders even if they were to prevail on their constitutional argument.

## II. The Board Properly Exercised Jurisdiction over Petitioners Because They Were Affiliated with a Board-Regulated Bank

Petitioners claim the Board could not remove them from their positions at a Board-regulated bank—where they were working when misconduct rendering them unfit to serve at a financial institution came to light—merely because that misconduct occurred at another bank regulated by the FDIC.  They do not contest that section 1818(e)(1) generally permits the Board to remove IAPs of banks that it supervises based on misconduct at other types of businesses that it does not regulate.  Br. at 25.  But they make the remarkable claim that it is powerless to do so when the misconduct rendering an IAP unfit to serve at a bank occurs, of all places, at another bank.  *Id.*

Petitioners' theory, which would bar the Board from taking action against its IAPs even when immediate suspension is deemed necessary to protect the Board-supervised bank or its depositors, is inconsistent

with the text and structure of section 1818.  Among other infirmities, it violates a fundamental principle of statutory construction by changing the meaning of the term "appropriate Federal banking agency for the depository institution" in the last sentence of section 1818(e)(1) depending on the subsection—or portion of a subsection—to which it happens to refer in a particular situation.  It is also inconsistent with the statutory history of section 1818(e) and FIRREA, which adopted the language in question, as well as FIRREA's legislative history and the Board's reasonable construction.  It should be rejected as a result.

## A.     The Statutory Text Establishes the Board's Jurisdiction

The FDIA's plain language authorizes the Board to take action against Petitioners, who were employed by a Board-regulated bank, regardless of the type of institution impacted by their misconduct.  The Board has jurisdiction over Petitioners because each was an IAP of an insured depository institution subject to Board supervision, *i.e.*, they were officers and directors of Farmers.  *See* 12 U.S.C. § 1813(u) (defining IAP); *id.* § 1813(q)(3)(A) ("'[A]ppropriate Federal banking agency' means . . . the Board of Governors of the Federal Reserve System in the case of any State member bank.").  The statute contains

no language limiting the Board's jurisdiction over IAPs of Board-supervised institutions in instances where another regulator may also take action. Petitioners' attempt to argue otherwise improperly seeks to make words in a single sentence in the statute bear multiple meanings in different contexts and is thus not a permissible construction.

The FDIA's removal authority applies "[w]henever the appropriate Federal banking agency determines that *any* institution-affiliated party" has violated "*any* law or regulation" or "*any* cease-and-desist order," "engaged or participated in *any* unsafe or unsound practice in connection with *any insured depository institution or business institution*," or "engaged in *any* act . . . which constitutes a breach of such party's fiduciary duty," so long as the misconduct meets certain additional statutory elements. *Id.* § 1818(e)(1) (emphases added).

The statute therefore permits the Board to bring an action when an IAP of a Board-supervised bank has engaged in misconduct affecting *any* insured depository or business institution, without regard to whether the misconduct occurred at an institution supervised by the Board. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word

38

'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"); *cf. United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 7 (2008) ("Five 'any's' in one sentence and it begins to seem that Congress meant the statute to have expansive reach.").

Petitioners nonetheless attempt to avoid this natural reading by arguing for an impermissible construction that forces a single phrase in the final sentence of section 1818(e)(1) to take on different meanings in different contexts. *See Reno v. Bossier Par. Sch. Bd.*, 528 U.S. 320, 329 (2000) ("[W]e refuse to adopt a construction that would attribute different meanings to the same phrase in the same sentence . . . . "). The final sentence of 12 U.S.C. § 1818(e)(1) states that "the appropriate Federal banking agency for the depository institution" may initiate removal or prohibition proceedings. Petitioners do not dispute the Board's assertion that this phrase necessarily refers to the regulator supervising the bank *employing an IAP* when the misconduct occurs at another business that is not a bank, Br. at 25, but argue that when the other business is a bank regulated by another supervisor, the phrase takes on a wholly different meaning, instead referring to the business where the misconduct occurs. *Id.*

39

Specifically, Petitioners attempt to read this phrase in conjunction with several provisions—which provide non-exclusive bases for removal—allowing for removal based on actions taken towards an "insured depository institution or business institution."  Br. at 20-21 (quoting 12 U.S.C. § 1818(e)(1)(A)(ii), -(e)(1)(B)(i), -(e)(1)(C)(ii)).  They assert that the references to an "insured depository institution" affected by misconduct must refer to the same "depository institution" mentioned in the final sentence's phrase "appropriate Federal banking agency for the depository institution."  *Id.*

The irreconcilable problem with this construction is that it would make the final sentence of section 1818(e)(1) bear different meanings with respect to different clauses to which it refers, or even different situations described by a single clause, violating a fundamental rule of statutory construction.  *Reno,* 528 U.S. at 329.  For example, each of the provisions Petitioners cite in support of their construction refers to misconduct directed towards an "insured depository institution" *or any other* "business institution."  Other subsections provide alternate grounds for removal based on misdeeds such as a "violat[ion] of any law or regulation," 12 U.S.C. § 1818(e)(1)(i)(I), without specifying any type

40

of affected depository or business institution. *See*, *e.g.*, *Hendrickson v. FDIC*, 113 F.3d 98, 102-03 (7th Cir. 1997) (affirming prohibition order against bank official who "violated a law" by filing fraudulent tax returns while employed at a coin and precious metal dealer).[15]

In the case of misconduct affecting a "business institution" that is not an "insured depository institution" (and presumably violations of law and other misconduct not directed at *any* particular institution), Petitioners do not contest the Board's assertion that the "appropriate Federal banking agency for the depository institution" is the agency regulating the depository institution *where the IAP is employed*. Br. at 25. There is no other alternative, as there is no other "depository institution" to which the clause could refer in such a situation. Yet Petitioners contend that this single phrase adopts an entirely different meaning—instead referring to the agency regulating the institution

---

[15] The Board, in fact, relied on the sections that make no reference to a "depository institution" as one basis for its orders against Petitioners, finding that they committed a "breach of fiduciary duty," 12 U.S.C. § 1818(e)(1)(A)(iii), resulting in "financial gain or other benefit," *id.* § 1818(e)(1)(B)(iii), in a manner involving "personal dishonesty." *Id.* § 1818(e)(1)(C)(i). *See* Rec. at R153, R173-74, R178.

*where the IAP's misconduct occurred*—when misconduct happened to occur at an insured depository institution. *Id.* This cannot be so.

Petitioners' attempt to give the last sentence of section 1818(e)(1) different meanings depending on the portion of a subsection to which it refers (or even to the nature of particular situations described by a generic term like "breach of fiduciary duty") is "at odds with fundamental rules of statutory interpretation." *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. ___, 139 S. Ct. 1507, 1512 (2019). Indeed, "[i]n all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning." *Id.*; *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 129 (1983) ("[W]e reject as unreasonable the contention that Congress intended the phrase 'other than' to mean one thing when applied to 'banks' and another thing as applied to 'common carriers,' where the phrase 'other than' modifies both words in the same clause."). Thus, Petitioners' contention that "the appropriate Federal banking agency for the depository institution" in section 1818(e)(1) takes a meaning that differs with respect to different words in the very same clause—or even, in

some cases, to different situations governed by a single phrase, *e.g.*,
"breach of fiduciary duty"—is not a valid construction of the statute.

## B.  The Board's Interpretation of Section 1818(e) Is Compatible with Other Provisions of the FDIA

Petitioners' remaining arguments concerning other FDIA
provisions do not demonstrate that section 1818(e)(1) is a "most unusual
situation[]" that compels a different result.  *Cochise Consultancy,* 139 S.
Ct. at 1512.  Rather, these and other provisions of the statute support a
construction under which a bank's supervisor can act against the bank's
IAPs regardless of where their misconduct rendering them unfit to
serve took place.

Petitioners argue that "Congress intended for each agency to have
exclusive enforcement jurisdiction over the institutions that they
regulate."  Br. at 17-19.  This argument mistakenly conflates the
(typically) distinct jurisdiction of a regulator over particular types of
*institutions* with the notion of exclusive jurisdiction over *IAPs*, *cf.*
12 U.S.C. § 1818(t)(6) (separately referencing agency jurisdiction over
insured depository institutions and IAPs in connection with referrals to
another agency), and cuts against construing section 1818(e) in a way
that would bar an agency from suspending an IAP who poses an

43

immediate threat to an institution that it regulates.  Second, Petitioners argue that 12 U.S.C. § 1818(i)(3), which grants agencies continuing jurisdiction over IAPs who have separated from a bank that they regulate, divests other agencies of jurisdiction over IAPs with respect to the same misconduct.  Br. at 26.  But section 1818(i)(3) lacks any language indicating that its jurisdictional grant is exclusive, and in fact would be rendered nugatory under Petitioners' construction of section 1818(e)(1).

Under the framework established by 12 U.S.C. § 1813(q), institutions are generally subject to supervision by a particular federal banking agency, *i.e.*, the Board, OCC, or FDIC.  Petitioners point to various authorities discussing this basic regulatory framework.  Br. at 19-21.  But these materials discuss the scope of a federal banking agency's authority over a particular institution, not an IAP.  And none analyze the provision for enforcement against IAPs, section 1818(e).  Petitioners' observation that the FDIC regulates state nonmember banks such as Central is true, but irrelevant.  This enforcement action is against IAPs of an institution that the Board supervises; it is not against Central.  Nothing in the statutory scheme or case law indicates

44

that oversight of an IAP's conduct is exclusive to one federal banking regulator, or that a federal banking regulator is powerless to act against an IAP of a bank that it supervises based on misconduct affecting other institutions.

In fact, the statute grants *multiple agencies* concurrent jurisdiction over IAPs in several situations.[16]  For example, if one bank regulator issues an order of removal or suspension against an IAP, the order operates as an industrywide prohibition barring employment at any insured depository institution regardless of regulator, as well as at certain other non-bank institutions regulated by the NCUA and other agencies.  12 U.S.C. § 1818(7)(A).  Exceptions to this prohibition require the consent of *both* the agency that had issued the order and the agency supervising the institution with which the former IAP proposes to affiliate, *id.* § 1818(e)(7)(B), and thus two agencies exercise concurrent jurisdiction in the matter.  *See also* 12 U.S.C. § 1818(t)(2) (allowing the

---

[16] In addition, section 1813(q), on which Petitioners rely, provides for concurrent jurisdiction over *institutions* in certain matters, noting that "more than one agency may be an appropriate Federal banking agency with respect to any given institution."  It thus further undermines Petitioners' assumption that grants of jurisdiction under the Act to one agency must necessarily be exclusive.

FDIC to take certain enforcement actions against both insured depository institutions and IAPs over which other agencies have jurisdiction); *DeNaples*, 706 F.3d at 487-88 (noting "potentially overlapping" agency jurisdiction, such that "a single individual may be subject to enforcement action by multiple agencies" under 12 U.S.C. § 1829 based on a single criminal conviction).

Moreover, Petitioners' abstract arguments about agency oversight of the safety and soundness of supervised institutions should not and do not compel a result that would bar a bank's supervisor from removing IAPs of that bank whom it deems unfit to serve.  In fact, taken to its logical end, Petitioners' construction of the statute would bar a bank's supervisor from immediately suspending IAPs who pose an imminent threat to that institution's safety and soundness.  *See* 12 U.S.C. § 1818(e)(3)(A)(i) (permitting "the appropriate Federal banking agency" to immediately suspend IAPs prior to completion of removal proceedings *that it had initiated* where "suspension is necessary for the protection of the depository institution or the interests of the depository institution's depositors").

Yet Petitioners argue that when an IAP's misconduct rendering him unfit to work at a bank comes to light after the IAP has moved to a Board-supervised bank, as occurred here, the Board must lobby *another regulator* to expend its own limited enforcement resources to remove (and, as explained above, suspend) the IAP from the Board-supervised bank.  Br. at 25-26.  This makes little sense, and it is far more consistent with each agency's primary responsibility for protecting the safety and soundness of the institutions it supervises to construe the statute in a manner that lets the agency remove its supervised banks' IAPs who are unfit to serve and suspend them immediately if they threaten these banks' safety and soundness.

Petitioners' reliance on 12 U.S.C. § 1818(i)(3) is likewise misplaced, as this provision once again supports the Board's position. Section 1818(i)(3) provides that the resignation, termination, or separation of an IAP "shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice or order and proceed under this section against any such party" for six years from the IAP's departure.  This language does not in any way limit the current "appropriate Federal banking agency"—here, the Board—from

47

bringing an action against IAPs simply because the misconduct may still be punishable by the agency that regulated the IAPs' prior employer.

To the contrary, the language in section 1818(i)(3) is more consistent with the natural construction of section 1818(e)(1) under which "the appropriate Federal banking agency for the depository institution" refers to the agency regulating a bank that employs an IAP rather than the institution impacted by the IAP's actions.  It is the employment-based jurisdictional grant inherent in section 1818(e)(1) that would otherwise terminate once an IAP's affiliation with the bank ends, thereby necessitating section 1818(i)(3)'s language ensuring that separation "shall not affect the jurisdiction and authority of the appropriate Federal banking agency."[17]

---

[17] Section 1818(i)(3) does not serve a separate independent purpose as a statute of limitations. *Proffitt v. FDIC*, 200 F.3d 855, 862 (D.C. Cir. 2000).

### C.     Section 1818's Statutory History Supports the Board's Jurisdiction, as Does Its Legislative History

A review of section 1818(e)'s statutory history[18] provides yet further confirmation that section 1818(e)(1) gives the Board jurisdiction over Petitioners, and the legislative history provides additional support.

When first enacted, section 1818(e) expressly allowed regulators to remove and prohibit affiliates of banks that they supervised based on conduct directed towards other business institutions, including other banks, regardless of the regulator of those banks.  FIRREA amended these provisions, but its purposes clause only indicated an intent to broaden, rather than restrict, this authority.  The statutory history consequently supports a broad construction of the statute that is consistent with allowing more than one agency to take remedial action based on the same or overlapping misconduct.  Moreover, other

---

[18] Statutory history is distinct from legislative history and concerns analysis of enacted amendments to a statute.  *See Guerrero-Lasprilla v. Barr,* 589 U.S. ___, 140 S. Ct. 1062, 1071-72 (2020) (separately analyzing statutory and legislative history); *BNSF Ry. Co. v. Loos*, 586 U.S. ___, 139 S. Ct. 893, 906 (2019) (Gorsuch, J., dissenting) (explaining that statutory history is not "unenacted legislative history" but is instead "the record of enacted changes Congress made to the relevant statutory text over time, the sort of textual evidence everyone agrees can sometimes shed light on meaning").

amendments added by FIRREA demonstrate Congressional intent to continue tying agency jurisdiction over an IAP to the institution(s) with which the IAP is affiliated, rather than to the institution affected by an IAP's misconduct.

As originally enacted, section 1818(e) had separate provisions— with somewhat differing standards[19]—expressly authorizing removal of directors and officers based on: (1) misconduct at their employing bank; and (2) misconduct in connection with "another insured bank or other business institution." *Compare* 12 U.S.C. § 1818(e)(1)-(2) (1970) (misconduct at employing bank) (enacted by the Financial Institutions Supervisory Act of 1966, P.L. 89-695 § 202, 80 Stat. 1028, 1047-48), *with id.* § 1818(e)(3)-(4) (misconduct at "another insured bank or other business institution").

---

[19] The statute's removal standards differed in various ways depending on whether the misconduct affected the employing bank or another bank or business institution. For example, a regulator could remove an officer by showing, *inter alia*, that, due to his actions, his employing bank would "probably" be harmed, while proof of *actual* harm was required for removal based on actions affecting other institutions; moreover, a breach of fiduciary duty only provided grounds for removal if it affected the currently-employing bank. *Compare* 12 U.S.C. § 1818(e)(1)-(2) (1970), *with id.* § 1818(e)(3)-(4).

While the statute clearly specified a particular regulator's removal authority based on the bank where an affiliate was *currently employed*, *compare* 12 U.S.C. § 1818(e)(1), -(e)(3) (1970), *with id.* § 1818(e)(2), -(e)(4) (basing jurisdiction on whether the employing bank was regulated by OCC), it notably had no such limitations with respect to the institution *impacted* by the actionable misconduct. Moreover, a regulator could institute removal proceedings only if the individual was still employed at an institution that it supervised. *See Stoddard v. Bd. of Governors of the Fed. Reserve Sys.*, 868 F.2d 1308, 1310 (D.C. Cir. 1989) (pre-FIRREA decision holding that bank official could not be subjected to removal and consequent prohibition if he resigned prior to initiation of removal proceedings because "[o]ne cannot remove what isn't there"). Thus, under the facts present in this matter, where Petitioners resigned from Central before their misconduct was fully discovered, only the Board might have been authorized under the original, pre-FIRREA version of section 1818(e) to commence an enforcement proceeding against them.

Congress has amended section 1818(e) twice. In 1978, Congress collapsed subsections 1818(e)(1)-(2) and 1818(e)(3)-(4) into new

subsections 1818(e)(1) and 1818(e)(2), respectively, to permit the OCC

to directly initiate proceedings against affiliates of banks that it

regulated.  *See* Financial Institutions Regulatory and Interest Rate

Institutions Control Act of 1978, P.L. 95–630 § 107(d)(1), 92 Stat. 3641,

3656-58 (codified as amended at 12 U.S.C. § 1818(e)(1)-(2), 1818(e)(4)-

(5) (1982)); H.R. Rep. No. 95-1383, at 41 (1978).  The statute retained

the language that separately authorized removal by a regulator of a

banks' directors and officers based on actions towards "another insured

bank or other business institution."  12 U.S.C. § 1818(e)(2) (1982).

 To eliminate the different standards for removal based on conduct

towards a current employer and conduct towards other institutions,

FIRREA amended section 1818(e) in a manner that replaced the

distinct misconduct provisions with the current, generalized language

establishing uniform grounds for removal.  FIRREA § 903(a)(1),

103 Stat. at 453 (codified as amended at 12 U.S.C. § 1818(e)(1)).  For

instance, the new text eliminated references to *which* institution was

impacted by particular types of misconduct.  *Compare*, *e.g.*, 12 U.S.C.

§ 1818(e)(1)(A)(iii) (2018) (identifying breach of fiduciary duty as

grounds for removal without specifying that the duty be owed to the

employing bank) *with* 12 U.S.C. § 1818(e)(1)-(2) (1982) (only permitting removal for breach of fiduciary duty to the employing bank). Elsewhere, FIRREA effectively combined the separate misconduct provisions to authorize uniform enforcement standards based on misconduct directed towards "any insured depository institution *or business institution*." *E.g.*, 12 U.S.C. § 1818(e)(1)(A)(ii) (emphasis added).

Nothing in FIRREA evinces an intention to take away what had previously been unquestioned agency jurisdiction to remove an IAP based on misconduct at any business institution. In fact, FIRREA was enacted in the wake of the Savings and Loan crisis as a way to *expand* enforcement powers. *See CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 740-41 (D.C. Cir. 1995) (citations omitted). Its purposes clause stated an intent to "*strengthen the enforcement powers* of Federal regulators of depository institutions." FIRREA § 101(9), 103 Stat. at 187 (emphasis added). This Court has consequently construed FIRREA's provisions broadly to further this purpose. *See Franklin Sav. Ass'n v. OTS*, 35 F.3d 1466, 1470 (10th Cir. 1994) ("Our interpretation of [12 U.S.C.] § 1464 is consistent with the broad policy objectives of FIRREA to

strengthen the enforcement powers of federal regulators . . . .") (citing FIRREA § 101(8)-(9)).  Petitioners' attempts to narrowly construe FIRREA's amendments to section 1818 in a way that makes one agency's removal jurisdiction exclusive and thus limits prior agency jurisdiction does not comport with FIRREA's stated purposes or the manner in which this Court has construed FIRREA.

Moreover, other provisions of the act demonstrate that FIRREA continued to base an agency's jurisdiction over an IAP on the IAP's employment by an institution regulated by that agency, rather than determining jurisdiction based on which institution was allegedly impacted by the misconduct.  As discussed *supra* at 48, section 1818(i)(3), which was enacted by FIRREA § 905(a), 103 Stat. 183, 459, is more consistent with such a construction of section 1818(e)(1).

Notably, FIRREA also amended the Federal Credit Union Act to include a provision similar to section 1818(e), which did not restrict the NCUA's jurisdiction to remove a credit union's IAPs based on misconduct at banks, which the NCUA does not regulate.  *See* FIRREA § 903(b)(1), 103 Stat. 183, 455 (codified as amended at 12 U.S.C. § 1786(g)(1)).  The provision allows removal due to conduct that

54

constituted an "unsafe or unsound practice in connection with any insured credit union or business institution." 12 U.S.C. § 1786(g)(1)(A)(ii).  But it contains no language suggesting that a bank regulator must initiate removal proceedings if the "business institution" impacted by the misconduct happened to be a bank, even though FIRREA simultaneously made prohibition from employment *at banks* a consequence of such removal.  *See* FIRREA § 904(b), 103 Stat. 183, 458 (codified as amended at 12 U.S.C. § 1786(g)(7)).[20]  Thus, FIRREA's provisions taken as a whole lend no support to Petitioners' contention that Congress intended its amendments to section 1818(e)(1) to limit a bank's regulator from removing that bank's current IAPs based on misconduct directed towards other regulated entities.

Although the statutory text and history are conclusive, FIRREA's legislative history serves to underscore that FIRREA was meant to expand agency enforcement powers and in no way intended to limit a

---

[20] FIRREA similarly did not include a requirement in section 1818(e) for the NCUA to remove an IAP currently employed at a bank based on misconduct directed towards a credit union, even though the resulting industrywide ban that FIRREA added to the statute similarly prohibited employment both at banks and at credit unions.  *See* FIRREA § 904(a), 103 Stat. 183, 458 (codified as amended at 12 U.S.C. § 1818(e)(7)(A)).

bank regulator's preexisting authority to remove IAPs based on misconduct directed at other institutions, regardless of the regulator of those institutions. *See* H.R. Rep. 101-54, pt. 1, at 307-08 (stating that FIRREA would "enhance the regulatory enforcement powers of the depository institution regulatory agencies"). The changes made to section 1818(e)(1) were in fact intended to promote *uniformity* in regulators' ability to initiate removal proceedings regardless of whether the IAP's employing institution or a different business was affected, rather than to create *differences* in a regulator's ability to proceed based on which institution was affected, as Petitioners urge. As explained in the legislative history:

> [U]nder present law, agencies follow different standards for removal actions, depending on where the misconduct took place, *whether at another financial institution* or business enterprise, or at the particular institution from which removal is sought. This section unifies the two separate removal provisions in Sections 8(e)(1) and (2) of the Federal Deposit Insurance Act ("FDIA") and in Sections 206(g)(1) and (2) of the Federal Credit Union Act, thereby making the legal grounds for enforcement action the same, *irrespective of where the serious misconduct occurred.*

H.R. Rep. 101-54, pt. 1, at 392 (emphases added).

With respect to the addition of section 1818(i)(3)'s provision for jurisdiction over former bank affiliates, the legislative history expresses

56

an intention to overrule *Stoddard* in order to *expand* enforcement authority to former affiliates.  H.R. Rep. 101-54, pt. 1, at 468-69.  It makes no mention of any intention to simultaneously limit the existing authority of a regulator to take action against an IAP employed at a bank that it regulates based on misconduct while previously employed at another bank.  *Id.* (stating only that the amendment would allow enforcement against former bank affiliates); *see also CityFed*, 58 F.3d at 743 ("Congress included section 1818(i)(3) in FIRREA *solely* to address the effects of our decision in *Stoddard* . . . ." (emphasis added)).

There is consequently no indication in FIRREA's statutory or legislative history that Congress intended to *limit* agency removal authority based on misconduct occurring at other financial institutions—which prior law vested exclusively with the regulator of an affiliate's currently-employing bank—so that an agency could no longer take action based on such misconduct.

## D.    The Board's Interpretation Is Entitled to Deference

Although the statute is sufficiently clear that the Court need not reach the question, to the extent any ambiguity remains, the Board's natural construction of section 1818(e) is entitled to deference under

57

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  Under *Chevron,* the issue "is not whether [the agency's interpretation] represents the best interpretation of the statute, but whether it represents a reasonable one."  *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 744-45 (1996).  Courts will therefore defer to an agency's reasonable construction of "jurisdictional" provisions that define the scope of its authority.  *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 296-98 (2013).

*Chevron* deference applies to formal adjudications, *Schreiber v. Cuccinelli*, 981 F.3d 766, 772 (10th Cir. 2020); *TransAm Trucking, Inc. v. DOL*, 833 F.3d 1206, 1210 (10th Cir. 2016), and the Board's construction of section 1818(e) was made in a formal adjudication conducted in accordance with the APA's requirements.  *See* 12 U.S.C. § 1818(h)(1) (requiring compliance with the APA).  The Board's orders and decision were also made public.  *See id.* § 1818(u)(1)(B) (requiring publication of final enforcement orders); *In re Smith and Kiolbasa,* FRB No. 18-036-E-I, 2021 WL 1590337 (Mar. 24, 2021) (Final Decision), *also available at* https://www.federalreserve.gov/newsevents/pressreleases/files/enf20210330a1.pdf; *cf. Sinclair Wyoming Ref. Co. v. EPA*, 887 F.3d

986, 992 (10th Cir. 2017) (refusing to grant deference to agency

construction made in an informal proceeding that lacked "'trial-like'

procedures required under the APA" and did not result in a public

ruling).  The Board's construction thus qualifies for deference.

Petitioners assert that *Chevron* deference does not apply because

section 1818 is administered by more than one agency.  Br. at 7-8.

However, the D.C. Circuit case they cite in support, *Rapaport v. OTS*,

59 F.3d 212, 216 (D.C. Cir. 1995),[21] is inconsistent with this Court's

jurisprudence, and Petitioners have not explained why the Court should

adopt its reasoning.  *Cf. Rico*, 3 F.4th at 1240 n.3 ("Arguments

---

[21] The D.C. Circuit has acknowledged that other circuits have not
followed its approach in this area.  *See DeNaples*, 706 F.3d at 488 n.4
(citing *Akin v. OTS*, 950 F.2d 1180, 1185 (5th Cir. 1992); *Van Dyke v.
Bd. of Governors of the Fed. Reserve Sys.*, 876 F.2d 1377, 1379 (8th Cir.
1989)).  And the Seventh Circuit has expressly rejected the D.C.
Circuit's reasoning on the issue.  *See Bd. of Trade of the City of Chicago
v. SEC*, 187 F.3d 713, 719 (7th Cir. 1999) (absent "logical
impossibility"—where two agencies construe a statute in a manner that
makes it impossible for regulated entities to comply with both
interpretations, rather than simply complying with a "stingier"
construction, there are no grounds to deny deference); *Chicago
Mercantile Exch. v. SEC*, 883 F.2d 537, 547 (7th Cir. 1989)
(commitment of a statute's construction to two agencies need not "make
the court the recipient of interpretive powers" that *Chevron* indicated
are best exercised by specialized agencies).

inadequately briefed in the opening brief are waived[.]" (citation omitted)).

This Court has in fact granted *Chevron* deference to agency constructions of statutes administered by multiple agencies. For example, in *Manning v. United States*, 146 F.3d 808 (10th Cir. 1998), this Court noted that a statute was administered—and had been construed—by both the Department of Interior and the Forest Service, an agency within the Department of Agriculture. *Id.* at 814. Yet it expressed no reluctance to defer to an agency construction of this jointly-administered statute. *Id.* ("Because Congress did not clearly address the issue, this court defers to interpretations of the statute by the agencies charged with its administration, provided such interpretations are based on a permissible construction of the statute."). This Court has also repeatedly deferred to banking regulators' construction of provisions of jointly-administered statutes, *including section 1818. See Long v. Bd. of Governors of the Fed. Reserve Sys.*, 117 F.3d 1145, 1157-58 (10th Cir. 1997) (deferring to the Board's construction of section 1818(i)(2)(F)); *see also Rapp v. OTS*, 52 F.3d

1510, 1518 (10th Cir. 1995) (deferring to agency interpretation of part of the jointly-administered Change in Bank Control Act).

Petitioners make a conclusory assertion that *Rapaport* requires that this Court deny deference to the Board's construction, Br. at 7, but have not actually addressed why that authority should apply here. They have provided no argument for why this Court should abandon its prior practice of deferring "to interpretations of [a] statute by the *agencies* charged with its administration." *Manning*, 146 F.3d at 814 (emphasis added). Nor have they attempted to reconcile *Rapaport* with this Court's reasoning that, because agencies "are ordinarily more adept at reconciling conflicting policies within their areas of expertise than are courts, we uphold an agency's [permissible] construction of a statute it administers." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 727 (10th Cir. 2006). Such reasoning about the allocation of power between agencies and courts should apply with equal force regardless of whether one or three specialized agencies are charged with administering a statute addressing matters within their particular area of expertise.

As explained above, the Board's construction of "appropriate Federal banking agency" as encompassing the regulator of any institution with which an IAP is or was affiliated, regardless of the institution *affected* by the IAP's misconduct, is reasonable in light of section 1818(e)'s text and history.  It is therefore entitled to deference.

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Court deny the petition.

DATED:  September 10, 2021

Respectfully submitted,

/s/ Yonatan Gelblum
Joshua P. Chadwick, Senior Special Counsel
Yonatan Gelblum, Senior Counsel
Katherine Pomeroy, Senior Counsel
Board of Governors of the Federal Reserve System
20th Street & Constitution Avenue, N.W.
Washington, D.C. 20551
yonatan.gelblum@frb.gov
(202) 452-2046

*Attorneys for Respondent*

## STATEMENT REGARDING ORAL ARGUMENT

Because Petitioners waived their constitutional argument by not raising it below, the Board does not believe that oral argument is necessary to dispose of that issue.  To the extent the Court wishes to explore the merits of the constitutional argument or has questions regarding Petitioners' statutory claim, however, oral argument may benefit the Court's decisional process.

63

# STATUTORY AND REGULATORY ADDENDUM

Page

5 U.S.C. § 706 ................................................................................. A3

5 U.S.C. § 7521 .............................................................................. A4

12 U.S.C. § 244................................................................................. A5

12 U.S.C. § 248................................................................................. A6

12 U.S.C. § 1786............................................................................... A7

12 U.S.C. § 1813............................................................................... A9

12 U.S.C. § 1818 (1970) ................................................................ A12

12 U.S.C. § 1818 (1982) ................................................................ A14

12 U.S.C. § 1818 (2018) ................................................................ A16

Financial Institutions Supervisory Act of 1966, PL 89-695
    (excerpt) .............................................................................. A25

Financial Institutions Regulatory and Interest Rate Institutions Control
    Act of 1978, P.L. 95-630 (excerpt) .............................................. A28

Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
    P.L. 101-73 (excerpts) ................................................................ A31

12 C.F.R. § 263.4............................................................................. A41

12 C.F.R. § 263.18........................................................................... A41

12 C.F.R. § 263.24........................................................................... A42

12 C.F.R. § 263.28........................................................................... A43

A1

12 C.F.R. § 263.29 ................................................................ A44

12 C.F.R. § 263.35 ................................................................ A46

12 C.F.R. § 263.38 ................................................................ A47

12 C.F.R. § 263.39 ................................................................ A48

12 C.F.R. § 263.40 ................................................................ A49

12 C.F.R. § 263.54 ................................................................ A50

12 C.F.R. § 263.55 ................................................................ A50

## 5 U.S.C. § 706 Scope of Review.

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

. . .

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—

    **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    **(B)** contrary to constitutional right, power, privilege, or immunity;

    **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    **(D)** without observance of procedure required by law;

    **(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

### 5 U.S.C. § 7521 Actions against administrative law judges.

**(a)** An action may be taken against an administrative law judge appointed under section 3105 of this title by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board.

**(b)** The actions covered by this section are—

**(1)** a removal;

**(2)** a suspension;

**(3)** a reduction in grade;

**(4)** a reduction in pay; and

**(5)** a furlough of 30 days or less;

but do not include—

**(A)** a suspension or removal under section 7532 of this title;

**(B)** a reduction-in-force action under section 3502 of this title; or

**(C)** any action initiated under section 1215 of this title.

A4

**12 U.S.C. § 244 Principal offices of Board; chairman of Board; obligations and expenses; qualifications of members; vacancies**

. . .

The Board shall determine and prescribe the manner in which its obligations shall be incurred and its disbursements and expenses allowed and paid, and may leave on deposit in the Federal Reserve banks the proceeds of assessments levied upon them to defray its estimated expenses and the salaries of its members and employees, whose employment, compensation, leave, and expenses shall be governed solely by the provisions of this chapter and rules and regulations of the Board not inconsistent therewith; and funds derived from such assessments shall not be construed to be Government funds or appropriated moneys.

. . .

A5

## 12 U.S.C. § 248 Enumerated powers.

The Board of Governors of the Federal Reserve System shall be
authorized and empowered:

. . .

### (l) Employing attorneys, experts, assistants, and clerks; salaries and fees

To employ such attorneys, experts, assistants, clerks, or other
employees as may be deemed necessary to conduct the business of the
board. All salaries and fees shall be fixed in advance by said board and
shall be paid in the same manner as the salaries of the members of said
board. All such attorneys, experts, assistants, clerks, and other
employees shall be appointed without regard to the provisions of the Act
of January sixteenth, eighteen hundred and eighty-three (volume
twenty-two, United States Statutes at Large, page four hundred and
three), and amendments thereto, or any rule or regulation made in
pursuance thereof: Provided, That nothing herein shall prevent the
President from placing said employees in the classified service.

. . .

**12 U.S.C. § 1786 Termination of insured credit union status; cease and desist orders; removal or suspension from office; procedure.**

. . .

**(g) Removal and prohibition authority**

**(1) Authority to issue order.**—Whenever the Board determines that—

**(A)** any institution-affiliated party has, directly or indirectly—

**(i)** violated—
**(I)** any law or regulation;

**(II)** any cease-and-desist order which has become final;

**(III)** any condition imposed in writing by the Board in connection with any action on any application, notice, or request by such credit union or institution-affiliated party; or

**(IV)** any written agreement between such credit union and the Board;

**(ii)** engaged or participated in any unsafe or unsound practice in connection with any insured credit union or business institution; or

**(iii)** committed or engaged in any act, omission, or practice which constitutes a breach of such party's fiduciary duty;

**(B)** by reason of the violation, practice, or breach described in any clause of subparagraph (A)—

**(i)** such insured credit union or business institution has suffered or will probably suffer financial loss or other damage;

A7

**(ii)** the interests of the insured credit union's members have been or could be prejudiced; or

**(iii)** such party has received financial gain or other benefit by reason of such violation, practice or breach; and

**(C)** such violation, practice, or breach—

**(i)** involves personal dishonesty on the part of such party; or

**(ii)** demonstrates such party's unfitness to serve as a director or officer of, or to otherwise participate in the conduct of the affairs of, an insured credit union,

the Board may serve upon such party a written notice of the Board's intention to remove such party from office or to prohibit any further participation, by such party, in any manner in the conduct of the affairs of any insured credit union.

. . .

A8

## 12 U.S.C. § 1813 Definitions.

As used in this chapter –

. . .

**(q) Appropriate Federal banking agency**

The term "appropriate Federal banking agency" means—

**(1)** the Office of the Comptroller of the Currency, in the case of—

**(A)** any national banking association;

**(B)** any Federal branch or agency of a foreign bank; and

**(C)** any Federal savings association;

**(2)** the Federal Deposit Insurance Corporation, in the case of—

**(A)** any State nonmember insured bank;

**(B)** any foreign bank having an insured branch; and

**(C)** any State savings association; [1]

**(3)** the Board of Governors of the Federal Reserve System, in the case of—

**(A)** any State member bank;

**(B)** any branch or agency of a foreign bank with respect to any provision of the Federal Reserve Act [12 U.S.C. 221 et seq.] which is made applicable under the International Banking Act of 1978 [12 U.S.C. 3101 et seq.];

**(C)** any foreign bank which does not operate an insured branch;

A9

**(D)** any agency or commercial lending company other than a Federal agency;

**(E)** supervisory or regulatory proceedings arising from the authority given to the Board of Governors under section 7(c)(1) of the International Banking Act of 1978 [12 U.S.C. 3105(c)(1)], including such proceedings under the Financial Institutions Supervisory Act of 1966;

**(F)** any bank holding company and any subsidiary (other than a depository institution) of a bank holding company; and

**(G)** any savings and loan holding company and any subsidiary (other than a depository institution) of a savings and loan holding company.

Under the rule set forth in this subsection, more than one agency may be an appropriate Federal banking agency with respect to any given institution.

. . .

## (u) Institution-affiliated party

The term "institution-affiliated party" means—

**(1)** any director, officer, employee, or controlling stockholder (other than a bank holding company or savings and loan holding company) of, or agent for, an insured depository institution;

**(2)** any other person who has filed or is required to file a change-in-control notice with the appropriate Federal banking agency under section 1817(j) of this title;

**(3)** any shareholder (other than a bank holding company or savings and loan holding company), consultant, joint venture partner, and any other person as determined by the appropriate Federal banking agency (by regulation or case-by-case) who participates in the conduct of the affairs of an insured depository institution; and

A10

**(4)** any independent contractor (including any attorney, appraiser, or accountant) who knowingly or recklessly participates in—

**(A)** any violation of any law or regulation;

**(B)** any breach of fiduciary duty; or

**(C)** any unsafe or unsound practice,

which caused or is likely to cause more than a minimal financial loss to, or a significant adverse effect on, the insured depository institution.

**12 U.S.C. § 1818 (1970) Termination of status as insured bank.**

. . .

**(e) Suspension or removal of director or officer.**

**(1)** Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured State bank (other than a District bank) has committed any violation of law, rule, or regulation, or of a cease-and-desist order which has become final, or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the agency determines that the bank has suffered or will probably suffer substantial financial loss or other damage or that the interests of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or officer, the agency may serve upon such director or officer a written notice of its intentions to remove him from office.

**(2)** Whenever, in the opinion of the Comptroller of the Currency, any director or officer of a national banking association or a District bank has committed any violation of law, rule, or regulation, or of a  cease-and-desist order which has become final, or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the Comptroller determines that the bank has suffered or will probably suffer substantial financial loss or other damage or that the interests of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or officer, the Comptroller of the Currency may certify the facts to the Board of Governors of the Federal Reserve System.

**(3)** Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured State bank (other than a District bank), by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to continue as a director or officer and, whenever, in the opinion of the appropriate Federal banking agency, any other person participating in the conduct of the affairs of an insured State bank (other than a District bank), by conduct or practice with respect to such bank or other insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to participate in the conduct of the affairs of such insured bank, the agency may serve upon such director, officer, or other person a written notice of its intention to remove him from office and/or to prohibit his further participation in any manner in the conduct of the affairs of the bank.

**(4)** Whenever, in the opinion of the Comptroller of the Currency, any director or officer of a national banking association or a District bank, by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to continue as a director or officer and, whenever, in the opinion of the Comptroller, any other person participating in the conduct of the affairs of a national banking association or a District bank, by conduct or practice with respect to such bank or other insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to participate in the conduct of the affairs of such bank, the Comptroller of the Currency may certify the facts to the Board of Governors of the Federal Reserve System.

. . .

A13

## 12 U.S.C. § 1818 (1982) Termination of status as insured bank.

. . .

### (e) Suspension or removal of director or officer

**(1)** Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank has committed any violation of law, rule, or regulation or of a cease-and-desist order which has become final, or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the agency determines that the bank has suffered or will probably suffer substantial financial loss or other damage or that the interests of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty or that the director or office I has received financial gain by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or officer, or one which demonstrates a willful or continuing disregard for the safety or soundness of the bank, the agency may serve upon such director or officer a written notice of its intention to remove him from office.

**(2)** Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank, by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to continue as a director or officer and, whenever, in the opinion of the appropriate Federal banking agency, any other person participating in the conduct of the affairs of an insured bank, by conduct or practice with respect to such bank or other insured bank or other business institution which resulted insubstantial financial loss or other damage, has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to

A14

participate in the conduct of the affairs of such insured bank, the agency may serve upon such director, officer, or other person a written notice of its intention to remove him from office or to prohibit his further participation in any manner in the conduct of the affairs of the bank.

. . .

## 12 U.S.C. § 1818 (2018) Termination of status as insured depository institution.

. . .

### (e) Removal and prohibition authority

**(1) Authority to issue order.**—Whenever the appropriate Federal banking agency determines that—

**(A)** any institution-affiliated party has, directly or indirectly—

**(i)** violated—

**(I)** any law or regulation;

**(II)** any cease-and-desist order which has become final;

**(III)** any condition imposed in writing by a Federal banking agency in connection with any action on any application, notice, or request by such depository institution or institution-affiliated party; or

**(IV)** any written agreement between such depository institution and such agency;

**(ii)** engaged or participated in any unsafe or unsound practice in connection with any insured depository institution or business institution; or

**(iii)** committed or engaged in any act, omission, or practice which constitutes a breach of such party's fiduciary duty;

**(B)** by reason of the violation, practice, or breach described in any clause of subparagraph (A)—

**(i)** such insured depository institution or business institution has suffered or will probably suffer financial loss or other damage;

A16

**(ii)** the interests of the insured depository institution's depositors have been or could be prejudiced; or

**(iii)** such party has received financial gain or other benefit by reason of such violation, practice, or breach; and

**(C)** such violation, practice, or breach—

**(i)** involves personal dishonesty on the part of such party; or

**(ii)** demonstrates willful or continuing disregard by such party for the safety or soundness of such insured depository institution or business institution,

the appropriate Federal banking agency for the depository institution may serve upon such party a written notice of the agency's intention to remove such party from office or to prohibit any further participation by such party, in any manner, in the conduct of the affairs of any insured depository institution.

. . .

**(3) Suspension order**.—

**(A)** Suspension or prohibition authorized.—If the appropriate Federal banking agency serves written notice under paragraph (1) or (2) to any institution-affiliated party of such agency's intention to issue an order under such paragraph, the appropriate Federal banking agency may suspend such party from office or prohibit such party from further participation in any manner in the conduct of the affairs of the depository institution, if the agency—

**(i)** determines that such action is necessary for the protection of the depository institution or the interests of the depository institution's depositors; and

**(ii)** serves such party with written notice of the suspension order.

**(B)** Effective period.—Any suspension order issued under subparagraph (A)—

**(i)** shall become effective upon service; and

**(ii)** unless a court issues a stay of such order under subsection (f), shall remain in effect and enforceable until—

**(I)** the date the appropriate Federal banking agency dismisses the charges contained in the notice served under paragraph (1) or (2) with respect to such party; or

**(II)** the effective date of an order issued by the agency to such party under paragraph (1) or (2).

. . .

**(7) Industrywide Prohibition**.—

**(A)** In general.—Except as provided in subparagraph (B), any person who, pursuant to an order issued under this subsection or subsection (g), has been removed or suspended from office in an insured depository institution or prohibited from participating in the conduct of the affairs of an insured depository institution may not, while such order is in effect, continue or commence to hold any office in, or participate in any manner in the conduct of the affairs of—

**(i)** any insured depository institution;

**(ii)** any institution treated as an insured bank under subsection (b)(3) or (b)(4), or as a savings association under subsection (b)(9);

A18

**(iii)** any insured credit union under the Federal Credit Union Act [12 U.S.C. 1751 et seq.];

**(iv)** any institution chartered under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.];

**(v)** any appropriate Federal depository institution regulatory agency; and

**(vi)** the Federal Housing Finance Agency and any Federal home loan bank.

**(B)** Exception if agency provides written consent.—If, on or after the date an order is issued under this subsection which removes or suspends from office any institution-affiliated party or prohibits such party from participating in the conduct of the affairs of an insured depository institution, such party receives the written consent of—

**(i)** the agency that issued such order; and

**(ii)** the appropriate Federal financial institutions regulatory agency of the institution described in any clause of subparagraph (A) with respect to which such party proposes to become an institution-affiliated party,

subparagraph (A) shall, to the extent of such consent, cease to apply to such party with respect to the institution described in each written consent. Any agency that grants such a written consent shall report such action to the Corporation and publicly disclose such consent.

**(C)** Violation of paragraph treated as violation of order.—
Any violation of subparagraph (A) by any person who is subject to an order described in such subparagraph shall be treated as a violation of the order.

**(D)** "Appropriate federal financial institutions regulatory agency" defined.—For purposes of this paragraph and subsection (j), the term "appropriate Federal financial institutions regulatory agency" means—

> **(i)** the appropriate Federal banking agency, in the case of an insured depository institution;
>
> **(ii)** the Farm Credit Administration, in the case of an institution chartered under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.];
>
> **(iii)** the National Credit Union Administration Board, in the case of an insured credit union (as defined in section 101(7) of the Federal Credit Union Act [12 U.S.C. 1752(7)]); and
>
> **(iv)** the Secretary of the Treasury, in the case of the Federal Housing Finance Agency and any Federal home loan bank.

**(E)** Consultation between agencies.—
The agencies referred to in clauses (i) and (ii) of subparagraph (B) shall consult with each other before providing any written consent described in subparagraph (B).

**(F)** Applicability.—
This paragraph shall only apply to a person who is an individual, unless the appropriate Federal banking agency specifically finds that it should apply to a corporation, firm, or other business enterprise.

. . .

## (h) Hearings and judicial review

**(1)** Any hearing provided for in this section (other than the hearing provided for in subsection (g)(3) of this section) shall be held in the Federal judicial district or in the territory in which the home office of the depository institution is located unless the party afforded the hearing consents to another place, and shall be conducted in

accordance with the provisions of chapter 5 of title 5. After such hearing, and within ninety days after the appropriate Federal banking agency or Board of Governors of the Federal Reserve System has notified the parties that the case has been submitted to it for final decision, it shall render its decision (which shall include findings of fact upon which its decision is predicated) and shall issue and serve upon each party to the proceeding an order or orders consistent with the provisions of this section. Judicial review of any such order shall be exclusively as provided in this subsection (h). Unless a petition for review is timely filed in a court of appeals of the United States, as hereinafter provided in paragraph (2) of this subsection, and thereafter until the record in the proceeding has been filed as so provided, the issuing agency may at any time, upon such notice and in such manner as it shall deem proper, modify, terminate, or set aside any such order. Upon such filing of the record, the agency may modify, terminate, or set aside any such order with permission of the court.

**(2)** Any party to any proceeding under paragraph (1) may obtain a review of any order served pursuant to paragraph (1) of this subsection (other than an order issued with the consent of the depository institution or the institution-affiliated party concerned, or an order issued under paragraph (1) of subsection (g) of this section) by the filing in the court of appeals of the United States for the circuit in which the home office of the depository institution is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the agency be modified, terminated, or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the agency, and thereupon the agency shall file in the court the record in the proceeding, as provided in section 2112 of title 28. Upon the filing of such petition, such court shall have jurisdiction, which upon the filing of the record shall except as provided in the last sentence of said paragraph (1) be exclusive, to affirm, modify, terminate, or set aside, in whole or in part, the order of the agency. Review of such proceedings shall be had as provided in chapter 7 of title 5. The judgment and decree of the court shall be final, except that the same

A21

shall be subject to review by the Supreme Court upon certiorari, as provided in section 1254 of title 28.

. . .

**(i) Jurisdiction and enforcement; penalty**

. . .

**(3) Notice under this section after separation from service.—** The resignation, termination of employment or participation, or separation of a institution-affiliated party (including a separation caused by the closing of an insured depository institution) shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice or order and proceed under this section against any such party, if such notice or order is served before the end of the 6-year period beginning on the date such party ceased to be such a party with respect to such depository institution (whether such date occurs before, on, or after August 9, 1989).

. . .

**(t) Authority of FDIC to take enforcement action against insured depository institutions and institution-affiliated parties**

**(1) Recommending action by appropriate Federal banking agency**
The Corporation, based on an examination of an insured depository institution by the Corporation or by the appropriate Federal banking agency or on other information, may recommend in writing to the appropriate Federal banking agency that the agency take any enforcement action authorized under section 1817(j) of this title, this section, or section 1828(j) of this title with respect to any insured depository institution, any depository institution holding company, or any institution-affiliated party. The recommendation shall be accompanied by a written explanation of the concerns giving rise to the recommendation.

A22

**(2) FDIC's authority to act if appropriate Federal banking agency fails to follow recommendation**

If the appropriate Federal banking agency does not, before the end of the 60-day period beginning on the date on which the agency receives the recommendation under paragraph (1), take the enforcement action recommended by the Corporation or provide a plan acceptable to the Corporation for responding to the Corporation's concerns, the Corporation may take the recommended enforcement action if the Board of Directors determines, upon a vote of its members, that—

**(A)** the insured depository institution is in an unsafe or unsound condition;

**(B)** the institution or institution-affiliated party is engaging in unsafe or unsound practices, and the recommended enforcement action will prevent the institution or institution-affiliated party from continuing such practices;

**(C)** the conduct or threatened conduct (including any acts or omissions) poses a risk to the Deposit Insurance Fund, or may prejudice the interests of the institution's depositors or[6]]

**(D)** the conduct or threatened conduct (including any acts or omissions) of the depository institution holding company poses a risk to the Deposit Insurance Fund, provided that such authority may not be used with respect to a depository institution holding company that is in generally sound condition and whose conduct does not pose a foreseeable and material risk of loss to the Deposit Insurance Fund;[7]

. . .

**(6)** [8] **Referral to Bureau of Consumer Financial Protection**

Subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.], each appropriate Federal banking

---

[6] So in original. Probably should be "; or".
[7] So in original. The semicolon probably should be a period.
[8] So in original. Two pars. (6) have been enacted.

agency shall make a referral to the Bureau of Consumer Financial Protection when the Federal banking agency has a reasonable belief that a violation of an enumerated consumer law, as defined in the Consumer Financial Protection Act of 2010, has been committed by any insured depository institution or institution-affiliated party within the jurisdiction of that appropriate Federal banking agency.

. . .

## (u) Public disclosures of final orders and agreements

### (1)   In general

The appropriate Federal banking agency shall publish and make available to the public on a monthly basis—

. . .

**(B)** any final order issued with respect to any administrative enforcement proceeding initiated by such agency under this section or any other law; and

**(C)** any modification to or termination of any order or agreement made public pursuant to this paragraph.

. . .

### (3) Transcript of hearing

A transcript that includes all testimony and other documentary evidence shall be prepared for all hearings commenced pursuant to subsection (i). A transcript of public hearings shall be made available to the public pursuant to section 552 of title 5.

. . .

A24

# PUBLIC LAW 89-695 – OCT. 16, 1966.

Public Law 89-695
89th Congress

. . .

 *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That this Act may be cited as the "Financial Institutions Supervisory Act of 1966".

. . .

Sec. 202. Section 8 of the Federal Deposit Insurance Act (12 U.S.C. 1818), is amended by redesignating subsections (b), (c), and (d) thereof as (o), (p), and (q) and by adding after subsection (a) thereof the following new subsections (b) through (n), inclusive:

. . .

 "(e)(1) Whenever, in the opinion of the appropriate Federal banking agency, any director or officers of an insured State bank (other than a District bank) has committed any violation of law, rule or regulation, or of a cease-and-desist order which has become final or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the agency determines that the bank has suffered or will probably suffer substantial financial loss or other damage that the interest of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or office, the agency may serve upon such director or officers a written notice of its intention to remove him from office.

 "(2) Whenever, in the opinion of the Comptroller of the Currency, any director or officer of a national banking association or a District bank has committed any violation of law, rule, or regulation, or of a cease-and-desist order which has become final, or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which

A25

constitutes a breach of fiduciary duty as such director or officer, and the Comptroller determines that the bank has suffered or will probably suffer substantial financial loss or other damage or that the interest of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one involving personal dishonesty on the part of such director or officers, the Comptroller of the Currency may certify the fats to the Board of Governors of the Federal Reserve System.

"(3) Whenever, in the opinion of the appropriated Federal banking agency, any director or officers of an insured State bank (other than a District bank), by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to continue as a director or officer and, whenever, in the opinion of the appropriate Federal banking agency, any other person participating in the conduct of the affairs of an insured State bank (other than a District bank), by conduct or practice with respect to such bank or other insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to participate in the conduct of the affairs of such insured bank, the agency may serve upon such director, officer, or other person a written notice of its intention to remove him from office and/or to prohibit his further participation in any manner in the conduct of the affairs of the bank.

"(4) Whenever, in the opinion of the Comptroller of the Currency, any director or officer of a nation banking association or a District bank, by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to continue as a director or officer and, whenever, in the opinion of the Comptroller, any other person participating in the conduct of the affairs of a national banking association or a District bank, by conduct or practice with respect to such bank or other insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced his personal dishonesty and unfitness to participate in the conduct of the affairs of such bank, the Comptroller of

A26

the Currency may certify the facts to the Board of Governors of the
Federal Reserve System.

. . .

## PUBLIC LAW 95-630 – NOV. 10, 1978.

Public Law 95-630
95th Congress

### An Act

To extend the authority for the flexible regulation of interest rates on deposits and accounts in depository institutions.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That this Act may be cited as the "Financial Institutions Regulatory and Interest Rate Control Act of 1978".

. . .

Sec. 107

. . .

(d)(1) Section 8(e) of the Federal Deposit Insurance Act, as amended (12 U.S.C. 1818(e)), is amended to read as follows:

"(e)(1) Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank has committed office, any violation of law, rule, or regulation or of a cease-and-desist order which has become final, or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has committed or engaged in any act, omission, or practice which constitutes a breach of his fiduciary duty as such director or officer, and the agency determines that the bank has suffered or will probably suffer substantial loss or other damage or that the interests of its depositors could be seriously prejudiced by reason of such violation or practice or breach of fiduciary duty or that the director or office has received financial gain by reason of such violation or practice or breach of fiduciary duty, and that such violation or practice or breach of fiduciary duty is one in volving personal dishonesty on the part of such director or officer, or one which demonstrates a willful or continuing disregard for the safety or

A28

soundness of the bank, the agency may serve upon such director or officer a written notice of its intention to remove him from office.

"(2) Whenever, in the opinion of the appropriate Federal banking agency, any director or officer of an insured bank. by conduct or practice with respect to another insured bank or other business institution which resulted in substantial financial loss or other damage, has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to continue as a director or officer and, whenever, in the opinion of the appropriate Federal banking agency, any other person participating in the conduct of the affairs of an insured bank, by conduct or practice with respect to such bank or other insured bank or other business institution -which resulted in substantial financial loss or other damage, has evidenced either his personal dishonesty or a willful or continuing disregard for its safety and soundness, and, in addition, has evidenced his unfitness to participate in the conduct of the affairs of such insured bank, the agency may serve upon such director, officer, or other person a written notice of its intention to remove him front office or to prohibit his further participation in any manner in the conduct of the affairs of the bank.

"(3) In respect to any director or officer of an insured bank or any other person referred to in paragraph (1) or (2) of this subsection, the appropriate Federal banking agency may, if it deems it necessary for the protection of the bank or the interests of its depositors, by written notice to such effect served upon such director, officer, or other person, suspend him from office or prohibit him from further participation in any manner in the conduct of the affairs of the bank. Such suspension or prohibition shall become effective upon service of such notice and, unless stayed by a court in proceedings authorized by subsection (f) of this section, shall remain in effect pending the completion of the administrative proceedings pursuant to the notice served under paragraph (1) or (2) of this subsection and until such time as the agency shall dismiss the charges specified in such notice, or, if an order of removal or prohibition is issued against the director or officer or other person, until the effective date of any such order. Copies of any such notice shall also be served upon the bank of which he is a director or officer or in the conduct of whose affairs he has participated.

A29

"(4) A notice of intention to remove a director, officer, or other person from office or to prohibit his participation in the conduct of the affairs of an insured bank, shall contain a statement of the facts constituting grounds therefor, and shall fix a time and place at which a hearing will be held thereon. Such hearing shall be fixed for a date not earlier than thirty days nor later than sixty days after the date of service of such notice, unless an earlier or a later date is set by the agency at the request of (A) such director or officer or other person, and for good cause shown, or (B) the Attorney General of the United States. Unless such director, officer, or other person shall appear at the hearing in person or by a duly authorized representative, he shall be deemed to have consented to the issuance of an order of such removal or prohibition. In the event of such consent, or if upon the record made at any such hearing the agency shall find that any of the grounds specified in such notice have been established, the agency may issue such orders of suspension or removal from office, or prohibition from participation in the conduct of the affairs of the bank, as it may deem appropriate. In any action brought under this section by the Comptroller of the Currency in respect to any director, officer or other person with respect to a national banking association or a District bank, the findings and conclusions of the Administrative Law Judge shall be certified to the Board of Governors of the Federal Reserve System for the determination of whether any order shall issue. Any such order shall become effective at the expiration of thirty days after service upon such bank and the director, officer, or other person concerned (except in the case of an order issued upon consent, which shall become effective at the time specified therein). Such order shall remain effective and enforceable except to such extent as it is stayed, modified, terminated, or set aside by action of the agency or a reviewing court.".

. . .

A30

## PUBLIC LAW 101-73—AUG. 9, 1989

Public Law 101-73
101st Congress

### An Act

To reform, recapitalize, and consolidate the Federal deposit insurance system, to enhance the regulatory and enforcement powers of Federal financial institutions regulatory agencies, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## SECTION   1. SHORT TITLE; TABLE OF CONTENTS.

(a) Short Title. – This Act may be cited as the "Financial Institutions Reform, Recovery, and Enforcement Act of 1989".

. . .

## Sec. 101 PURPOSES.

The purposes of this Act are as follows:

(1) To promote, through regulatory reform, a safe and stable system of affordable housing finance.

(2) To improve the supervision of savings associations by strengthening   capital, accounting, and other supervisory standards.

(3) To curtail investments and other activities of savings associations that pose unacceptable risks to the Federal deposit insurance funds.

(4) To promote the independence of the Federal Deposit Insurance Corporation from the institutions the deposits of which it insures, by providing an independent board of directors, adequate funding, and appropriate powers.

(5) To put the Federal deposit insurance funds on a sound financial footing.

(6) To establish an Office of Thrift Supervision in the Department of the Treasury, under the general oversight of the Secretary of the Treasury.

(7) To establish a new corporation, to be known as the Resolution Trust Corporation, to contain, manage, and resolve failed savings associations.

(8) To provide funds from public and private sources to deal expeditiously with failed depository institutions.

(9) To strengthen the enforcement powers of Federal regulators of depository institutions.

(10) To strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors.

. . .

## Sec. 903. MERGER OF REMOVAL AND PROHIBITION AUTHORITY.

(a) Depository Institutions Insured by the FDIC.—

(1) In general.—Section 8(e)(1) of the Federal Deposit Insurance Act (12 U.S.C. 1818(e)(1) is amended to read as follows:

"(e) Removal and Prohibition Authority.—

"(1) Authority to Issue Order.—Whenever the appropriate Federal banking agency determines that—

"(A) any institution-affiliated party has, directly or indirectly—

"(i) violated—

"(I) any law or regulation;

"(II) any cease-and-desist order which has become final;

"(III) any condition imposed in writing by the appropriate Federal banking agency in connection with the grant of any application or other request by such depository institution; or

"(IV) any written agreement between such depository institution and such agency;

"(ii) engaged or participated in any unsafe or unsound practice in connection with any insured depository institution or business institution; or

"(iii) committed or engaged in any act, omission, or practice which constitutes a breach of such party's fiduciary duty;

"(B) by reason of the violation, practice, or breach described in any clause of subparagraph (A)—

A32

"(i) such insured depository institution or business institution has suffered or will probably suffer financial loss or other damage;

"(ii) the interests of the insured depository institution's depositors have been or could be prejudiced; or

"(iii) such party has received financial gain or other benefit by reason of such violation, practice, or breach; and

"(C) such violation, practice, or breach—

"(i) involves personal dishonesty on the part of such party; or

"(ii) demonstrates willful or continuing disregard by such party for the safety or soundness of such insured depository institution or business institution,

the agency may serve upon such party a written notice of the agency's intention to remove such party from office or to prohibit any further participation by such party, in any manner, in the conduct   of the affairs of any insured depository institution.".

(2) Temporary suspension or prohibition.—Section 8(e) of the Federal Deposit Insurance Act (12 U.S.C. 1818(e)) is amended by striking out paragraphs (2) and (4), by redesignating paragraphs (8), (5), and (6) as paragraphs (2), (4), and (5), respectively, and by inserting after paragraph (2) (as so redesignated) the following new paragraph:

"(3) Suspension order.—

"(A) Suspension or prohibition authorized.—If the appropriate Federal banking agency serves written notice under paragraph (1) or (2) to any institution—affiliated party of such agency's intention to issue an order under such paragraph, the appropriate Federal banking agency may suspend such party from office or prohibit such party from further participation in any manner in the conduct of the affairs of the depository institution, if the agency—

"(i) determines that such action is necessary for the protection of the depository institution or the interests of the depository institution's depositors; and

"(ii) serves such party with written notice of the suspension order.

"(B) Effective period.—Any suspension order issued under subparagraph (A)—

A33

"(i) shall become effective upon service; and

"(ii) unless a court issues a stay of such order under subsection (f), shall remain in effect and enforceable until—

"(I) the date the appropriate Federal banking agency dismisses the charges contained in the notice served under paragraph (1) or (2) with respect to such party; or

"(II) the effective date of an order issued by the agency to such party under paragraph (1) or (2).

"(C) Copy of order.—If an appropriate Federal banking agency issues a suspension order under subparagraph (A) to any institution—affiliated party, the agency shall serve a copy of such order on any insured depository institution with which such party is associated at the time such order is issued.".

(3) Prohibition of certain specific activities.—Section 8(e) of the Federal Deposit Insurance Act (12 U.S.C. 1818(e)) is amended by adding after paragraph (5) (as so redesignated by paragraph (2) of this subsection) the following new paragraph:

"(6) Prohibition of certain specific activities.—Any person subject to an order issued under this subsection shall not"—

"(A) participate in any manner in the conduct of the affairs of any institution or agency specified in paragraph (7)(A);

"(B) solicit, procure, transfer, attempt to transfer, vote, or attempt to vote any proxy, consent, or authorization with respect to any voting rights in any institution described in subparagraph (A);

"(C) violate any voting agreement previously approved by the appropriate Federal banking agency; or

"(D) vote for a director, or serve or act as an institution-affiliated party.".

. . .

(b) Credit Unions Insured by the NCUA. —

(1) In general. —Section 206(g)(1) of the Federal Credit Union Act (12 U.S.C. 1786(g)(1)) is amended to read as follows:

"(g) Removal and Prohibition Authority. —

"(1) Authority to issue order. —Whenever the Board determines that —

"(A) any institution-affiliated party has, directly or indirectly—

A34

"(i) violated —

"(I) any law or regulation;

"(II) any cease-and-desist order which has become final;

"(III) any condition imposed in writing by the Board in connection with the grant of any application or other request by such credit union; or

"(IV) any written agreement between such credit union and the Board;

"(ii) engaged or participated in any unsafe or unsound practice in connection with any insured credit union or business institution; or

"(iii) committed or engaged in any act, omission, or practice which constitutes a breach of such party's fiduciary duty;

"(B) by reason of the violation, practice, or breach described in any clause of subparagraph (A) —

"(i) such insured credit union or business institution has suffered or will probably suffer financial loss or other damage;

"(ii) the interests of the insured credit union's members have been or could be prejudiced; or

"(iii) such party has received financial gain or other benefit by reason of such violation, practice or breach; and

"(C) such violation, practice, or breach —

"(i) involves personal dishonesty on the part of such party; or

"(ii) demonstrates such party's unfitness to serve as a director or officer of, or to otherwise participate in the conduct of the affairs of, an insured credit union,

the Board may serve upon such party a written notice of the Board's intention to remove such party from office or to prohibit any further participation, by such party, in any manner in the conduct of the affairs of any insured credit union.".

. . .

## Sec. 904. INDUSTRYWIDE APPLICATION OF REMOVAL, SUSPENSION, AND PROHIBITION ORDERS.

(a) Depository Institutions Insured by the FDIC.—Section 8(e) of the Federal Deposit Insurance Act (12 U.S.C. 1818(e)) is amended by

inserting after the paragraph added by section 903(a)(3) of this Act the following new paragraph:

"(7) Industrywide prohibition.—

"(A) In general.—Except as provided in subparagraph (B), any person who, pursuant to an order issued under this subsection or subsection (g), has been removed or suspended from office in an insured depository institution or prohibited from participating in the conduct of the affairs of an insured depository institution may not, while such order is in effect, continue or commence to hold any office in, or participate in any manner in the conduct of the affairs of—

"(i) any insured depository institution;

"(ii) any institution treated as an insured bank under subsection (b)(3) or (b)(4), or as a savings association under subsection (b)(8);

"(iii) any insured credit union under the Federal Credit Union Act;

"(iv) any institution chartered under the Farm Credit Act of 1971;

"(v) any appropriate Federal depository institution regulatory agency;

"(vi) the Federal Housing Finance Board and any Federal home loan bank; and

"(vii) the Resolution Trust Corporation.

"(B) Exception if agency provides written consent.—

If, on or after the date an order is issued under this subsection which removes or suspends from office any institution—affiliated party or prohibits such party from participating in the conduct of the affairs of an insured depository institution, such party receives the written consent of—

"(i) the agency that issued such order; and

"(ii) the appropriate Federal financial institutions regulatory agency of the institution described in any clause of subparagraph (A) with respect to which such party proposes to become an institution—affiliated party,

subparagraph (A) shall, to the extent of such consent, cease to apply to such party with respect to the institution described in each written

consent. Any agency that grants such a written consent shall report such action to the Corporation and publicly disclose such consent.

"(C) Violation of paragraph treated as violation of order.—Any violation of subparagraph (A) by any person who is subject to an order described in such subparagraph shall be treated as a violation of the order.

"(D) Appropriate federal financial institutions regulatory agency defined.—For purposes of this paragraph and subsection (j), the term "appropriate Federal financial institutions regulatory agency" means—

"(i) the appropriate Federal banking agency, in the case of an insured depository institution;

"(ii) the Farm Credit Administration, in the case of an institution chartered under the Farm Credit Act of 1971;

"(iii) the National Credit Union Administration Board, in the case of an insured credit union (as defined in section 101(7) of the Federal Credit Union Act);

"(iv) the Secretary of the Treasury, in the case of the Federal Housing Finance Board and any Federal home loan bank; and

"(v) the Oversight Board, in the case of the Resolution Trust Corporation.

"(E) Consultation between agencies.—The agencies referred to in clauses (i) and (ii) of subparagraph (B) shall consult with each other before providing any written consent described in subparagraph (B).

"(F) Applicability.—This paragraph shall only apply to a person who is an individual, unless the appropriate Federal banking agency specifically finds that it should apply to a corporation, firm, or other business enterprise.".

(b) Credit Unions Insured by the NCUA.—Section 206(g)(7) of the Federal Credit Union Act (12 U.S.C. 1786(g)(7)) is amended to read as follows:

"(7) Industrywide Prohibition.—

"(A) In general.—Except as provided in subparagraph (B), any person who, pursuant to an order issued under this subsection or subsection (i), has been removed or suspended from office in an insured credit union or prohibited from participating in the

conduct of the affairs of an insured credit union may not, while such order is in effect, continue or commence to hold any office in, or participate in any manner in the conduct of the affairs of—

"(i) any insured depository institution;

"(ii) any institution treated as an insured bank under paragraph (3) or (4) of section 8(b) of the Federal Deposit Insurance Act, or as a savings association under section 8(b)(8) of such Act;

"(iii) any insured credit union—

"(iv) any institution chartered under the Farm Credit Act of 1971;

"(v) any appropriate Federal depository institution regulatory agency;

"(vi) the Federal Housing Finance Board and any Federal home loan bank; and

"(vii) the Resolution Trust Corporation.

"(B) Exception if agency provides written consent.— If, on or after the date an order is issued under this subsection which removes or suspends from office any institution—affiliated party or prohibits such party from participating in the conduct of the affairs of an insured credit union, such party receives the written consent of—

"(i) the Board; and

"(ii) the appropriate Federal financial institutions regulatory agency of the institution described in any clause of subparagraph (A) with respect to which such party proposes to become an institution-affiliated party,

subparagraph (A) shall, to the extent of such consent, cease to apply to such party with respect to the institution described in each written consent. If any person receives such a written consent from the Board, the Board shall publicly disclose such consent. If the agency referred to in clause (ii) grants such a written consent, such agency shall report such action to the Board and publicly disclose such consent.

"(C) Violation of paragraph treated as violation of order.—Any violation of subparagraph (A) by any person who is subject to an order described in such subparagraph shall be treated as a violation of the order.

"(D) Appropriate federal financial institutions regulatory agency defined.—For purposes of this paragraph and subsection (1), the term "appropriate Federal financial institutions regulatory agency" means—

"(i) the appropriate Federal banking agency, as provided in section 3(q) of the Federal Deposit Insurance Act;

"(ii) the Farm Credit Administration, in the case of an institution chartered under the Farm Credit Act of 1971;

"(iii) the National Credit Union Administration Board, in the case of an insured credit union (as defined in section 101(7) of the Federal Credit Union Act);

"(iv) the Secretary of the Treasury, in the case of the Federal Housing Finance Board and any Federal home loan bank; and

"(v) the Oversight Board, in the case of the Resolution Trust Corporation.

"(E) Consultation between agencies.—The agencies referred to in clauses (i) and (ii) of subparagraph (B) shall consult with each other before providing any written consent described in subparagraph (B).

"(F) Applicability.—This paragraph shall only apply to a person who is an individual, unless the Board specifically finds that it should apply to a corporation, firm, or other business enterprise.".

## Sec. 905. ENFORCEMENT PROCEEDINGS ALLOWED AFTER SEPARATION FROM SERVICE.

(a) Depository Institutions Insured by the FDIC.—Section 8(i) of the Federal Deposit Insurance Act (12 U.S.C. 1818(i)) is amended by adding at the end thereof the following new paragraph:

"(3) Notice under this section after separation from service.— The resignation, termination of employment or participation, or separation of an institution—- party (including a separation caused by the closing of an insured depository institution) shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice and proceed under this section against any such party, if such notice is served before the end of the 6-year period beginning on the date such party ceased to be such a party with

respect to such depository institution (whether such date occurs before, on, or after the date of the enactment of this paragraph).".

. . .

## SEC. 916. IMPROVED ADMINISTRATIVE HEARINGS AND PROCEDURES.

Before the close of the 24-month period beginning on the date of the enactment of this Act, the appropriate Federal banking agencies (as defined in section 3(q) of the Federal Deposit Insurance Act) and the National Credit Union Administration Board shall jointly—

(1) establish their own pool of administrative law judges, and

(2) develop a set of uniform rules and procedures for administrative hearings, including provisions for summary judgment rulings where there are no disputes as to material facts of the case.

## 12 C.F.R. § 263.4 Authority of the Board.

The Board may, at any time during the pendency of a proceeding, perform, direct the performance of, or waive performance of, any act which could be done or ordered by the administrative law judge.

## 12 C.F.R. § 263.18 Commencement of proceeding and contents of notice.

**(a) Commencement of proceeding**. (1)(i) Except for change-in-control proceedings under section 7(j)(4) of the FDIA (12 U.S.C. 1817(j)(4)), a proceeding governed by this subpart is commenced by issuance of a notice by the Board.

. . .

## 12 C.F.R. § 263.24 Scope of document discovery.

**(a) Limits on discovery.**

**(1)** Subject to the limitations set out in paragraphs (b), (c), and (d) of this section, a party to a proceeding under this subpart may obtain document discovery by serving a written request to produce documents. For purposes of a request to produce documents, the term "documents" may be defined to include drawings, graphs, charts, photographs, recordings, data stored in electronic form, and other data compilations from which information can be obtained, or translated, if necessary, by the parties through detection devices into reasonably usable form, as well as written material of all kinds.

**(2)** Discovery by use of deposition is governed by § 263.53 of subpart B of this part.

**(3)** Discovery by use of interrogatories is not permitted.

. . .

## 12 C.F.R. § 263.28 Interlocutory review.

**(a) General rule.** The Board may review a ruling of the administrative law judge prior to the certification of the record to the Board only in accordance with the procedures set forth in this section and § 263.23.

**(b) Scope of review.** The Board may exercise interlocutory review of a ruling of the administrative law judge if the Board finds that:

**(1)** The ruling involves a controlling question of law or policy as to which substantial grounds exist for a difference of opinion;

**(2)** Immediate review of the ruling may materially advance the ultimate termination of the proceeding;

**(3)** Subsequent modification of the ruling at the conclusion of the proceeding would be an inadequate remedy; or

**(4)** Subsequent modification of the ruling would cause unusual delay or expense.

**(c) Procedure.** Any request for interlocutory review shall be filed by a party with the administrative law judge within ten days of his or her ruling and shall otherwise comply with § 263.23. Any party may file a response to a request for interlocutory review in accordance with § 263.23(d). Upon the expiration of the time for filing all responses, the administrative law judge shall refer the matter to the Board for final disposition.

**(d) Suspension of proceeding**. Neither a request for interlocutory review nor any disposition of such a request by the Board under this section suspends or stays the proceeding unless otherwise ordered by the administrative law judge or the Board.

## 12 C.F.R. § 263.29 Summary disposition.

**(a) In general.** The administrative law judge shall recommend that the Board issue a final order granting a motion for summary disposition if the undisputed pleaded facts, admissions, affidavits, stipulations, documentary evidence, matters as to which official notice may be taken, and any other evidentiary materials properly submitted in connection with a motion for summary disposition show that:

**(1)** There is no genuine issue as to any material fact; and

**(2)** The moving party is entitled to a decision in its favor as a matter of law.

**(b) Filing of motions and responses.**

**(1)** Any party who believes that there is no genuine issue of material fact to be determined and that he or she is entitled to a decision as a matter of law may move at any time for summary disposition in its favor of all or any part of the proceeding. Any party, within 20 days after service of such a motion, or within such time period as allowed by the administrative law judge, may file a response to such motion.

**(2)** A motion for summary disposition must be accompanied by a statement of the material facts as to which the moving party contends there is no genuine issue. Such motion must be supported by documentary evidence, which may take the form of admissions in pleadings, stipulations, depositions, investigatory depositions, transcripts, affidavits and any other evidentiary materials that the moving party contends support his or her position. The motion must also be accompanied by a brief containing the points and authorities in support of the contention of the moving party. Any party opposing a motion for summary disposition must file a statement setting forth those material facts as to which he or she contends a genuine dispute exists. Such opposition must be supported by evidence of the same

type as that submitted with the motion for summary disposition and
a brief containing the points and authorities in support of the
contention that summary disposition would be inappropriate.

. . .

## 12 C.F.R. § 263.35 Conduct of hearings.

**(a) General rules.**

**(1)** Hearings shall be conducted so as to provide a fair and expeditious presentation of the relevant disputed issues. Each party has the right to present its case or defense by oral and documentary evidence and to conduct such cross examination as may be required for full disclosure of the facts.

. . .

## 12 C.F.R. § 263.38 Recommended decision and filing of record.

**(a) Filing of recommended decision and record.** Within 45 days after expiration of the time allowed for filing reply briefs under § 263.37(b), the administrative law judge shall file with and certify to the Board, for decision, the record of the proceeding. The record must include the administrative law judge's recommended decision, recommended findings of fact, recommended conclusions of law, and proposed order; all prehearing and hearing transcripts, exhibits, and rulings; and the motions, briefs, memoranda, and other supporting papers filed in connection with the hearing. The administrative law judge shall serve upon each party the recommended decision, findings, conclusions, and proposed order.

**(b) Filing of index.** At the same time the administrative law judge files with and certifies to the Board for final determination the record of the proceeding, the administrative law judge shall furnish to the Board a certified index of the entire record of the proceeding. The certified index shall include, at a minimum, an entry for each paper, document or motion filed with the administrative law judge in the proceeding, the date of the filing, and the identity of the filer. The certified index shall also include an exhibit index containing, at a minimum, an entry consisting of exhibit number and title or description for: Each exhibit introduced and admitted into evidence at the hearing; each exhibit introduced but not admitted into evidence at the hearing; each exhibit introduced and admitted into evidence after the completion of the hearing; and each exhibit introduced but not admitted into evidence after the completion of the hearing.

A47

## 12 C.F.R. § 263.39 Exceptions to recommended decision.

**(a) Filing exceptions.** Within 30 days after service of the recommended decision, findings, conclusions, and proposed order under § 263.38, a party may file with the Board written exceptions to the administrative law judge's recommended decision, findings, conclusions or proposed order, to the admission or exclusion of evidence, or to the failure of the administrative law judge to make a ruling proposed by a party. A supporting brief may be filed at the time the exceptions are filed, either as part of the same document or in a separate document.

**(b) Effect of failure to file or raise exceptions.**

**(1)** Failure of a party to file exceptions to those matters specified in paragraph (a) of this section within the time prescribed is deemed a waiver of objection thereto.

**(2)** No exception need be considered by the Board if the party taking exception had an opportunity to raise the same objection, issue, or argument before the administrative law judge and failed to do so.

**(c) Contents.**

**(1)** All exceptions and briefs in support of such exceptions must be confined to the particular matters in, or omissions from, the administrative law judge's recommendations to which that party takes exception.

**(2)** All exceptions and briefs in support of exceptions must set forth page or paragraph references to the specific parts of the administrative law judge's recommendations to which exception is taken, the page or paragraph references to those portions of the record relied upon to support each exception, and the legal authority relied upon to support each exception.

## 12 C.F.R. § 263.40 Review by the Board.

**(a) Notice of submission to the Board.** When the Board determines that the record in the proceeding is complete, the Board shall serve notice upon the parties that the proceeding has been submitted to the Board for final decision.

**(b) Oral argument before the Board.** Upon the initiative of the Board or on the written request of any party filed with the Board within the time for filing exceptions, the Board may order and hear oral argument on the recommended findings, conclusions, decision, and order of the administrative law judge. A written request by a party must show good cause for oral argument and state reasons why arguments cannot be presented adequately in writing. A denial of a request for oral argument may be set forth in the Board's final decision. Oral argument before the Board must be on the record.

**(c) Agency final decision.**

   **(1)** Decisional employees may advise and assist the Board in the consideration and disposition of the case. The final decision of the Board will be based upon review of the entire record of the proceeding, except that the Board may limit the issues to be reviewed to those findings and conclusions to which opposing arguments or exceptions have been filed by the parties.

   **(2)** The Board shall render a final decision within 90 days after notification of the parties that the case has been submitted for final decision, or 90 days after oral argument, whichever is later, unless the Board orders that the action or any aspect thereof be remanded to the administrative law judge for further proceedings. Copies of the final decision and order of the Board shall be served upon each party to the proceeding, upon other persons required by statute, and, if directed by the Board or required by statute, upon any appropriate state or Federal supervisory authority.

A49

## 12 C.F.R. § 263.54 Delegation to the Office of Financial Institution Adjudication.

Unless otherwise ordered by the Board, administrative adjudications subject to subpart A of this part shall be conducted by an administrative law judge of OFIA.

## 12 C.F.R. § 263.55 Board as Presiding Officer.

The Board may, in its discretion, designate itself, one or more of its members, or an authorized officer, to act as presiding officer in a formal hearing. In such a proceeding, proposed findings and conclusions, briefs, and other submissions by the parties permitted in subpart A shall be filed with the Secretary for consideration by the Board. Sections 263.38 and 263.39 of subpart A will not apply to proceedings conducted under this section.

# CERTIFICATE OF COMPLIANCE

I hereby certify:

1.     This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f) and 10th Circuit Rule 32(B), this document contains 12,315 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

/s/ Yonatan Gelblum
Yonatan Gelblum

*Attorney for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ Yonatan Gelblum
Yonatan Gelblum

*Attorney for Respondent*